IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Samsung Electronics America, Inc.<br>85 Challenger Road<br>Ridgefield Park, NJ 07660<br><br>Samsung Telecommunications America LLC<br>1301 East Lookout Drive<br>Richardson, Texas 75082<br><br>Samsung Electronics Co., Ltd.<br>Samsung Electronics Building<br>1320-10, Seocho 2-dong<br>Seocho-gu, Seoul 137-857<br>South Korea<br><br>                    Petitioners,<br><br>    v.<br><br>Ericsson Inc.<br>6300 Legacy Drive<br>Plano, Texas 75024<br><br>Telefonaktiebolaget LM Ericsson<br>Torshamsgatan 23, Kista<br>164 83 Stockholm Sweden<br>                   Respondents. | Case:<br>Assigned To:<br>Assign Date:<br>Description:  Miscellaneous<br><br>**MISC. NO. _____**<br><br>**MOTION FOR ISSUANCE OF<br>LETTER OF REQUEST** |

**MOTION OF SAMSUNG ELECTRONICS AMERICA, INC.,
SAMSUNG TELECOMMUNICATIONS AMERICA LLC, AND
SAMSUNG ELECTRONICS CO., LTD. FOR THE ISSUANCE OF A
LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**

Petitioners Samsung Electronics America, Inc., Samsung Telecommunications America

LLC, and Samsung Electronics Co., Ltd. (collectively "Samsung"), Respondents in *Certain*

*Electronic Devices, Including Certain Wireless Communication Devices, Tablet Computers,*

*Media Players, and Televisions, and Components Thereof*, Investigation No. 337-TA-862 before

the U.S. International Trade Commission ("ITC"), hereby move for the Court to issue, under its

seal and signature, the attached Letter of Requests on behalf of Samsung to obtain documents and deposition testimony from the following foreign third party:

Flextronics International Ltd. ("Flextronics")
2 Changi South Lane
Singapore 486123

Samsung moved in the ITC for the Administrative Law Judge to recommend that this Court issue a letter of request on behalf of Samsung to obtain discovery from Flextronics on March 27, 2013. Samsung seeks foreign discovery from Flextronics because Samsung understands that Flextronics may be impacted by Ericsson's requested remedial order in this Investigation. Respondents believe Flextronics possesses unique documents and information concerning: global and domestic demand for articles, Flextronics' capacity to replace the volume of articles subject to Ericsson's requested remedial order, and the particular business and financial impact on Flextronics by Ericsson's requested remedial order. Accordingly, Flextronics is believed to be among the most knowledgeable about, and to have documents in its possession, custody, and control concerning Samsung's defenses, including those based on the public interest considerations enumerated in 19 U.S.C. §§ 1337(e)(1). Administrative Law Judge David P. Shaw granted Flextronics's motion on April 5, 2013, recommending that the United States Court for the District of Columbia issue the Letter of Request.

For the reasons set forth more fully in the accompanying memorandum, Samsung respectfully requests that the Court assign a Judge to this matter and expedite the issuance of the attached Letter or Request to Flextronics.

2

Respectfully submitted,

Dated: April 10, 2013

Joseph V. Colaianni
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

*Counsel for Petitioners*
*Samsung Electronics America, Inc.,*
*Samsung Telecommunications America LLC, and*
*Samsung Electronics Co., Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISCTRICT OF COLUMBIA

Samsung Electronics America, Inc.
85 Challenger Road
Ridgefield Park, NJ 07660

Samsung Telecommunications America LLC
1301 East Lookout Drive
Richardson, Texas 75082

Samsung Electronics Co., Ltd.
Samsung Electronics Building
1320-10, Seocho 2-dong
Seocho-gu, Seoul 137-857
South Korea

                    Petitioners,

v.

Ericsson Inc.
6300 Legacy Drive
Plano, Texas 75024

Telefonaktiebolaget LM Ericsson
Torshamsgatan 23, Kista
164 83 Stockholm Sweden

                    Respondents.

**MISC. NO. _____**

**MOTION FOR ISSUANCE OF
LETTER OF REQUEST**

## MEMORANDUM OF LAW IN SUPPORT OF
## SAMSUNG ELECTRONICS AMERICA, INC.,
## SAMSUNG TELECOMMUNICATIONS AMERICA LLC, AND
## SAMSUNG ELECTRONICS CO., LTD.'S MOTION FOR THE ISSUANCE OF A
## LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE

Petitioners Samsung Electronics America, Inc., Samsung Telecommunications America

LLC, and Samsung Electronics Co., Ltd. (collectively "Samsung"), Respondents in *Certain*

*Electronic Devices, Including Certain Wireless Communication Devices, Tablet Computers,*

*Media Players, and Televisions, and Components Thereof*, Investigation No. 337-TA-862 before

the U.S. International Trade Commission ("ITC"), hereby submit this memorandum in support of

its motion for this Court to issue, under its seal and signature, the attached Letter of Request to the appropriate judicial authority of Singapore.

On March 27, 2013, Samsung moved in the ITC for the administrative law judge to recommend that this Court issue a letter of request on behalf of Samsung to obtain discovery from Flextronics International Ltd. ("Flextronics") in Singapore.  On April 5, Administrative Law Judge David P. Shaw, based on his knowledge of this case, signed an order recommending that the U.S. District Court for the District of Columbia issue the Letter of Request on behalf of Samsung. (Exhibit 1).

The Letter of Request, solicits assistance from Supreme Court of Singapore to obtain from Flextronics documents and information concerning: global and domestic demand for articles, Flextronics' capacity to replace the volume of articles subject to Ericsson's requested remedial order, and the particular business and financial impact on Flextronics by Ericsson's requested remedial order.  Samsung respectfully requests that the Court issue the attached Letter of Request.

The following documents are attached to this Memorandum:

- **Exhibit 1**: Order No. 15:  Granting Samsung's Motion Seeking Recommendation to the District Court for the District of Columbia to Issue a Letter of Request (3/27/2013), signed by Administrative Law Judge David P. Shaw and Secretary to the Commission Lisa R. Barton.
- **Proposed Order**
  - o **Attachment 1**: Letter of Request by the District Court for the District of Columbia on behalf of Samsung.
    - **Attachment A**: Documents or Other Property to be Produced by Flextronics International Ltd.
    - **Attachment B**: Topics for Deposition of Flextronics International Ltd.
    - **Attachment C**: Protective Order.
    - **Attachment D**: Ground Rules.
    - **Attachment E**: Complaint.

2

In support of this Motion, Samsung respectfully states as follows:

## I.   THE DISTRICT COURT HAS AUTHORITY TO ISSUE LETTERS OF REQUEST UNDER THE HAGUE CONVENTION.

The Hague Convention provides that "[i]n civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provision of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act."  Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Art. 1, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555 (hereinafter "Hague Convention").  Both the United States and Singapore are parties to the Hague Convention.  The United States ratified the Hague Convention on August 8, 1972, and Singapore ratified on October 27, 1978.  *See* Hague Conf. on Private Int'l Law, Status Table: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, *available at*  http://www.hcch.net/index_en.php?act=conventions.status&cid=82  (last visited March 27, 2013).

The Hague Convention authorizes the District Court for the District of Columbia to issue the Letter of Request. *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522, 535 (1987) (stating that "a judicial authority in one contracting state 'may' forward a letter of request to the competent authority in another contracting state for the purpose of obtaining evidence"); 28 U.S.C. § 1781(b)(2) (permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner").  And under the Hague Convention, evidence can be compelled pursuant to a Letter of Request transmitted directly from a court in the United States to the Singapore Central Authority, the Supreme Court

3

of Singapore. *See* Singapore Judicial Assistance, *available at* http://travel.state.gov/law/judicial/judicial_663.html (last visited March 27, 2013).

Although the Administrative Law Judge can directly issue letters of request, the Singaporean Judicial Authorities are more likely to respond to a Letter of Request from a District Court because the latter will be recognized as originating from a civil case rather than an administrative case. *See* U.S. Dep't of State, *Preparation of Letters Rogatory*, http://travel.state.gov/law/judicial/judicial_683.html (last visited April 8, 2013). Accordingly, Samsung requests that the Court issue the attached Letter of Request to the Singaporean Judicial Authorities on behalf of Samsung. *See Aerocrine AR v. Apieron Inc.*, 267 F.R.D. 105, 109-10 (D. Del. 2010) (granting motion to issue Letters of Request to Finland under the Hague Convention); *cf. Miller v. Holzmann*, No. 95-1231, 2006 WL 3093122 (D.D.C. Oct. 31, 2006) (granting motion to issue Letters of Request to Germany under Hague Convention).

## II.    FLEXTRONICS IS IN POSSESSION OF RELEVANT DOCUMENTS AND INFORMATION IN SINGAPORE.

Respondents believe Flextronics possesses unique documents and information concerning: global and domestic demand for articles, Flextronics' capacity to replace the volume of articles subject to Ericsson's requested remedial order, and the particular business and financial impact on Flextronics by Ericsson's requested remedial order. Accordingly, Flextronics is believed to be among the most knowledgeable about, and to have documents in its possession, custody, and control concerning Samsung's defenses, including those based on the public interest considerations enumerated in 19 U.S.C. §§ 1337(e)(1).

## III.   THE LETTER OF REQUEST IS NECESSARY TO OBTAIN THE DOCUMENTS AND INFORMATION FROM SINGAPORE AND CONFORMS TO THE REQUIRED PROCEDURAL SAFEGUARDS.

4

The attached Letter of Request should issue for several reasons.  The document requests, deposition topics, and written deposition questions are narrowly tailored to obtain relevant information related to public interest considerations.  The requested information, or its substantial equivalent, could not be obtained without undue hardship by alternate means because the documents and knowledgeable witnesses are in Singapore, which is beyond the Commission's subpoena powers.[1]  And the documents produced pursuant to the Letter of Request would be subject to the Protective Order in this Investigation, attached to the Letter of Request, thereby ensuring that the interests of Flextronics are adequately protected.

Samsung recognizes that in accordance with Article 23 of the Hague Convention, Singapore will not execute a Letter of Request issued for the purpose of obtaining pre-trial discovery of documents where the Letter of Request requires a person:

> (a) to state what documents relevant to the proceedings to which the Letter of Request relates are, or have been, in his possession, custody or power; or
> (b) to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his possession, custody or power.

*See* Flextronics' Declaration Reservations, *available at* *http://www.hcch.net/index_en.php?act=status.comment&csid=569&disp=resdn* (last visited March 27, 2013).

Consistent with this reservation, the Letter of Request does not require Flextronics to indicate which relevant documents are or have been within its possession, custody, or power nor

---

[1]    Samsung is also requesting the identical information from Flextronics International USA Inc., Flextronics International Ltd.'s U.S. subsidiary, through an application for subpoenas, and if this U.S. subsidiary produces the requested information, Samsung will withdraw the Letter of Request.  Nevertheless, because of the uncertainty of whether Flextronics International USA Inc. will produce the requested information, Samsung requests that the Letter of Request be issued.

does the Letter of Request require Flextronics to produce documents other than those specifically requested.  Further, the documents produced pursuant to the Letter of Request would be subject to the Protective Order in this Investigation, attached to the Letter of Request, thereby ensuring that the interests of Flextronics are adequately protected.

Samsung is fully prepared to comply with the procedural requirements involved in obtaining the requested documents and testimony from Flextronics through the Letter of Request.  The necessary steps to receive judicial assistance are:

- Obtain a Letter of Request with the signature of a District Court judge and the seal of the District Court.

- Include in the Letter of Request the identities of the parties, the nature of the proceedings, the discovery sought, any special procedures, the identity of the party that will bear any costs, and other information as recommended by the Hague Conventions.  *See* Hague Convention, *Model for Letters of Request recommended for use in applying the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, *available at* http:/www.hcch.net/upload/actform20e.pdf (last visited March 15, 2013).

- Transmit the letter to the Central Authority for Singapore for enforcement in a Singapore court.  The Singapore court will serve the requests on Flextronics.

For the foregoing reasons, Samsung respectfully requests that the Court grant Samsung's motion and issue of Samsung's Letter of Request to Supreme Court of Singapore.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated:  April 10, 2013

_____

Joseph V. Colaianni
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

*Counsel for Petitioners*
*Samsung Electronics America, Inc.,*
*Samsung Telecommunications America LLC, and*
*Samsung Electronics Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing document have been served on this 10th day of April, 2013, on the following:

| | |
|---|---|
| The Honorable David P. Shaw<br>Administrative Law Judge<br>**U.S. International Trade Commission**<br>500 E Street S.W.<br>Washington, D.C. 20436 | ☐ Via First-Class Mail<br>☒ Via Hand-Delivery<br>☐ Via Federal Express<br>☐ Via E-mail |
| Pyong Yoon, Esq.<br>Attorney-Advisor<br>**U.S. International Trade Commission**<br>500 E Street, S.W.<br>Washington, D.C. 20436<br>*pyong.yoon@usitc.gov* | ☐ Via First-Class Mail<br>☐ Via Hand-Delivery<br>☐ Via Federal Express<br>☒ Via E-mail |
| Lisa Kattan, Esq.<br>Investigative Attorney<br>Office of Unfair Import Investigations<br>**U.S. International Trade Commission**<br>500 E Street, S.W.<br>Washington, D.C. 20436<br>*lisa.kattan@usitc.gov* | ☐ Via First-Class Mail<br>☐ Via Hand-Delivery<br>☐ Via Federal Express<br>☒ Via E-mail |
| Mike McKool, Esq.<br>Douglas A. Cawley, Esq.<br>Theodore Stevenson III, Esq.<br>**McKool Smith, P.C.**<br>300 Crescent Court, Suite 1500<br>Dallas, Texas 75201<br>*ericsson_samsung_862@mckoolsmith.com*<br><br>Benjamin Levi<br>**McKool Smith, P.C.**<br>1999 K Street, N.W., Suite 600<br>Washington, D.C. 20006<br>*ericsson_samsung_862@mckoolsmith.com*<br><br>*Counsel for Complainants Ericsson Inc. and*<br>*Telefonaktiebolaget LM Ericsson* | ☐ Via First-Class Mail<br>☐ Via Hand-Delivery<br>☐ Via Federal Express<br>☒ Via E-mail |

Patrick Edelin, Jr.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Samsung Electronics America, Inc.<br>85 Challenger Road<br>Ridgefield Park, NJ 07660<br><br>Samsung Telecommunications America LLC<br>1301 East Lookout Drive<br>Richardson, Texas 75082<br><br>Samsung Electronics Co., Ltd.<br>Samsung Electronics Building<br>1320-10, Seocho 2-dong<br>Seocho-gu, Seoul 137-857<br>South Korea<br><br>                                  Petitioners,<br><br>        v.<br><br>Ericsson Inc.<br>6300 Legacy Drive<br>Plano, Texas 75024<br><br>Telefonaktiebolaget LM Ericsson<br>Torshamsgatan 23, Kista<br>164 83 Stockholm Sweden<br>                                  Respondents. | Case:<br>Assigned To:<br>Assign Date:<br>Description:  Miscellaneous<br><br>**MISC. NO. _____**<br><br>**MOTION FOR ISSUANCE OF LETTER OF REQUEST** |

**[PROPOSED] ORDER FOR ISSUANCE OF LETTER OF REQUEST**

This matter having arisen upon motion by Petitioners Samsung Electronics America, Inc.,

Samsung Telecommunications America LLC, and Samsung Electronics Co., Ltd., Respondents

in *Certain Electronic Devices, Including Certain Wireless Communication Devices, Tablet*

*Computers, Media Players, and Televisions, and Components Thereof*, Investigation No. 337-

TA-862 before the U.S. International Trade Commission, for Letter of Request to procure

evidence from Flextronics International Ltd., and it appearing that this Letter of Request is appropriate,

IT IS ORDERED, that the Clerk of this Court shall issue the Letter of Request in the form attached to this order.

Dated: April ___, 2013                     By: _____
                                                    United States District Judge

# EXHIBIT 1

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.

**In the Matter of**

**CERTAIN ELECTRONIC DEVICES,
INCLUDING WIRELESS COMMUNICATION
DEVICES, TABLET COMPUTERS, MEDIA
PLAYERS, AND TELEVISIONS, AND
COMPONENTS THEREOF**

Inv. No. 337-TA-862

## Order No. 15

Respondents Samsung Electronics Co. Ltd.; Samsung Electronics America, Inc.; and

Samsung Telecommunications America LLC (collectively, "Samsung") filed a motion for

recommendation to the United States District Court for the District of Columbia to issue a Letter

of Request pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence

Abroad in Civil or Commercial Matters on behalf of Samsung to obtain documents and

deposition testimony from the following foreign third-party:

Flextronics International Ltd.
2 Changi South Lane
Singapore 486123

Motion Docket No. 862-22.  Samsung states that complainants Ericsson Inc. and Ericsson

Telefonaktiebogalet LM Ericsson, and the Commission Investigative Staff, do not oppose the

motion.  Mot. at 2.

Motion No. 862-22 is granted.

Accordingly, it is respectfully recommended that the District Court issue respondents'

Letter of Request to the Supreme Court of Singapore.


_____
David P. Shaw
Administrative Law Judge


Issued: April 2, 2013

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **ORDER NO. 15** has been served by hand upon the Commission Investigative Attorney, **Lisa Kattan, Esq.**, and the following parties as indicated, on _____ APR 0 3 2013 _____.

Lisa R. Barton, Acting Secretary
U.S. International Trade Commission
500 E Street SW, Room 112A
Washington, DC  20436

| **FOR COMPLAINANTS ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON:** | |
|---|---|
| Benjamin Levi, Esq.<br>**MCKOOL SMITH P.C.**<br>1999 K Street, NW, Suite 600<br>Washington, DC 20006 | (  ) Via Hand Delivery<br>(  ) Via Overnight Mail<br>( ✓) Via First Class Mail<br>(  ) Other: _____ |
| **FOR RESPONDENTS SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA LLC, AND  SAMSUNG ELECTRONICS CO., LTD:** | |
| Michael J. McKeon, Esq.<br>**FISH & RICHARDSON P.C.**<br>1425 K Street, NW, 11th Floor<br>Washington, DC 20005 | (  ) Via Hand Delivery<br>(  ) Via Overnight Mail<br>( ✓) Via First Class Mail<br>(  ) Other: _____ |

CERTAIN ELECTRONIC DEVICES, INCLUDING WIRELESS COMMUNICATION
DEVICES, TABLET COMPUTERS, MEDIA PLAYERS, AND TELEVISIONS, AND
COMPONENTS THEREOF

INV. NO. 337-TA-862

## PUBLIC MAILING LIST

| | |
|---|---|
| Angela Ruby<br>**LEXIS-NEXIS**<br>9443 Springboro Pike<br>Miamisburg, OH 45342 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>( ) Via First Class Mail<br>( ) Other: _____ |
| Kenneth Clair<br>**Thomson West**<br>1100 13th Street, NW, Suite 200<br>Washington, DC 20005 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>( ) Via First Class Mail<br>( ) Other: _____ |

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Samsung Electronics America, Inc.<br>85 Challenger Road<br>Ridgefield Park, NJ 07660<br><br>Samsung Telecommunications America LLC<br>1301 East Lookout Drive<br>Richardson, Texas 75082<br><br>Samsung Electronics Co., Ltd.<br>Samsung Electronics Building<br>1320-10, Seocho 2-dong<br>Seocho-gu, Seoul 137-857<br>South Korea<br><br><div align="right">Petitioners,</div><br>v.<br><br>Nokia Corporation<br>Keilalahdentie 2-4<br>FI-02150 Espoo<br>Finland<br><div align="right">Respondent.</div> | Case:<br>Assigned To:<br>Assign Date:<br>Description:  Miscellaneous<br><br>**MISC. NO. _____**<br><br>**MOTION FOR ISSUANCE OF<br>LETTER OF REQUEST** |

**[PROPOSED] ORDER FOR ISSUANCE OF A LETTER ROGATORY**

This matter having arisen upon motion by Petitioners Samsung Electronics America, Inc.,

Samsung Telecommunications America LLC, and Samsung Electronics Co., Ltd., Respondents

in *Certain Electronic Devices, Including Certain Wireless Communication Devices, Tablet*

*Computers, Media Players, and Televisions, and Components Thereof*, Investigation No. 337-

TA-862 before the U.S. International Trade Commission, for a letter rogatory to procure

evidence from Flextronics International Ltd., and it appearing that this letter rogatory is

appropriate,

IT IS ORDERED, that the Clerk of this Court shall issue the Letter Rogatory in the form attached to this order.

Dated: April ___, 2013                    By: _____
                                                United States District Judge

# ATTACHMENT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ericsson Inc. and Telefonaktiebolaget LM Ericsson, )<br><br>Plaintiffs (Complainants), )<br><br>v. )<br><br>Samsung Electronics America, Inc., Samsung Telecommunications America LLC, and Samsung Electronics Co., Ltd., )<br><br>Defendants (Respondents). ) | Civil Action No. Misc. _____ |

### REQUEST FOR INTERNATIONAL ASSISTANCE—LETTER OF REQUEST

The United States District Court for the District of Columbia respectfully requests international judicial assistance to obtain evidence, under the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, to be used in an administrative proceeding as approved by this Court in the above captioned matter.

Based on the representations made by Respondents Samsung Electronics America, Inc., Samsung Telecommunications America LLC, and Samsung Electronics Co., Ltd. (collectively "Samsung"), this Court believes that Flextronics International Ltd. ("Flextronics") is in possession of documents and has knowledge regarding material facts that are relevant for the proper prosecution of the above-referenced administrative proceeding.  This Court requests the assistance described below:

| | |
|---|---|
| 1. Sender | Joseph V. Colaianni<br>FISH & RICHARDSON P.C.<br>1425 K Street, N.W., 11th Floor<br>Washington, D.C. 20005<br>Telephone: +1 202 783 5070<br>United States of America |
| 2. Central Authority of the Requested State | Supreme Court of Singapore |

|  | 1 Supreme Court Lane<br>Singapore 178879 |
|---|---|
| 3. Person to whom the executed request is to be returned | Joseph V. Colaianni<br>FISH & RICHARDSON P.C.<br>1425 K Street, N.W., 11th Floor<br>Washington, D.C. 20005<br>Telephone: +1 202 783 5070<br>United States of America |
| 4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request | |
| Date | A response is requested by April 22, 2013, or as soon as practicable. |
| Reason for urgency | Under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, investigations in the United States International Trade Commission must be completed "at the earliest practicable time."  The fact discovery cutoff for this investigation has been set for April 26, 2013.  Expedient treatment of this request will allow the parties and the witnesses to arrange a mutually agreeable date for testimony and avoid disruption to the witnesses' business or personal plans. |
| In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request: | | |
| 5. | a. Requesting judicial authority (Article 3, *a*) | United States District Court Judge<br>U.S. District Court for the District of Columbia<br>333 Constitution Ave., N.W.<br>Washington, DC 20001<br>United States of America |
|  | b. To the competent authority of (Article 3, *a*) | Singapore |
|  | c. Names of the case and any identifying number | In the Matter of Certain Electronic Devices, Including Certain Wireless Communication Devices, Tablet Computers, Media Players, and Televisions, and Components Thereof, Investigation No. 337-TA-862 |
| Names and addresses of the parties and their representatives (including representatives in the requested State) (Article 3, *b*) | | |
| 6. | a. Plaintiffs (Complainants) | Ericsson Inc.<br>6300 Legacy Drive<br>Plano, Texas 75024<br>United States of America |

| | |
|---|---|
| | Telefonaktiebolaget LM Ericsson<br>Torshamnsgatan 23, Kista<br>Stockholm<br>Sweden 164 83<br><br>(collectively "Ericsson") |
| Representatives | Mike McKool<br>Douglas A. Cawley<br>Theodore Stevenson, III<br>MCKOOL SMITH P.C.<br>300 Crescent Court, Suite 1500<br>Dallas, Texas 75201<br>United States of America<br>Attorneys for Ericsson<br><br>Steven J. Pollinger<br>MCKOOL SMITH P.C.<br>300 W. 6th Street, Suite 1700<br>Austin, Texas 78701<br>United States of America<br>Attorney for Ericsson<br><br>Benjamin Levi<br>MCKOOL SMITH P.C.<br>1999 K Street, N.W. Suite 600<br>Washington, D.C. 20006<br>Attorney for Ericsson |
| b. Defendants (Respondents) | Samsung Electronics Co., Ltd.<br>Samsung Main Building, 250<br>Taepyung-ro 2-ka, Chung-ku<br>Seoul 100-742<br>Republic of Korea<br><br>Samsung Telecommunications America, LLC<br>1301 East Lookout Drive<br>Richardson, Texas 75082<br>United States of America<br><br>Samsung Electronics America, Inc.<br>85 Challenger Road<br>Ridgefield Park, New Jersey 07660<br>United States of America<br><br>(collectively "Samsung") |
| Representatives | Ruffin B. Cordell |

| | | |
|---|---|---|
| | | Michael J. McKeon<br>Joseph V. Colaianni<br>Ahmed J. Davis<br>Ralph A. Phillips<br>Steven A. Bowers<br>FISH & RICHARDSON P.C.<br>1425 K Street, N.W., 11th Floor<br>Washington, D.C. 20005<br>United States of America<br>Attorneys for Samsung |
| | c. Other parties | Lisa M. Kattan<br>Office of Unfair Import Investigations<br>U.S. International Trade Commission<br>500 E Street, S.W.<br>Washington, D.C. 20436<br>United States of America |
| 7.  Nature of the proceedings and summary of the facts | | This is a proceeding being conducted by the United States International Trade Commission (the "ITC") under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), based on a Complaint filed by Ericsson on November 30, 2012.  The Complaint alleges that Samsung infringes U.S. Patents Nos. 6,029,052; 6,058,359; 6,278,888; 6,301,556; 6,418,310; 6,445,917; 6,473,506; 6,519,223; 6,624,832; 6,772,215; and 8,169,992 (collectively, the "Asserted Patents").  The accused Samsung products include but are not limited to Samsung smartphones.<br><br>The ITC instituted proceedings based on Ericsson's Complaint on January 8, 2013 with publication of the Notice of Investigation in the Federal Register.  Upon institution, the case was assigned to Administrative Law Judge David P. Shaw to preside over pre-trial matters, conduct a trial, and issue an initial determination on the merits of the case. The initial determination is subject to possible review by the ITC with a right to appeal to the United States Court of Appeals for the Federal Circuit.<br><br>Flextronics is believed to have unique documents and information concerning: global |

| | | and domestic demand for articles, Flextronics' capacity to replace the volume of articles subject to Ericsson's requested remedial order, and the particular business and financial impact on Flextronics by Ericsson's requested remedial order.  Accordingly, Flextronics is believed to be among the most knowledgeable about, and to have documents in its possession, custody, and control concerning Samsung's defenses, including those based on the public interest considerations enumerated in 19 U.S.C. §§ 1337(e)(1). |
|---|---|---|
| 8. | a. Evidence to be obtained or other judicial act to be performed (Article 3, *d*) | It is respectfully requested that a judicial authority of Singapore order Flextronics International Ltd. to produce copies of documents and other property as described in Attachment A.  It is additionally requested that a judicial authority of Singapore order Flextronics International Ltd. to make available a suitable representative to provide testimony regarding the deposition topics set forth in Attachment B. |
| | b. Purpose of the evidence or judicial act sought | The requested documents and deposition testimony will provide important evidence related to the public interest considerations in the Investigation. |
| 9. Identity and address of any person to be examined (Article 3, *e*) | | Flextronics International Ltd. 2 Changi South Lane Singapore 486123 |
| 10. Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (Article 3, *f*) | | The topics of the deposition questions are set forth in Attachment B. |
| 11. Documents or other property to be inspected (Article 3, *g*) | | The documents and other property to be inspected are set forth in Attachment A. |
| 12. Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, *h*) | | It is respectfully requested that an examiner or other appropriate judicial officer of Singapore direct that the witness be duly sworn in accordance with the applicable procedures of Singapore, and that the testimony be taken and transcribed by a qualified court reporter and videographer chosen by Samsung's representatives.  It is further requested that the transcription of the deposition be in the English language. |

| | |
|---|---|
| | Additionally it is respectfully requested that each document described in Attachment A be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, as maintained in the ordinary course of business. |
| 13. Special methods or procedure to be followed (Articles 3, *i* and 9) | With regard to the production of documents, in the event that any document called for by these requests is withheld in whole or in part on the basis of any applicable privilege, it is requested that Flextronics International Ltd. furnish a privilege log that identifies each document for which any privilege is claimed and that provides, with respect to each document, the following information:<br>(a) the date the document was created and last modified;<br>(b) the subject matter of the document;<br>(c) the person(s) who prepared the document;<br>(d) all persons to whom the document was distributed, shown, or explained;<br>(e) the document's present custodian; and<br>(f) the nature of the privilege asserted.<br><br>With regard to the deposition, it is requested that:<br>(a) Flextronics International Ltd. be required to designate one or more officers, directors, managing agents, employees, or other person(s) to testify on behalf of Flextronics International Ltd.;<br>(b) Flextronics International Ltd. be required to identify the person or persons who will testify pursuant to this Request and the matter or matters about which each person will testify;<br>(c) the examination be conducted orally;<br>(d) the parties' representatives or their designees, attorneys, their interpreters, and a stenographer be permitted to be present during the examination;<br>(e) there be excluded from the examination, if permitted under the law of Singapore, all persons other than the parties' representatives or their designees, attorneys, their interpreters, and the stenographer, and any official of the |

| | |
|---|---|
| | court of Singapore required to be present during such proceedings; <br> (f) the stenographer be permitted to record verbatim the examination; <br> (g) the stenographer be permitted to record the examinations by audiovisual means; <br> (h) the attorneys conducting the examinations be permitted to ask questions regarding the topics listed in Attachment B; <br> (i) ten and a half hours (10.5) be allotted for the examination of each witness who requires a translator, and seven (7) hours be allotted for the examination of each English speaking witness; <br> (j) the witnesses be examined as soon as practicable; and <br> (k) the documents and property requested in Attachment A be provided to Respondents no later than five days before the deposition at a convenient location to be mutually determined. |
| 14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7) | It is requested that the individuals identified below be furnished as soon as practicable with a copy of the executed Letter of Request, and be informed as soon as practicable of the time and place for the examination of the witnesses. <br><br> Joseph V. Colaianni <br> FISH & RICHARDSON P.C. <br> 1425 K Street, N.W., 11th Floor <br> Washington, D.C. 20005 <br> Telephone: +1 202 783 5070 <br> United States of America <br> Attorney for Samsung <br><br> Benjamin Levi <br> MCKOOL SMITH P.C. <br> 1999 K Street, N.W. Suite 600 <br> Washington, D.C. 20006 <br> Attorney for Ericsson <br><br> Lisa M. Kattan <br> Office of Unfair Import Investigations <br> U.S. International Trade Commission <br> 500 E Street, S.W., Suite 401 <br> Washington, D.C. 20436 <br> United States of America |

| | |
|---|---|
| 15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8). | None |
| 16. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, *b*) | The witness may refuse to give evidence only insofar as he or she has a privilege or duty to refuse to give evidence under the laws of the United States or the laws of Singapore. |
| 17. The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | Samsung c/o<br>Joseph V. Colaianni<br>FISH & RICHARDSON P.C.<br>1425 K Street, N.W., 11th Floor<br>Washington, D.C. 20005<br>Telephone: +1 202 783 5070<br>United States of America<br>Attorney for Samsung |
| Date of Request | _____ of _____, 2013 |
| Signature and Seal of the Requesting Authority | <br><br><br><br>United States District Court Judge<br>U.S. District Court for the District of Columbia |

Attachments:
Attachment A: Documents or Other Property to be Produced by Flextronics International Ltd.;
Attachment B: Topics for the Deposition of Flextronics International Ltd.;
Attachment C: Protective Order;
Attachment D: Ground Rules;
Attachment E: Complaint

# ATTACHMENT A

## **DEFINITIONS**

The following definitions shall apply throughout these requests, regardless of whether upper or lower case letters are used:

A.     "Ericsson" and "Complainant(s)" shall each mean and refer to Complainant Ericsson Inc. and Telefonaktiebolaget LM Ericsson, individually and collectively, including without limitation all of its corporate locations, and all predecessors, predecessors-in-interest, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint venture, licensing agreements, or partnership relationships with Ericsson and others acting on behalf of Ericsson.

B.     "Flextronics," "You," and "Your" shall each mean and refer to Flextronics International Ltd., individually and collectively, including without limitation all of its corporate locations, and all predecessors, predecessors-in-interest, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint venture, licensing agreements, or partnership relationships with Flextronics International Ltd. and others acting on behalf of Flextronics International Ltd.

C.     "Samsung" refers collectively to Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

D.     "The '052 patent" means U.S. Patent No. 6,029,052.

E.     "The '359 patent" means U.S. Patent No. 6,058,359.

F.     "The '888 patent" means U.S. Patent No. 6,278,888.

G.     "The '556 patent" means U.S. Patent No. 6,301,556.

H.     "The '310 patent" means U.S. Patent No. 6,418,310.

I.     "The '917 patent" means U.S. Patent No. 6,445,917.

J.     "The '506 patent" means U.S. Patent No. 6,473,506.

K.     "The '223 patent" means U.S. Patent No. 6,519,223.

L.     "The '832 patent" means U.S. Patent No. 6,624,832.

M.     "The '215 patent" means U.S. Patent No. 6,772,215.

N.      "The '992 patent" means U.S. Patent No. 8,169,992.

O.      "Patents-In-Suit" means the '052 patent, the '359 patent, the '888 patent, the '556 patent, the '310 patent, the '917 patent, the '506 patent, the '223 patent, the '832 patent, the '215 patent, and/or the '992 patent.

P.      "Complaint" shall mean the Complaint of Ericsson Inc. and Telefonaktiebolaget LM Ericsson Under Section 337 of the Tariff Act of 1930, As Amended, filed November 30, 2012.

Q.      "IEEE" means Institute of Electrical and Electronics Engineers.

R.      "ETSI" means European Telecommunications Standards Institute.

S.      "3GPP" means the 3rd Generation Partnership Project.

T.      "LTE" means Long Term Evolution.

U.      "GSM" means Global System for Mobile Communication.

V.      "AMR-NB" means Adaptive Multi-Rate Narrowband.

W.      "AMR-WB+" means Extended Adaptive Multi-Rate Wideband.

X.      "GPRS" means General Packet Radio Service.

Y.      "EDGE" means Enhanced Data Rates for GSM Evolution.

Z.      "UMTS" means Universal Mobile Telecommunications System.

AA.     "W-CDMA" means Wideband Code Division Multiple Access.

BB.     "LTE Standards" refers to the LTE standards published by the 3GPP as the 36 series, all versions included and available at http://www.3gpp.org/ftp/Specs/html-info/36-series.htm.

CC.     "CODECs Standards" refers to the CODECs standards published by 3GPP as the 26 series, 46 series, and 06 series, all versions included and available at http://www.3gpp.org/ftp/Specs/html-info/26-series.htm;    http://www.3gpp.org/ftp/Specs/html-info/46-series.htm; and http://www.3gpp.org/ftp/Specs/html-info/06-series.htm.

DD.     "IPR" means Intellectual Property Rights, including patents and patent applications.

3

EE.     "Standard" means any technical standard created, authorized, controlled, and/or developed privately or unilaterally by a corporation, consortium, regulatory body, government, or standards setting organization, including but not limited to the IEEE, ETSI and/or 3GPP.

FF.     "Accused Standards" refers to the GSM, AMR-NB, AMR-WB+, GPRS, EDGE, W-CDMA, HSPA, LTE, and IEEE 802.11 Standards.

GG.     "FRAND" means Fair, Reasonable, and Non-Discriminatory as recited in standard setting organization Intellectual Property Rights documents, including IEEE, ETSI, and/or 3GPP IPR documents.

HH.     "RAND" means Reasonable and Non-Discriminatory as recited in standard setting organization Intellectual Property Rights documents, including IEEE, ETSI, and/or 3GPP IPR documents.

II.     "Product" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, assemblage of components/parts (either individually or collectively), process, or method which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

JJ.     "Ericsson Products" shall mean all products, whether manufactured or sold by Ericsson that embody the subject matter of any of the Patents-In-Suit, either in structure or in method of manufacturing, and all prototypes, derivatives, equivalents, and variations of such products.

KK.     The term "Mobile Device" means any portable electronic device, including but not limited to, cell phone, smart phone, handheld computer, tablet, and PDA.

LL.     The term "Component" refers to an integrated circuit or other part used in a Mobile Device, including, without limitation, an application processor, baseband processor, Wi-Fi (WLAN) module, radio module, Bluetooth module, audio codec, audio processor, voice processor, power management unit (PMU), display panel, touch sensor, image sensor, and/or camera module.

4

MM.    "Present Investigation" shall mean *Certain Electronic Devices, Including Wireless Communication Devices, Tablet Computers, Media Players, and Televisions, and Components Thereof*, ITC Inv. No. 337-TA-862.

NN.    "Person" shall mean any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other legal entity.  The acts of a Person shall include the acts of directors, officers, owners, members, employees, agents, attorneys or other representatives acting on the Person's behalf.

OO.    "Document" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure and shall include without limitation any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, file, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, e-mails; pictures, photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including without limitation originals, drafts, and all non-identical copies of each document (which, by reason of any variation, such as the presence or absence of hand-written notes or underlining, represents a distinct version).  By way of example, the term "document(s)" as used herein shall include, without limitation:   correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs; telegrams; telexes; e-mails; metadata; minutes; agendas; contracts; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; inter-office and intra-office communications; handwritten or typewritten notes; notations or summaries of telephone conversations, meetings, or conferences; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; and all other tangible items of readable, recorded, or visual material of any kind.

PP.    "Relate to," "Related to," or "Relating to" shall mean in whole or in part constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

QQ.    "Describe," when used in relation to an act, event, instance, occasion, transaction, conversation, or communication, shall mean (1) to state the date and place thereof; (2) to identify the individual participants; (3) to summarize separately for each individual participant what he said or did; and (4) to identify each document used or prepared in connection therewith or making any reference thereto.

RR.    The term "identify," when used with respect to any natural person, means that the following information shall be provided:  the person's full name; last known home address; last known business address and telephone number; last known title or occupation; and last known employer.

SS.    The term "identify," when used with respect to any legal entity, such as a corporation, company, or person other than a natural person, means that the following information shall be provided:  the entity's name; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that legal entity.

TT.    The term "identify," when used with respect to a document, subject to the option to produce records under 19 C.F.R. § 210.29(c), means to provide information sufficient to locate that document, including but not limited to the following: the Bates range, the date appearing on such document or, if no date appears thereon, the approximate date the document was prepared; the identifying code number, file number, title, or label of such document; a general description of such document (e.g., letter, memorandum, drawing); the title or heading; the number of pages of which such document consists; the name of each person who signed or authorized the document; the name of each addressee; the name of each person having possession, custody, or control of such document; if the document existed at one time but does not presently exist, the reason(s) why it no longer exists and the identity of the last person having

custody of it; and, if the document is in a foreign language, whether an English translation of the document exists, whether partial or complete.

## <u>INSTRUCTIONS</u>

A.      The singular form of a word should be interpreted in the plural as well.  Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

B.      These requests shall apply to all documents in your possession, custody, or control at the present time or coming into your possession, custody, or control prior to the date of the production.  If you know of the existence, past or present, of any documents or things requested below, but are unable to produce such documents or things because they are not presently in your possession, custody, or control, you shall so state and shall identify such documents or things, and the person who has possession, custody, or control of the documents or things.

C.      If no documents are responsive to a particular request, you are to state that no responsive documents exist.

D.      For any responsive documents or tangible things that have been lost, destroyed, or withheld from production based on any ground, you shall provide a written statement setting forth:

(1) the identity of the document;

(2) the nature of the document (e.g., letter, memorandum, chart);

(3) the identity of the person(s) who received copies of the document;

(4) the date of the document;

(5) a brief description of the subject matter of the document; and

(6) the circumstances of the loss or destruction of the document and any fact, statute, rule or decision upon which you rely in withholding the document.

8

E.     If you decline to produce any document or part thereof based on a claim of privilege or any other claim, describe the nature and basis of your claim and the information withheld in a manner sufficient:

(1) to disclose the facts upon which you rely in asserting your claim;

(2) to permit the grounds and reasons for withholding the information to be identified unambiguously; and

(3) to permit the information withheld to be identified unambiguously.

F.     All documents requested are to be produced in the same file or other organizational environment in which they are maintained.  For example, a document that is part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as the original.  Alternatively, as to each document and thing produced in response hereto, you shall identify the request for production and where applicable, the interrogatory number, in response to which the document or thing is being produced.  Where a document or thing exists in hard copy and electronic format, you shall produce both the hard and the electronic copy.

G.     These requests seek all responsive documents in their original language and, if such original language is not English, these requests also seek all English-language translations that may exist for any such documents.

H.     You shall keep and produce a record of the source of each document produced. This shall include the name and location of the file where each document was located and the name of the person, group, or department having possession, custody, or control of each document.

I.     Each document is to be produced along with all drafts, without abbreviation or redaction.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**

Documents sufficient to identify each Mobile Device sold in the United States for which You have assembled or manufactured part or all of the Mobile Device from 2007 to present.

**REQUEST FOR PRODUCTION NO. 2**

Documents sufficient to identify each Mobile Device (existing or planned) to be sold in the United States for which you have plans to assemble or manufacture part or all of the Mobile Device over the next five years.

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to show Your current and projected capacity to assemble or manufacture each Mobile Device You identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to show the actual production volume for each Mobile Device You identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 5**

Documents sufficient to show the cost, time, and resources necessary to construct and launch a new assembly or manufacturing process for each Mobile Device You identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 6**

Documents sufficient to describe any known or projected delays in assembling or manufacturing each Mobile Device You identified in response to Request for Production Nos. 1 and 2, including an identification of any known or suspected causes, time of delay, and cost of delay.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to show any constraints or limits to Your ability to construct or launch a new assembly or manufacturing process for each Mobile Device You identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to show any known or perceived limits on Your ability to increase capacity to assemble or manufacture each Mobile Device You identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to show the cost, time, and resources necessary to increase Your capacity to assemble or manufacture for each Mobile Device You identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 10:**

Documents sufficient to show all primary and alternate suppliers of Components for each Mobile Device You identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to show the price of each Component by You or on Your behalf for each Mobile Device You identified in response to Request for Production Nos. 1 and 2.

**REQUEST FOR PRODUCTION NO. 12:**

Documents sufficient to describe any pricing fluctuations of materials or other Components that were greater than 30% over any 12 month for each Mobile Device You identified in response to Request for Production Nos. 1 and 2.

# ATTACHMENT B

# DEFINITIONS

The following definitions shall apply throughout these examination topics, regardless of whether upper or lower case letters are used:

A.      "Ericsson" and "Complainant(s)" shall each mean and refer to Complainant Ericsson Inc. and Telefonaktiebolaget LM Ericsson, individually and collectively, including without limitation all of its corporate locations, and all predecessors, predecessors-in-interest, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint venture, licensing agreements, or partnership relationships with Ericsson and others acting on behalf of Ericsson.

B.      "Flextronics," "You," and "Your" shall each mean and refer to Flextronics International Ltd., individually and collectively, including without limitation all of its corporate locations, and all predecessors, predecessors-in-interest, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint venture, licensing agreements, or partnership relationships with Flextronics International Ltd.and others acting on behalf of Flextronics International Ltd.

C.      "Samsung" refers collectively to Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC.

D.      "The '052 patent" means U.S. Patent No. 6,029,052.

E.      "The '359 patent" means U.S. Patent No. 6,058,359.

F.      "The '888 patent" means U.S. Patent No. 6,278,888.

G.      "The '556 patent" means U.S. Patent No. 6,301,556.

H.      "The '310 patent" means U.S. Patent No. 6,418,310.

I.      "The '917 patent" means U.S. Patent No. 6,445,917.

J.      "The '506 patent" means U.S. Patent No. 6,473,506.

K.      "The '223 patent" means U.S. Patent No. 6,519,223.

L.      "The '832 patent" means U.S. Patent No. 6,624,832.

M.      "The '215 patent" means U.S. Patent No. 6,772,215.

N.      "The '992 patent" means U.S. Patent No. 8,169,992.

O.      "Patents-In-Suit" means the '052 patent, the '359 patent, the '888 patent, the '556 patent, the '310 patent, the '917 patent, the '506 patent, the '223 patent, the '832 patent, the '215 patent, and/or the '992 patent.

P.      "Complaint" shall mean the Complaint of Ericsson Inc. and Telefonaktiebolaget LM Ericsson Under Section 337 of the Tariff Act of 1930, As Amended, filed November 30, 2012.

Q.      "IEEE" means Institute of Electrical and Electronics Engineers.

R.      "ETSI" means European Telecommunications Standards Institute.

S.      "3GPP" means the 3rd Generation Partnership Project.

T.      "LTE" means Long Term Evolution.

U.      "GSM" means Global System for Mobile Communication.

V.      "AMR-NB" means Adaptive Multi-Rate Narrowband.

W.      "AMR-WB+" means Extended Adaptive Multi-Rate Wideband.

X.      "GPRS" means General Packet Radio Service.

Y.      "EDGE" means Enhanced Data Rates for GSM Evolution.

Z.      "UMTS" means Universal Mobile Telecommunications System.

AA.     "W-CDMA" means Wideband Code Division Multiple Access.

BB.     "LTE Standards" refers to the LTE standards published by the 3GPP as the 36 series, all versions included and available at http://www.3gpp.org/ftp/Specs/html-info/36-series.htm.

CC.     "CODECs Standards" refers to the CODECs standards published by 3GPP as the 26 series, 46 series, and 06 series, all versions included and available at http://www.3gpp.org/ftp/Specs/html-info/26-series.htm;     http://www.3gpp.org/ftp/Specs/html-info/46-series.htm; and http://www.3gpp.org/ftp/Specs/html-info/06-series.htm.

DD.     "IPR" means Intellectual Property Rights, including patents and patent applications.

2

EE.     "Standard" means any technical standard created, authorized, controlled, and/or developed privately or unilaterally by a corporation, consortium, regulatory body, government, or standards setting organization, including but not limited to the IEEE, ETSI and/or 3GPP.

FF.     "Accused Standards" refers to the GSM, AMR-NB, AMR-WB+, GPRS, EDGE, W-CDMA, HSPA, LTE, and IEEE 802.11 Standards.

GG.     "FRAND" means Fair, Reasonable, and Non-Discriminatory as recited in standard setting organization Intellectual Property Rights documents, including IEEE, ETSI, and/or 3GPP IPR documents.

HH.     "RAND" means Reasonable and Non-Discriminatory as recited in standard setting organization Intellectual Property Rights documents, including IEEE, ETSI, and/or 3GPP IPR documents.

II.     "Product" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, assemblage of components/parts (either individually or collectively), process, or method which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

JJ.     "Ericsson Products" shall mean all products, whether manufactured or sold by Ericsson that embody the subject matter of any of the Patents-In-Suit, either in structure or in method of manufacturing, and all prototypes, derivatives, equivalents, and variations of such products.

KK.     The term "Mobile Device" means any portable electronic device, including but not limited to, cell phone, smart phone, handheld computer, tablet, and PDA.

LL.     The term "Component" refers to an integrated circuit or other part used in a Mobile Device, including, without limitation, an application processor, baseband processor, Wi-Fi (WLAN) module, radio module, Bluetooth module, audio codec, audio processor, voice processor, power management unit (PMU), display panel, touch sensor, image sensor, and/or camera module.

MM.    "Present Investigation" shall mean Certain Electronic Devices, Including Wireless Communication Devices, Tablet Computers, Media Players, and Televisions, and Components Thereof, ITC Inv. No. 337-TA-862.

NN.    "Person" shall mean any natural person or any business, proprietorship, firm, partnership, corporation, association, organization, or other legal entity.  The acts of a Person shall include the acts of directors, officers, owners, members, employees, agents, attorneys or other representatives acting on the Person's behalf.

OO.    "Document" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure and shall include without limitation any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, file, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, e-mails; pictures, photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including without limitation originals, drafts, and all non-identical copies of each document (which, by reason of any variation, such as the presence or absence of hand-written notes or underlining, represents a distinct version).  By way of example, the term "document(s)" as used herein shall include, without limitation:   correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs; telegrams; telexes; e-mails; metadata; minutes; agendas; contracts; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; inter-office and intra-office communications; handwritten or typewritten notes; notations or summaries of telephone conversations, meetings, or conferences; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; and all other tangible items of readable, recorded, or visual material of any kind.

PP.      "Relate to," "Related to," or "Relating to" shall mean in whole or in part constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

QQ.      "Describe," when used in relation to an act, event, instance, occasion, transaction, conversation, or communication, shall mean (1) to state the date and place thereof; (2) to identify the individual participants; (3) to summarize separately for each individual participant what he said or did; and (4) to identify each document used or prepared in connection therewith or making any reference thereto.

RR.      The term "identify," when used with respect to any natural person, means that the following information shall be provided:  the person's full name; last known home address; last known business address and telephone number; last known title or occupation; and last known employer.

SS.      The term "identify," when used with respect to any legal entity, such as a corporation, company, or person other than a natural person, means that the following information shall be provided:  the entity's name; the place of incorporation or organization; the principal place of business; and the nature of the business conducted by that legal entity.

TT.      The term "identify," when used with respect to a document, subject to the option to produce records under 19 C.F.R. § 210.29(c), means to provide information sufficient to locate that document, including but not limited to the following: the Bates range, the date appearing on such document or, if no date appears thereon, the approximate date the document was prepared; the identifying code number, file number, title, or label of such document; a general description of such document (e.g., letter, memorandum, drawing); the title or heading; the number of pages of which such document consists; the name of each person who signed or authorized the document; the name of each addressee; the name of each person having possession, custody, or control of such document; if the document existed at one time but does not presently exist, the reason(s) why it no longer exists and the identity of the last person having

5

custody of it; and, if the document is in a foreign language, whether an English translation of the document exists, whether partial or complete.

## INSTRUCTIONS

A.      The singular form of a word should be interpreted in the plural as well.  Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

B.      You shall make sure your designees are prepared to testify fully on the following topics, after conducting a diligent and thorough investigation into all information within your possession, custody, or control, and educate the designees with such information as needed.  If your designees cannot provide a full testimony on any topic, you should so advise us immediately, specifying the portion of the topic the designees are unable to answer and providing any information you have regarding the unanswered portion.

C.      In the event you refuse to fully respond to a discovery request on the basis of a claim of attorney-client privilege, you shall at least respond to that portion of the request that is unobjectionable and specifically identify that portion of the request that is allegedly protected by attorney-client privilege.

D.      If any of the testimony sought concerns "confidential business information," as that term is defined in the Protective Order (Attachment C), such testimony should be offered under the terms and provisions of the Protective Order.

E.      In the event you refuse to fully respond to a discovery request because it is unduly burdensome, you shall at least respond to that portion of the request that is unobjectionable and specifically identify that portion of the request that is allegedly unduly burdensome.

F.      In the event you refuse to fully respond to a discovery request because it is overly broad, you shall at least respond to that portion of the request that is unobjectionable and specifically identify that portion of the request that is allegedly overly broad.

G.      These discovery requests are deemed to be continuing in nature and, to the extent required by the Ground Rules and the Commission's Rules, the responding party is to

supplement its responses with information or documents that may become known or available to it after the date of its initial response.

H.     Your designees shall bring to this deposition all documents reviewed, relied upon, or consulted in preparation for this deposition.

## TOPICS FOR EXAMINATION

### EXAMINATION TOPIC NO. 1:

All Mobile Devices sold in the United States for which You have assembled or manufactured part or all of the Mobile Device from 2007 to present.

### EXAMINATION TOPIC NO. 2:

All Mobile Device (existing or planned) to be sold in the United States for which you have plans to assemble or manufacture part or all of the Mobile Device over the next five years.

### EXAMINATION TOPIC NO. 3:

Your current and projected capacity to assemble or manufacture each Mobile Device encompassed in Examination Topics 1 and 2.

### EXAMINATION TOPIC NO. 4:

Your actual production volume for each Mobile Device encompassed in Examination Topics 1 and 2.

### EXAMINATION TOPIC NO. 5:

The cost, time, and resources necessary to construct and launch a new assembly or manufacturing process for each Mobile Device encompassed in Examination Topics 1 and 2.

### EXAMINATION TOPIC NO. 6:

Any known or projected delays in assembling or manufacturing each Mobile Device encompassed in Examination Topics 1 and 2, including an identification of any known or suspected causes, time of delay, and cost of delay.

9

**EXAMINATION TOPIC NO. 7:**

Any constraints or limits to Your ability to construct or launch a new assembly or manufacturing process for each Mobile Device encompassed in Examination Topics 1 and 2.

**EXAMINATION TOPIC NO. 8:**

Any known or perceived limits on Your ability to increase capacity to assemble or manufacture each Mobile Device encompassed in Examination Topics 1 and 2.

**EXAMINATION TOPIC NO. 9:**

The cost, time, and resources necessary to increase Your capacity to assemble or manufacture for each Mobile Device encompassed in Examination Topics 1 and 2.

**EXAMINATION TOPIC NO. 10:**

All primary and alternate suppliers of Components for each Mobile Device encompassed in Examination Topics 1 and 2.

**EXAMINATION TOPIC NO. 11:**

The price of each Component by You or on Your behalf for each Mobile Device encompassed in Examination Topics 1 and 2.

**EXAMINATION TOPIC NO. 12:**

Any pricing fluctuations of materials or other Components that were greater than 30% over any 12 month period for each Mobile Device encompassed in Examination Topics 1 and 2.

**EXAMINATION TOPIC NO. 13:**

Testimony relating to documents produced under the instant subpoena.

10

## EXAMINATION TOPIC NO. 14:

Testimony authenticating documents produced under the instant subpoena.

## WRITTEN DEPOSITION QUESTIONS

**QUESTION 1:**

What is your name?

**QUESTION 2:**

Where do you live?

**QUESTION 3:**

Please briefly describe your educational background?

**QUESTION 4:**

Do you work for Flextronics?

**QUESTION 5:**

How long have you worked for Flextronics?

**QUESTION 6:**

Do you understand that you are here to give testimony of behalf of Flextronics?

**QUESTION 7:**

What is your job description at Flextronics?

**QUESTION 8:**

Please describe your duties at Flextronics.

**QUESTION 9:**

Please state all mobile devices sold in the United States for which Flextronics has assembled part or all of the device from 2007 to present.

**QUESTION 10:**

Please state all mobile devices sold in the United States for which Flextronics has manufactured part or all of the device from 2007 to present.

**QUESTION 11:**

For each year, please state your actual production volume for each mobile device you identified in QUESTION 9 or 10.

12

**QUESTION 12:**

For each mobile device you identified in QUESTION 9 or 10, please describe Flextronics' capacity concerning the device.

**QUESTION 13:**

For each mobile device you identified in QUESTION 9 or 10, please describe Flextronics' projected capacity concerning the device.

**QUESTION 14:**

For each mobile device you identified in QUESTION 9 or 10, please list all known or perceived limits on Flextronics' ability to increase capacity to assemble or manufacture that mobile device.

**QUESTION 15:**

For each mobile device you identified in QUESTION 9 or 10, please identify the time, cost, and resources to add capacity.

**QUESTION 16:**

What all is included in the cost to add capacity?

**QUESTION 17:**

Can Flextronics currently pay the costs to add that capacity?

**QUESTION 18:**

What factors can impact the time to add capacity?

**QUESTION 19:**

What is the cause of each of those factors?

**QUESTION 20:**

What is the effect of each of those factors?

**QUESTION 21:**

Please describe in detail each of the resources needed to add capacity.

**QUESTION 22:**

Does Flextronics have access to those resources?

**QUESTION 23:**

How long would it take for Flextronics to obtain those resources?

**QUESTION 24:**

For each mobile device you identified in QUESTION 9 or 10, please list any constraints or limitations on Flextronics' ability to construct a new assembly or manufacturing process for that mobile device.

**QUESTION 25:**

For each mobile device you identified in QUESTION 9 or 10, please identify the time, cost, and resources to construct and launch a new assembly or manufacturing process.

**QUESTION 26:**

What factors can impact the time to launch a new assembly process?

**QUESTION 27:**

What is the cause of each of those factors?

**QUESTION 28:**

What is the effect of each of those factors?

**QUESTION 29:**

What factors can impact the time necessary to launch a new manufacturing process?

**QUESTION 30:**

What is the cause of each of those factors?

**QUESTION 31:**

What is the effect of each of those factors?

**QUESTION 32:**

Please describe in detail each of the resources needed to construct and launch a new assembly or manufacturing process.

14

**QUESTION 33:**

Does Flextronics have access to those resources?

**QUESTION 34:**

How long would it take for Flextronics to obtain those resources?

**QUESTION 35:**

For each mobile device you identified in QUESTION 9 or 10, please list any known or projected delays in assembling or manufacturing.

**QUESTION 36:**

For each known or projected delay you have listed, please state the known or suspected cause of the delay.

**QUESTION 37:**

For each known or projected delay you have listed, please state when the delay will occur and how long the delay will last.

**QUESTION 38:**

How has Flextronics determined how long the delay is likely to last?

**QUESTION 39:**

For each known or projected delay you have listed, please state the cost of the delay.

**QUESTION 40:**

How has Flextronics determined the estimated cost of the delay?

**QUESTION 41:**

For each mobile device you identified in QUESTION 9 or 10, please list all of Flextronics' primary or alternate suppliers of components that Flextronics uses.

**QUESTION 42:**

Has Flextronics ever seen a pricing fluctuation of greater that thirty percent over a twelve month period for the materials or components Flextronics uses?

**QUESTION 43:**

If yes to QUESTION 42, please state the supplier and component associated with the pricing fluctuation.

**QUESTION 44:**

If yes to QUESTION 42, please describe all known causes of the pricing fluctuation.

**QUESTION 45:**

If yes to QUESTION 42, please describe all known effect of the pricing fluctuation.

**QUESTION 46:**

Please state all mobile devices sold in the United States for which Flextronics currently expects to assemble or manufacture part or all of the device in the future.

**QUESTION 47:**

Are you familiar with Flextronics' record keeping practices?

**QUESTION 48:**

How are you familiar with Flextronics' record keeping practices?

**QUESTION 49:**

How were the documents that were produced in response to this Letter of Request compiled?

**QUESTION 50:**

Were the documents produced in response to the Letter of Request made at or near the time of the act or event reflected in the documents?

**QUESTION 51:**

Were the documents produced in response to the Letter of Request made by someone with knowledge, or transmitted by someone with knowledge, of the acts or events reflected in the documents?

**QUESTION 52:**

Were the documents produced in response to the Letter of Request kept in the course of Flextronics' regularly conducted activity?

**QUESTION 53:**

Was the making of the documents produced in response to the Letter of Request a regular practice of Flextronics?

# Attachment C

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.

In the Matter of

CERTAIN ELECTRONIC DEVICES,
INCLUDING WIRELESS COMMUNICATION
DEVICES, TABLET COMPUTERS, MEDIA
PLAYERS, AND TELEVISIONS, AND
COMPONENTS THEREOF

Inv. No. 337-TA-862

## Order No. 1: PROTECTIVE ORDER

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information, as such terms are used in the Commission's Rules, 19 C.F.R. 210.5;

IT IS HEREBY ORDERED THAT:

1. Confidential business information is information which has not been made public and which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, the disclosure of which information is likely to have the effect of either (i) impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions; or (ii) causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information.

2. (a) Any information submitted, in prehearing discovery or in a pleading, motion, or response to a motion either voluntarily or pursuant to order, in this investigation, which is asserted by a supplier to contain or constitute confidential business information shall be so designated by such supplier in writing, or orally at a deposition, conference or hearing, and shall be segregated from other information being submitted. Documents shall be clearly and prominently marked on their face with the legend: "[supplier's name] CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER," or a comparable notice. During the prehearing phase of this investigation, such information whether submitted in writing or in oral testimony shall be disclosed only *in camera* before the Commission or the administrative law judge.

(b) The administrative law judge or the Commission may determine that information alleged to be confidential is not confidential, or that its disclosure is necessary for the proper disposition of the proceeding, before, during or after the close of a hearing herein. If such a determination is made by the administrative law judge or the Commission, opportunity shall be provided to the supplier of such information to argue its confidentiality prior to the time of such ruling.

3. In the absence of written permission from the supplier or an order by the Commission or the administrative law judge, any confidential documents or business information submitted in accordance with the provisions of paragraph 2 above shall not be disclosed to any person other than: (i) outside counsel for parties to this investigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) technical experts and their staff who are employed for the purposes of this litigation (unless they

2

are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of certain electronic devices, including wireless communication devices, tablet computers, media players, and televisions, and components thereof, which are the subject of this investigation); (iv) the Commission, the administrative law judge, the Commission staff, and personnel of any governmental agency as authorized by the Commission; and (v) the Commission, its employees, and contract personnel who are acting in the capacity of Commission employees, for developing or maintaining the records of this investigation or related proceedings for which this information is submitted, or in internal audits and investigations relating to the programs and operations of the Commission pursuant to 5 U.S.C. Appendix 3.[1]

4.  Confidential business information submitted in accordance with the provisions of paragraph 2 above shall not be made available to any person designated in paragraph 3(i) and (iii) unless he or she shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission: (i) to be bound by the terms thereof; (ii) not to reveal such confidential business information to anyone other than another person designated in paragraph 3; and (iii) to utilize such confidential business information solely for purposes of this investigation.

5.  If the Commission or the administrative law judge orders, or if the supplier and all parties to the investigation agree, that access to, or dissemination of information submitted as confidential business information shall be made to persons not included in paragraph 3 above, such matter shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be

---

[1] *See* Commission Administrative Order 97-06 (Feb. 4, 1997).

considered subject to it, unless the Commission or the administrative law judge finds that the information is not confidential business information as defined in paragraph 1 hereof.

6. Any confidential business information submitted to the Commission or the administrative law judge in connection with a motion or other proceeding within the purview of this investigation shall be submitted under seal pursuant to paragraph 2 above. Any portion of a transcript in connection with this investigation containing any confidential business information submitted pursuant to paragraph 2 above shall be bound separately and filed under seal. When any confidential business information submitted in accordance with paragraph 2 above is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such confidential portions and separately label them "[supplier's name], CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER." Before a court reporter receives any such information, he or she shall have first read this order and shall have agreed in writing to be bound by the terms thereof. Alternatively, he or she shall sign the agreement included as Attachment A hereto. Copies of each such signed agreement shall be provided to the supplier of such confidential business information and the Secretary of the Commission.

7. The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information submitted in accordance with paragraph 2 above to which the person asserting the confidential status thereof agrees in writing, or the Commission or the administrative law judge rules, after an opportunity for hearing, was publicly known at the time it was supplied to the receiving party or has since become publicly known through no fault of the receiving party.

4

8. The Commission, the administrative law judge, and the Commission investigative attorney acknowledge that any document or information submitted as confidential business information pursuant to paragraph 2 above is to be treated as such within the meaning of 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905, subject to a contrary ruling, after hearing, by the Commission or its Freedom of Information Act Officer, or the administrative law judge.

9. Unless a designation of confidentiality has been withdrawn, or a determination has been made by the Commission or the administrative law judge that information designated as confidential, is no longer confidential, the Commission, the administrative law judge, and the Commission investigative attorney shall take all necessary and proper steps to preserve the confidentiality of, and to protect each supplier's rights with respect to, any confidential business information designated by the supplier in accordance with paragraph 2 above, including, without limitation:  (a) notifying the supplier promptly of (i) any inquiry or request by anyone for the substance of or access of such confidential business information, other than those authorized pursuant to this order, under the Freedom of Information Act, as amended (5 U.S.C. § 552) and (ii) any proposal to declassify or make public any such confidential business information; and (b) providing the supplier at least seven days after receipt of such inquiry or request within which to take action before the Commission, its Freedom of Information Act Officer, or the administrative law judge, or otherwise to preserve the confidentiality of and to protect its rights in, and to, such confidential business information.

10. If while an investigation is before the administrative law judge, a party to this order who is to be a recipient of any business information designated as confidential and submitted in accordance with paragraph 2, disagrees with respect to such a designation, in full or in part, it shall notify the supplier in writing, and they will thereupon confer as to the status of the subject

5

information proffered within the context of this order. If prior to, or at the time of such a conference, the supplier withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the investigation, such supplier shall express the withdrawal, in writing, and serve such withdrawal upon all parties and the administrative law judge. If the recipient and supplier are unable to concur upon the status of the subject information submitted as confidential business information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status to the administrative law judge who will rule upon the matter. The administrative law judge may *sua sponte* question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

11. No less than 10 days (or any other period of time designated by the administrative law judge) prior to the initial disclosure to a proposed expert of any confidential information submitted in accordance with paragraph 2, the party proposing to use such expert shall submit in writing the name of such proposed expert and his or her educational and employment history to the supplier. If the supplier objects to the disclosure of such confidential business information to such proposed expert as inconsistent with the language or intent of this order or on other grounds, it shall notify the recipient in writing of its objection and the grounds therefor prior to the initial disclosure. If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the supplier shall submit immediately each objection to the administrative law judge for a ruling. If the investigation is before the Commission the matter shall be submitted to the Commission for resolution. The submission of such confidential business information to such proposed expert shall be withheld pending the ruling of the Commission or the administrative law judge. The terms of this paragraph shall be inapplicable

6

to experts within the Commission or to experts from other governmental agencies who are consulted with or used by the Commission.

12. If confidential business information submitted in accordance with paragraph 2 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the supplier and the administrative law judge and, without prejudice to other rights and remedies of the supplier, make every effort to prevent further disclosure by it or by the person who was the recipient of such information.

13. Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Commission, its Freedom of Information Act Officer, or the administrative law judge concerning the issue of the status of confidential business information.

14. Upon final termination of this investigation, each party that is subject to this order shall assemble and return to the supplier all items containing confidential business information submitted in accordance with paragraph 2 above, including all copies of such matter which may have been made. Alternatively, the parties subject to this order may, with the written consent of the supplier, destroy all items containing confidential business information and certify to the supplier (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Commission, including its investigative attorney, and the administrative law judge, which shall retain such material pursuant to statutory requirements and for other recordkeeping purposes, but may destroy those additional copies in its possession which it regards as surplusage.

7

Notwithstanding the above paragraph, confidential business information may be transmitted to a district court pursuant to Commission Rule 210.5(c).

15. If any confidential business information which is supplied in accordance with paragraph 2 above is supplied by a nonparty to this investigation, such a nonparty shall be considered a "supplier" as that term is used in the context of this order.

16. Each nonparty supplier shall be provided a copy of this order by the party seeking information from said supplier.

17. The Secretary shall serve a copy of this order upon all parties.

David P. Shaw
Administrative Law Judge

Issued: January 9, 2013

8

**Attachment A**

## NONDISCLOSURE AGREEMENT FOR
## REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the investigation or hearing in *Certain Electronic Devices, Including Wireless Communication Devices, Tablet Computers, Media Players, and Televisions, and Components Thereof*, 337-TA-862, except as permitted in the protective order issued in this case. I will not directly or indirectly use, or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the investigation or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the participants in said investigation.

I am aware that the unauthorized use or conveyance of information as specified above is a violation of the Federal Criminal Code and punishable by a fine of up to $10,000, imprisonment of up to ten (10) years, or both.

Signed _____

Dated _____

Firm or affiliation _____

CERTAIN ELECTRONIC DEVICES, INCLUDING WIRELESS COMMUNICATION
DEVICES, TABLET COMPUTERS, MEDIA PLAYERS, AND TELEVISIONS, AND
COMPONENTS THEREOF

INV. NO. 337-TA-862

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **ORDER NO. 1** has been served by hand upon the
Commission Investigative Attorney, **Lisa Kattan, Esq.**, and the following parties as indicated, on
_____ JAN 10 2013 _____.

Lisa R. Barton, Acting Secretary
U.S. International Trade Commission
500 E Street SW, Room 112A
Washington, DC 20436

| | |
|---|---|
| **FOR COMPLAINANTS ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON:**<br><br>Benjamin Levi<br>**MCKOOK SMITH P.C.**<br>1999 K Street, NW, Suite 600<br>Washington, DC 20006 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(x) Via First Class Mail<br>( ) Other: _____ |
| **FOR RESPONDENTS  SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA LLC, AND  SAMSUNG ELECTRONICS CO., LTD:**<br><br>Michael J. McKeon<br>**FISH & RICHARDSON P.C.**<br>1425 K Street, NW, 11th Floor<br>Washington, DC 20005 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(x) Via First Class Mail<br>( ) Other: _____ |
| Heather Hall<br>**LEXIS-NEXIS**<br>9443 Springboro Pike<br>Miamisburg, OH 45342 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(x) Via First Class Mail<br>( ) Other: _____ |
| **Kenneth Clair**<br>Thomson West<br>1100 Thirteenth Street, NW, Suite 200<br>Washington, D.C. 20005 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(x) Via First Class Mail<br>( ) Other: _____ |

UNITED STATES INTERNATIONAL TRADE COMMISSION
Washington, D.C.

In the Matter of

CERTAIN ELECTRONIC DEVICES,
INCLUDING WIRELESS COMMUNICATION
DEVICES, TABLET COMPUTERS, MEDIA
PLAYERS, AND TELEVISIONS, AND
COMPONENTS THEREOF

Inv. No. 337-TA-862

Order No. 9

Pursuant to Commission Rule 210.15, complainants Ericsson Inc. and

Telefonaktiebolaget LM Ericsson and respondents Samsung Electronics Co. Ltd., Samsung

Electronics America, Inc., and Samsung Telecommunications America LLC (collectively, the

"private parties") filed a joint motion for an amendment to the Protective Order (Order No. 1) to

provide: (1) enhanced confidentiality provisions for the production, use, and treatment of the

private parties' (and third parties') highly sensitive and confidential source code; (2) the cross-

use of discovery materials produced by the private parties in this proceeding in other proceedings

involving the private parties; and (3) protection for inadvertently produced privileged documents

and information.  Motion Docket No. 862-14.  The amendments to the Protective Order

requested by the private parties are attached as Exhibit A.  The movants state that the

Commission Investigative Staff does not oppose the pending motion.

Motion No. 862-14 is granted.  The Protective Order is hereby amended to contain the

following provisions.

18.   Confidential Source Code shall mean human-readable programming language text

that defines software, firmware, microcode, or electronic hardware descriptions. Confidential

Source Code includes, without limitation, computer code; scripts; assembly; object code; source

code listings and descriptions of source code; object code listings and descriptions of object

code; Hardware Description Language (HDL); Register Transfer Level (RTL) files that describe

the hardware design of any ASIC or other chip; similarly sensitive implementation details; files

containing text written in "C," "C++," assembler, VHDL, Verilog, and digital signal processor

(DSP) programming languages; Matlab code or other signal processing simulation code;

".include files"; "make" files; link files; diffs and other human-readable text files used in the

generation and/or building of software executed on a microprocessor, microcontroller, or DSP.

Confidential Source Code is a form of, and shall be afforded all of the same protections as,

confidential business information as defined in paragraph 1 hereto unless otherwise provided in

paragraphs 18-25. The restrictions herein on Confidential Source Code do not apply to publicly-

available source code available as open source code. The parties to this investigation and any

third parties producing Confidential Source Code pursuant to a subpoena, are entitled to the

protections provided herein.

     19.    To the extent that a party wishes to obtain access to Confidential Source Code,

the following procedures may apply at the option of the producing party. Nothing in this Order

shall be construed as a representation or admission by a party that Confidential Source Code is

properly discoverable in this action, or to obligate any party to produce Confidential Source

Code. To the extent production of Confidential Source Code becomes necessary to the

prosecution or defense of the case, the producing party may designate Confidential Source Code

as "[PRODUCING PARTY's NAME] CONFIDENTIAL SOURCE CODE--OUTSIDE

ATTORNEYS' EYES ONLY--SUBJECT TO PROTECTIVE ORDER."

20. Unless otherwise ordered by the Administrative Law Judge, Confidential Source Code designated as "[PRODUCING PARTY's NAME] CONFIDENTIAL SOURCE CODE-- OUTSIDE ATTORNEYS' EYES ONLY--SUBJECT TO PROTECTIVE ORDER" shall be subject to the provisions set forth in paragraphs 18 to 25, and may be disclosed, subject to paragraphs 18 to 25, solely to:

(a) outside counsel representing the parties to This Investigation, as defined in paragraph 3(i), including necessary secretarial and support personnel regularly employed by and assisting such counsel, except that, unless otherwise agreed, no outside counsel who is involved in competitive decision-making of a party or a third party (excluding said counsel's law firm), as defined by *US Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), shall have access to Confidential Source Code designated as "[PRODUCING PARTY's NAME] CONFIDENTIAL SOURCE CODE--OUTSIDE ATTORNEYS' EYES ONLY--SUBJECT TO PROTECTIVE ORDER";

(b) any outside expert or consultant retained by a party for the purposes of this Investigation and who satisfies paragraph 3(iii) of this Order, provided that disclosure is only to the extent necessary to perform such work; and provided that: (i) such expert or consultant has agreed to be bound by the provisions of this Order as required by paragraphs 3, 4, and 11 of this Order, (ii) such expert or consultant is not involved in competitive decision-making, as defined by *US. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a party or a competitor of a party in the technical subject matter of the confidential business information produced, and (iii) no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in paragraphs 3, 4, and 11 of this Order;

(c)     court reporters, stenographers, and videographers retained to record testimony taken in This Investigation, provided that such court reporters, stenographers, and videographers have agreed to be bound by the provisions of this Order;

(d)     the Commission, the Administrative Law Judge, the Commission Investigative Staff, and personnel of any governmental agency as authorized by the Commission;

(e)     the Commission, its employees, and contract personnel who are acting in the capacity of Commission employees, for developing or maintaining the records of this Investigation or related proceedings for which this information is submitted, or in internal audits and investigations relating to the programs and operations of the Commission pursuant to 5 U.S.C. Appendix 3;

(f)     any non-parties who are witnesses during a deposition, court hearing, or trial where specific documentary or testimonial evidence establishes at that time that the Confidential Source Code or portion of the Confidential Source Code was authored or received by the witness without any violation of any confidentiality obligation owed to any party in this Investigation;

(g)     any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Order;

(h)     any other person with the prior written consent of the producing party; and

(i)     a producing party's own employees, 30(b)(6) witnesses, or expert witnesses

21.    The following provisions apply to the production of Confidential Source Code that is designated "[PRODUCING PARTY's CONFIDENTIAL SOURCE CODE-OUTSIDE ATTORNEYS' EYES ONLY-SUBJECT TO PROTECTIVE ORDER," unless otherwise agreed by the producing party:

(a)    All Confidential Source Code shall be made available by the producing party to the receiving party in a secure room, the domestic location and facility of which the parties will negotiate, on at least two secured, reasonably current stand-alone computers (running a reasonably current version of the Microsoft Windows operating system, MACOS, or Unix and with reasonably sufficient RAM and other resources) without Internet access or network access to other computers, and all access ports on which have been disabled except one port for the printer referred to in paragraph 21(h) hereof, as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal, or other transfer of any Confidential Source Code outside or away from the computer on which the Confidential Source Code is provided for inspection (hereinafter "Confidential Source Code Computer"). If it should be necessary, the Confidential Source Code Computer may be configured by the producing party to run other mutually agreed upon operating systems.

(b)    The producing party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the producing party's business. The receiving party's outside counsel, experts, and/or consultants may request that commercially available software tools for viewing and searching Confidential Source Code be installed on the secured computer, provided, however, that such other software tools are reasonably necessary for the receiving party to perform its review of the Confidential Source Code consistent with all of the protections herein.

Specific tools may include but are not limited to: SciTools Understand, Notepad++, Beyond Compare, XCode tools, Visual Slick Edit, Source-Navigator, PowerGrep, ExarnDiffPro, or Sigasi, or other similar programs. The receiving party must provide the producing party with the CD or DVD containing such licensed software tool(s) at least two (2) days in advance of the date upon which the receiving party wishes to have the additional software tools available for use on the Confidential Source Code Computer.

      (c)    The producing party shall make the Confidential Source Code available electronically and in native form or the form that it is kept in the normal course of business in a secure room at the offices of the producing party's outside counsel as defined in paragraph 3(i) or any other location mutually agreed by the parties.

      (d)    In order to verify that its Confidential Source Code has not later been altered, the producing party may benchmark the materials to confirm that the materials have not been altered before and after they are provided but shall not install any keystroke or other monitoring software on the Confidential Source Code Computer.

      (e)    The Confidential Source Code Computer shall be made available from 9 am to 7 pm local time, Monday through Friday (excluding holidays), and other days and/or times, including weekends, upon reasonable request until the conclusion of the hearing in this Investigation.  Beginning one week prior to the beginning of trial and continuing through the end of trial, if requested in advance, access to Confidential Source Code shall be provided, under the same conditions and with the same limitations and restrictions as provided in Paragraphs 18-25 of this Order, in Washington, D.C.

      (f)    With respect to any outside expert or consultant retained by a party for the purposes of this Investigation and who satisfies paragraph 3(iii) of this Order, prior to the first

inspection of any Confidential Source Code, or disclosure of print-outs of Confidential Source Code provided in accordance with paragraph 21(i), the requesting party shall provide ten (10) days notice that such outside expert or consultant intends to inspect or review Confidential Source Code.  If an objection to an outside expert or consultant is made by the producing party, it will be the burden of the producing party to prove that the individual should not be authorized to inspect the producing party's Confidential Source Code.

(g)     The requesting party shall provide 24 hours notice prior to any inspections of Confidential Source Code at the Confidential Source Code Computer by any individuals on the requesting party's behalf.

(h)     Proper identification of all authorized persons shall be provided prior to any access to the secure room or the Confidential Source Code Computer. Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Confidential Source Code Computer may be denied, at the discretion of the producing party, to any individual who fails to provide proper identification.

(i)     The Confidential Source Code Computer shall be equipped with a high-speed laser printer (with commercially reasonable printing speeds) to print copies of the Confidential Source Code on watermarked pre-Bates numbered paper, which shall be provided by the producing party. The receiving party may print limited portions of the Confidential Source Code only when reasonably necessary to facilitate the receiving party's preparation of filings with the Administrative Law Judge or Commission, expert reports, and hearing exhibits, and shall print only such portions as are relevant to the claims and defenses in the case and are

reasonably necessary for such purpose. The receiving party shall not print Confidential Source

Code in order to review blocks of Confidential Source Code elsewhere in the first instance, i.e.,

as an alternative to reviewing that Confidential Source Code electronically on the Confidential

Source Code Computer, as the parties acknowledge and agree that the purpose of the protections

herein would be frustrated by printing portions of code for review and analysis elsewhere. If the

producing party objects that the printed portions are excessive and/or not done for a permitted

purpose, the producing party shall make such objection known to the receiving party within five

(5) days. Printed portions which exceed 50 continuous pages shall be rebuttably presumed

excessive and not done for a permitted purpose.  If, after meeting and conferring, the producing

party and the receiving party cannot resolve the objection, the producing party shall be entitled

to seek the Administrative Law Judge's resolution of whether the printed Confidential Source

Code in question is narrowly tailored and was printed for a permitted purpose. The burden shall

be on the receiving party to demonstrate that such printed portions are no more than is

reasonably necessary for a permitted purpose and not merely printed for the purposes of review

and analysis elsewhere.

      (j)     The printed Confidential Source Code shall be labeled with

"[PRODUCING PARTY NAME] CONFIDENTIAL SOURCE CODE--OUTSIDE

ATTORNEYS' EYES ONLY--SUBJECT TO PROTECTIVE ORDER." Outside counsel for

the producing party will keep the originals of these printed documents, and copies shall be made

for and delivered to outside counsel for the receiving party on watermarked paper within 24

hours. The receiving party's outside counsel may make no more than ten (10) additional paper

copies of any portions of the Confidential Source Code received from a producing party, not

including copies attached to court filings or used at depositions.

(k)     In addition to other reasonable steps to maintain the security and confidentiality of the producing party's Confidential Source Code, when not in use, printed copies of the Confidential Source Code maintained by the receiving party must be kept in a secure location in a locked storage container to which only persons identified in paragraph 20 have access.  Outside counsel for the producing party shall provide the Commission Investigative Staff with a copy of any Confidential Source Code provided to outside counsel for the receiving party if the Commission Investigative Staff requests such a copy.

(l)     Except as provided herein, absent express written permission from the producing party, the receiving party may not create electronic images, or any other images, or make electronic copies, of the Confidential Source Code from any paper copy of Confidential Source Code for use in any manner (including, by way of example only, the receiving party may not scan the Confidential Source Code to a PDF or photograph the code). Images or copies of Confidential Source Code shall not be included in correspondence between the parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible. Regarding the use of Confidential Source Code in pleadings or other papers, the parties agree (i) to use no more Confidential Source Code in such pleadings or other papers than is reasonably necessary to accomplish the purpose for which such Confidential Source Code is being relied upon and (ii) that if Confidential Source Code to be cited in such pleadings or other papers exceeds 25 lines of code, then the Confidential Source Code must be attached in an exhibit rather than embedded in the body of the pleading or other paper.  If a producing party agrees to produce an electronic copy of all or any portion of its Confidential Source Code or provide written permission to the receiving party that an electronic or any other copy can be made for a Commission or Administrative Law Judge pleading or other

paper, the receiving party's communication and/or disclosure of electronic files or other

materials containing any portion of Confidential Source Code (paper or electronic) shall at all

times be limited to solely individuals who are expressly authorized to view Confidential Source

Code under the provisions of this Order. Any such electronic copies must be labeled

"[PRODUCING PARTY's] CONFIDENTIAL SOURCE CODE--OUTSIDE ATTORNEYS'

EYES ONLY--SUBJECT TO PROTECTIVE ORDER" as provided for in this Order.

         (m)     In addition to the Confidential Source Code Computer and printer

provided by the Producing Party, one laptop computer may be brought in to the secure room for

the sole purpose of typing notes related to source code review; provided, however, that said

laptop has no picture taking or video recording capability. No other electronic devices shall be

permitted in the secure room, including but not limited to laptops, floppy drives, zip drives,

cellular telephones, personal digital assistants, Blackberries, cameras, voice recorders,

Dictaphones, or telephone jacks. Nor shall any non-electronic devices capable of similar

functionality be permitted in the secure room. During review of Confidential Source Code at the

Confidential Source Code Computer, the receiving party shall be entitled to take notes relating to

the Confidential Source Code but may not copy the Confidential Source Code into the notes. No

copies of all or any portion of the Confidential Source Code may leave the room in which the

Confidential Source Code is inspected except as otherwise provided herein. Further, no other

written or electronic record of the Confidential Source Code is permitted except as otherwise

provided herein. The producing party may visually, but not otherwise, monitor the activities of

the receiving party's representatives during any Confidential Source Code review, but only to

ensure that no unauthorized electronic records of the Confidential Source Code and that no

unauthorized information concerning the Confidential Source Code is being created or transmitted in any way.

(n)     Other than as provided in paragraph 21(i), the receiving party will not copy, remove, or otherwise transfer any Confidential Source Code from the Confidential Source Code Computer including, without limitation, copying, removing, or transferring the Confidential Source Code onto any recordable media or recordable device, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind. The receiving party will not transmit any Confidential Source Code in any way from the producing party's secured facilities or the offices of the producing party's outside counsel.

(o)     Unless otherwise agreed in advance by the parties in writing, following each day on which inspection is done under this Order, the receiving party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the secure room. The producing party shall not be responsible for any items left in the room following each inspection session, and the receiving party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.

(p)     The Commission Investigative Staff shall have the same rights to review and receive Confidential Source Code as outside counsel for any party has under this order. The Commission Investigative Staff shall have the same obligations as any party under this order including obligations related to the storage and maintenance of Confidential Source Code.

22.     Access to and review of the Confidential Source Code shall be strictly for the purpose of investigating the claims and defenses at issue in this Investigation.  No person shall review or analyze any Confidential Source Code for purposes unrelated to this Investigation, nor

may any person use any knowledge gained as a result of reviewing Confidential Source Code in this Investigation in any other pending or future dispute, proceeding, patent prosecution, or litigation.

23.    Nothing herein shall be deemed a waiver of a party's right to object to the production of Confidential Source Code. Absent a subsequent and specific court or agency order, nothing herein shall obligate a party to breach any non-party license agreement relating to such Confidential Source Code.

24.    The parties further acknowledge that some Confidential Source Code may be owned by non-parties and outside a party's possession, custody or control. Nothing herein shall be deemed a waiver of any non-party's right to object to the production of Confidential Source Code or object to the manner of any such production.

25.    Inadvertent production of privileged documents or attorney work product shall be governed by Fed. R. Evid. 502 and Fed. R. Civ. P. 26(b)(5)(B). In addition, inadvertent or unintentional disclosure or production of information, documents, or materials (including physical objects) protected from discovery by the attorney-client privilege, common-interest privilege, work product immunity or any other applicable privilege or immunity (collectively, "Privileged Information") shall not constitute a waiver of any such privilege or immunity, either as to the specific Privileged Information disclosed or produced, or as to any other Privileged Information relating thereto or on the same or related subject matter (and no Party will assert such a waiver), if, as soon as reasonably possible after the producing Party becomes aware of any inadvertent or unintentional disclosure of Privileged Information, the producing Party provides written notice (or notice on the record if the producing Party becomes aware of the inadvertent or unintentional disclosure at a deposition) designating any such Privileged Information as within

the attorney-client privilege, common-interest privilege, work product immunity, or any other applicable privilege or immunity and requests either return of such Privileged Information to the producing Party, or destruction of that Privileged Information and all copies thereof.

26.    Upon request by the producing Party, the receiving Party shall immediately destroy or return all copies of such Privileged Information, and all notes or other writings or recordings that summarize, reflect, or discuss the contents of such Privileged Information. In either event, the returning or destroying Party shall certify in writing to the producing Party that its return or destruction has been completed.

27.    (a)    All inadvertently or unintentionally disclosed or produced Privileged Information shall be treated as confidential and may not be disclosed by the receiving Party to persons or entities other than the producing Party without the written consent of the producing Party.

(b)    If a receiving Party discloses any Privileged Information inadvertently or unintentionally produced or disclosed by another Party to a person or an entity other than the producing Party, such disclosure shall not be deemed a waiver of the attorney-client privilege, common-interest privilege, work product immunity, or any other applicable privilege or immunity, either as to the specific Privileged Information disclosed or produced, or as to any other Privileged Information relating thereto or on the same or related subject matter (and no Party will assert such a waiver). In such circumstances, after the producing Party provides written notice (or notice on the record if the producing Party becomes aware of the inadvertent or unintentional disclosure at a deposition) designating such Privileged Information as within an applicable privilege or immunity, the receiving Party shall immediately notify the producing Party that such Privileged Information has been disclosed to the third party, and the receiving

Party shall cooperate in good faith to protect the applicable privilege or immunity with respect to the disclosed Privileged Information, including retrieval or destruction of all copies, to the extent possible.

28.     No motion to compel or other argument for waiver of privilege will be raised based upon the inadvertent or unintentional production or disclosure of Privileged Information.

29.     Nothing herein shall prevent the receiving Party from challenging the propriety of the claim of attorney-client privilege or work product immunity or other applicable privilege or immunity designation by submitting a written challenge to the Administrative Law Judge.

30.     All discovery materials (e.g., Interrogatory Responses, RFA Responses, document productions, depositions, etc.) provided in the above-referenced proceeding shall be useable and be deemed to be produced in all related litigation between or among the Parties, subject to any protective orders entered in such litigation. Related litigation includes Samsung's ITC proceeding against Ericsson (In the Matter of Certain Wireless Communications Equipment and Articles Therein, Inv. No. 337-TA-866); and Ericsson's district court proceedings against Samsung (Case 6:12-cv-00894-LED (E.D. Tex.) and Case 6:12-cv-00895-LED (E.D. Tex.)). The Parties further agree they will jointly move to amend protective orders as needed to allow for cross use of materials produced in the related litigations.


David P. Shaw
Administrative Law Judge


Issued: March 11, 2013


14

CERTAIN ELECTRONIC DEVICES, INCLUDING WIRELESS COMMUNICATION
DEVICES, TABLET COMPUTERS, MEDIA PLAYERS, AND TELEVISIONS, AND
COMPONENTS THEREOF

INV. NO. 337-TA-862

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **ORDER NO. 9** has been served by hand upon
the Commission Investigative Attorney, **Lisa Kattan, Esq.**, and the following parties as
indicated, on _____ MAR 1 1 2013 _____.

Lisa R. Barton, Acting Secretary
U.S. International Trade Commission
500 E Street SW, Room 112A
Washington, DC 20436

| FOR COMPLAINANTS ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON: | |
|---|---|
| Benjamin Levi, Esq.<br>**MCKOOK SMITH P.C.**<br>1999 K Street, NW, Suite 600<br>Washington, DC 20006 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(✔) Via First Class Mail<br>( ) Other: _____ |
| FOR RESPONDENTS SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA LLC, AND SAMSUNG ELECTRONICS CO., LTD: | |
| Michael J. McKeon, Esq.<br>**FISH & RICHARDSON P.C.**<br>1425 K Street, NW, 11th Floor<br>Washington, DC 20005 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(✔) Via First Class Mail<br>( ) Other: _____ |

**CERTAIN ELECTRONIC DEVICES, INCLUDING WIRELESS COMMUNICATION
DEVICES, TABLET COMPUTERS, MEDIA PLAYERS, AND TELEVISIONS, AND
COMPONENTS THEREOF**

**INV. NO. 337-TA-862**

## PUBLIC MAILING LIST

| | |
|---|---|
| Angela Ruby<br>**LEXIS-NEXIS**<br>9443 Springboro Pike<br>Miamisburg, OH 45342 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| Kenneth Clair<br>**Thomson West**<br>1100 13th Street, NW, Suite 200<br>Washington, DC 20005 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(✓) Via First Class Mail<br>( ) Other: _____ |

# Attachment D

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

In the Matter of

**CERTAIN ELECTRONIC DEVICES,
INCLUDING WIRELESS COMMUNICATION
DEVICES, TABLET COMPUTERS, MEDIA
PLAYERS, AND TELEVISIONS, AND
COMPONENTS THEREOF**

Inv. No. 337-TA-862

### Order No. 8: Amended Ground Rules

The conduct of this investigation before the administrative law judge shall be governed

by the amended ground rules attached hereto. New Ground Rules 5.k, 5.l, and 5.m have been

added.

So ordered.

David P. Shaw
Administrative Law Judge

Issued: February 12, 2013

## GROUND RULES FOR HEARING

These ground rules supplement the Commission's procedural rules contained in 19 C.F.R. Part 210.

### 1. Discovery

a. To be entitled to receive confidential submissions, attorneys must file with the Office of the Secretary to the Commission a letter or notice consenting to be bound by the provisions of Order No. 1 (Protective Order), and serve the same on the administrative law judge and on all other parties. *See* 19 C.F.R. § 210.5.

b. Unless otherwise ordered, any party desiring to take a deposition shall give notice in writing to every other party of not less than 10 days if the deposition is to be taken of a person located in the United States, or of not less than 15 business days if the deposition is to be taken of a person located outside the United States. *See* 19 C.F.R. § 210.28(c).

c. Unless otherwise ordered, the party upon whom interrogatories have been served shall serve a copy of the answers, and any objections, within 10 days after the service of the interrogatories. *See* 19 C.F.R. § 210.29(b).

d. With respect to a request for the production of documents or things, or to permit entry upon land, unless otherwise ordered, the party upon whom a request has been served shall serve a written response within 10 business days after the service of the request. *See* 19 C.F.R. § 210.30(b)(2).

e. Unless otherwise ordered, a request for admission may be served at any time 20 days after the date of service of the complaint and notice of investigation. *See* 19 C.F.R. § 210.31(a). Unless otherwise ordered, a party upon whom a request for admission has been served shall

serve an answer or objection within 10 days after the service of the request, otherwise the matter may be deemed admitted.  *See* 19 C.F.R. § 210.31(b).

f.  A party who has responded to a request for discovery with a response that was complete when made is under a duty seasonably to supplement his or her response to include information thereafter acquired.  19 C.F.R. § 210.27(c).

g.  If production of any document is withheld on the basis of a claim of privilege, each withheld document must be separately identified via a privileged documents list (*see Duplan Corp. v. Deering Millikin, Inc.*, 397 F. Supp. 1146, 184 U.S.P.Q. 775 (D.S.C. 1974)).  The privileged document list need not be supplied until 10 days after objections based on privilege to the underlying document requests are due.

h.  The deposition testimony of a witness shall be continuous, except as provided in the following paragraph.  Once the testimony has begun, there shall be no consultation with the witness concerning prior or subsequent testimony until the deposition is completed.

With respect to witnesses designated by a company to testify on its behalf, such individuals may consult with company counsel and other company employees during a deposition for the limited purpose of securing additional information to respond more completely to deposition questions.

i.  Subpoenas under Rule 210.32 should follow form (attached, hereto) with a copy served on other parties.  Generally, subpoenas are necessary only to compel third parties to testify or produce documents.  Hearing subpoenas for witnesses within a party's control, *e.g.*, an employee, are generally not issued.

2

j.   Any motion to limit or quash a subpoena shall be filed within 10 days after receipt thereof, or within such other time as the administrative law judge may allow. *See* 19 C.F.R. § 210.32(d).

k.   No motion stops discovery, except a timely motion to quash a subpoena.

l.   All parties shall make intensive good faith efforts to facilitate discovery and to resolve discovery disputes without intervention from the administrative law judge.

m.   For investigations that involve more than 4 utility patents or 40 patent claims, complainant shall file biweekly declarations as set forth in the procedural schedule, detailing its efforts to reduce the number of patent claims and patents at issue, as well as a list of the patents and claims remaining at issue.

## 2.   Notice of Prior Art

Parties must file on or before the date set in the procedural schedule, notices of any prior art consisting of the following information: country, number, date, and name of the patentee of any patent; the title, date and page numbers of any publication to be relied upon as anticipation of the patent in suit, or as showing the state of the art; and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit.

If a trademark is involved, the parties must file on or before the date set in the procedural schedule, notices of any art on which a party will rely at the hearing regarding the functionality or non-functionality of any trademarks at issue.

In the absence of such notice, proof of the said matters may not be introduced into evidence at the trial except upon a timely written motion showing good cause.

3

**3. Settlement**

All parties, throughout the duration of the proceedings, shall explore reasonable possibilities for settlement of all or any of the contested issues. The parties are required to have at least two settlement conferences or may opt to go through a mediation procedure available through the Commission.

All parties shall certify in their prehearing statements that good faith efforts were undertaken to settle the remaining issues. Additionally, for each of the required settlement conferences provided for in the procedural schedule, the parties shall provide the administrative law judge with one copy of a joint report signed by all the parties setting forth any stipulations on which the parties have agreed. These reports are due by the time designated in the procedural schedule or within such other time as the administrative law judge may allow. The reports shall not be filed with the Secretary's Office.

**4. Experts**

a. No later than the date ordered by the administrative law judge in the prehearing schedule, parties who anticipate using an expert(s) at the hearing shall serve on all other parties a written identification of their experts, which shall describe each expert's qualifications and disclose the general nature of the subject matter on which the expert is expected to testify. The identification shall be filed with the Secretary's Office.

b. Expert reports shall be filed in accordance with the due dates set in the prehearing schedule. Expert reports shall be filed with the Secretary's Office. Experts are to have final and complete expert reports before them when they add their signatures. Thus, for example, facsimile signature pages may not be added to expert reports. Additionally, the parties shall

4

provide a single hard drive or a single flash drive containing the expert reports in searchable PDF format.

## 5. Filing of Documents

    a.  All filings in the Secretary's Office shall be made in accordance with Commission Rules 201.15 and 210.4(f) unless otherwise specifically provided for in these Ground Rules or by order of the administrative law judge.

    b.  In accordance with the requirements of Commission Rules 210.4(f) and (g), copies of each submission shall be served on all other parties, including the Commission investigative attorney. Also, on the same day that the document is filed, an electronic copy in PDF format, excluding attachments such as exhibits, shall be sent to the administrative law judge's attorney-advisor at the following e-mail address: pyong.yoon@usitc.gov. In addition, one paper copy of each filing shall be submitted to the administrative law judge the next business day after the filing is made.

    c.  For the copy served on the administrative law judge, all attachments <u>must</u> be identified by tabs. A party may serve attachments that are more than 500 pages in PDF format on a disc. In such a case, a table of contents file that lists the names of all files on the disc should be created and included on each disc.

    d.  All motions and responses are to refer to a motion docket number if one has been assigned.

    e.  <u>All</u> motions shall include a certification that the moving party has made reasonable, good-faith efforts to contact and resolve the matter with the other parties <u>at least two business days</u> prior to filing the motion, and shall state, if known, the position of the other parties on such motion.

f.   In the case of filing of motions or responses of five (5) pages or more (excluding attachments), in addition to the paper copy, a version in MS Word for Windows shall be submitted to the administrative law judge's attorney-advisor via e-mail by the next business day.

g.   Unopposed motions and joint motions shall contain a proposed order.  On the same day the motion is filed, a version of the motion including the proposed order in MS Word for Windows shall be submitted to the administrative law judge's attorney-advisor via e-mail.

h.   All documents to be filed with the Secretary must be received on the date upon which they are due.

i.   Computation of time for responding to motions shall be in accordance with 19 C.F.R. § 201.14.

j.   Documents are not to be sent by facsimile to the administrative law judge.

k.   Confidential business information ("CBI") is defined in accordance with 19 C.F.R. § 201.6(a) and § 210.5(a).  When redacting CBI or bracketing portions of document to indicate CBI, a high level of care must be exercised in order to ensure that non-CBI portions are not redacted or indicated.  Other than in extremely rare circumstances, block-redaction and block-bracketing are prohibited.  In most cases, redaction or bracketing of only discrete CBI words and phrases will be permitted.

l.   All confidential motions and confidential responses to motions shall, when filed, include red brackets, in accordance with Ground Rule 5.k, indicating the portions asserted to be CBI, and must be accompanied by declarations, grounded in facts, explaining how each proposed redaction is CBI.  Exhibits attached to the confidential motions and confidential responses to motions need not be bracketed.

When filing public versions of motions to terminate (and the exhibits thereto) pursuant to 19 C.F.R. § 210.21, the parties shall make their redactions in accordance with Ground Rule 5.k.

m.  In the event the administrative law judge issues a confidential order or initial determination, within seven days of the date of the document, each party shall file with the Commission Secretary a statement as to whether or not it seeks to have any portion of the document redacted from the public version.  Any party seeking to have a portion of the document redacted from the public version must submit to the administrative law judge a copy of the document with red brackets indicating the portion, or portions, asserted to contain CBI.

6.  **Claim Construction and Accused Products**

    a.  No later than the date set in the procedural schedule, the parties are to file:

- a joint list of disputed claim terms and the proposed constructions thereof; and
- a joint list of claim terms that must be construed but whose meanings are not disputed and the joint proposed constructions thereof.

    b.  Unless otherwise ordered, there will be no Markman hearing in the investigation.

    c.  No later than the date set in the procedural schedule:

- the parties are to file a joint statement regarding identification of accused products;
- complainant is to file a list of proposed representative accused products based on complainant's infringement contentions;
- respondent and Commission investigative staff are to file responses to complainant's proposed representative accused products assuming complainant's infringement contentions; and
- the parties are to file a final joint stipulation regarding representative accused products.

7.  **Prehearing Statement and Brief**

Prehearing statements and briefs shall contain the following information:

    a.  The names of all known witnesses, whether they are fact or expert witnesses (and their area of expertise), and a brief outline of each witness' testimony.  In the case of expert witnesses, a copy of the expert's curriculum vitae shall be included as an attachment.

b.  A list of all exhibits that the parties will seek to introduce at the hearing.

c.  A statement of the issues to be considered at the hearing that sets forth with particularity a party's contentions on each of the proposed issues, including citations to supporting facts and legal authorities, *e.g.*, proposed exhibits.  Incorporation by reference is not allowed.  Any contentions not set forth in detail as required therein shall be deemed abandoned or withdrawn, except for contentions of which a party is not aware and could not be aware in the exercise of reasonable diligence at the time of filing the prehearing statement.  The prehearing statement and the brief may be combined into one document.

**8.  Evidence**

a.  All direct witness testimony, with the exception of adverse witnesses, shall be made by witness statements in lieu of live testimony.  The Commission investigative staff may, however, ask the witness supplemental direct testimony on the witness stand.  Witness statements shall be marked and offered into evidence as exhibits.  Witnesses shall be available for cross-examination on the witness stand unless waived.  Witnesses will not read their prepared testimony into the record.  In view of the written rebuttal witness statements, no live rebuttal testimony is permitted, unless ordered.

Witness statements may not be amended.  If witnesses desire to correct typographical or clerical errors in their testimony, they should prepare errata sheets.  Counsel should mark the errata sheets as exhibits, and should give them as quickly as possible to the other parties and to the administrative law judge.  During the hearing, a motion may be made to have the errata sheets accepted into the record.

A witness statement shall be in the form of numbered questions from counsel, with each question followed by the witness' own answer to that question, and with the final question from

8

counsel asking the witness whether or not the witness statement contains the witness' answers to the questions from counsel, followed by the witness' answer to this question and the witness' signature.  The witness statement shall be assigned an exhibit number and each question shall be numbered consecutively.  For evidentiary support, witness statements shall cite to exhibit numbers and brief descriptions of the exhibits (*e.g.*, JX-0002 ('123 Patent File History)) that will be introduced at the hearing.

A witness statement shall be in the language of the witness, and a foreign language witness statement shall be accompanied by a certified translation thereof.

On the date set forth in the procedural schedule, the parties shall provide one set of witness statements in binders.  Each binder shall be labeled on its spine to indicate the witness and the party providing the binder.  Additionally, the parties shall provide a single hard drive or a single flash drive containing the witness statements in searchable PDF format.  Each expert witness statement shall include a detailed table of contents.  The witness statements in PDF format must include a file name with a brief description of the exhibit, *e.g.*, CX-0005C (Smith Witness Statement).pdf.

b.  Once the testimony has commenced, there shall be no consultation with the witness concerning his or her testimony until it is completed.

c.  The rule of exclusion shall be followed.  Fact witnesses shall be excluded from the hearing until they are called to testify.

d.  Legal experts may only testify as to <u>procedures</u> of the U.S. Patent and Trademark Office.

e.  Parties are permitted to make opening statements.  Each party will generally be limited to ten to fifteen minutes.  A party's opening statement will be charged to its allocated hearing time.

f.  No tutorial will be held unless otherwise ordered.

## 9.  Exhibits

a.  On the date set forth in the procedural schedule, the parties shall provide a single hard drive or a single flash drive containing proposed exhibits and exhibit lists in PDF format.  Each of the exhibits must include a file name with a brief description of the exhibit, e.g., JX-0002 ('123 Patent File History).pdf.  The exhibits shall be organized alphanumerically.  For exhibits that cannot be submitted in PDF format, contact the administrative law judge's attorney-advisor. The title, number, and sponsoring witness for each proposed exhibit shall be listed in the prehearing statement.

b.  On the date set forth in the procedural schedule, each party may file a document listing and providing a narrative explanation of the objections to proposed exhibits which the party believes to be of high priority for ruling at the prehearing conference.  No party shall place more than ten objections on the high priority list.

c.  On the same day the initial posthearing briefs are due, the parties shall serve on the administrative law judge a set of all final exhibits (including those that are rejected, but not those that are withdrawn) to be filed with the Commission on EDIS ("the original set").  The parties are responsible for confirming that all admitted and rejected exhibits are included in the original set.  Any exhibit that is not identified on the final exhibit list and is not included in the original set will not be considered as part of the record to be certified to the Commission when the Initial Determination issues.

The original set shall be submitted on electronic media pursuant to the procedure set forth at the Internet address http://www.usitc.gov/docket_services/documents/EDIS3UserGuide-CDSubmission.pdf unless prior permission has been received pursuant to Commission Rule 19 C.F.R. § 210.4(f)(8) and The Handbook of Filing Procedures § II.C(3)(a).  A table of contents file that lists the names of all files on each disc should be created and included on each disc. Each table of contents must match the exhibits that are on each disc.  Each party is responsible for verifying the accuracy of the exhibits and the table of contents.  For example, if an exhibit is labeled CX-0001, verify that it is indeed CX-0001, and that it does not contain any confidential designations.

The original set must have a four-digit exhibit number, with leading zeroes as necessary (*e.g.*, CX-0001, RX-0002C).  Each type of exhibit (*i.e.*, CX, CDX, CPX, RX, RDX, RPX, JX, JDX, JPX, SX, SDX, SPX, CX-[four digit number]C, CDX-[four digit number]C, CPX-[four digit number]C, RX-[four digit number]C, RDX-[four digit number]C, RPX-[four digit number]C, JX-[four digit number]C, JDX-[four digit number]C, JPX-[four digit number]C, SX-[four digit number]C, SDX-[four digit number]C, and SPX-[four digit number]C) must be submitted on a different CD or set of CDs.  Each CD must have a label with the investigation name and number, and the range of exhibits contained thereon.  The original set may not be submitted on a hard drive or flash drive.

Each party is to submit a duplicate of the original set on a single hard drive or a single flash drive to the administrative law judge.  For the duplicate set, the final exhibits are to be organized alpha-numerically (*e.g.*, CDX-0001, CDX-0002C ... CPX-0001C, CPX-0002 ... CX-0001C, CX-0002).  Additionally, the confidential and public exhibits shall be combined and organized alpha-numerically (*e.g.*, CX-0001C, CX-0002, CX-0003, CX-0004C ...).  Each of the

11

exhibits must include a file name with a brief description of the exhibit, *e.g.*, JX-0002 ('123 Patent File History).pdf.  A table of contents file in PDF and in MS Excel for Windows that lists the names of all exhibit files must be included on the hard drive.  For exhibits that cannot be submitted in PDF format, contact the administrative law judge's attorney-advisor.

If the appropriate permission is received pursuant to Commission Rule 19 C.F.R. § 210.4(f)(8) and The Handbook of Filing Procedures § II.C(3)(a) to submit the original set on paper, the following shall apply.  In order to facilitate the optical scanning of the exhibits, the exhibits in the original set shall consist of loose sheets (which may be clipped but not stapled) in folders (file folders, accordion folders, etc.) that are provided in sequentially-numbered boxes.  Each folder must be labeled to reflect the number of the exhibit contained therein, *e.g.*, RX-0014C.  In each box of the original set, the folders containing the exhibits shall be placed in numerical order.  Confidential exhibits and public exhibits shall be placed in separate boxes which are clearly marked as containing either confidential or public exhibits.  Inasmuch as public and confidential exhibits are to be placed in separate boxes, numerical gaps may appear in each box, *e.g.*, the public box may contain exhibits CX-0001, CX-0002 and CX-0004, while the confidential box contains CX-0003C and CX-0005C.

d.  No later than thirty (30) days after the filing of posthearing reply briefs, each party shall deliver one binder set of copies of all <u>final exhibits</u> (including those exhibits that are rejected, but not those that are withdrawn) directly to the Office of General Counsel along with a final exhibit list.  Rejected exhibits shall be submitted under separate cover and so marked.  The parties may provide the General Counsel set on electronic media.

e.  On the same date that the initial posthearing briefs are due, each party must submit a <u>final exhibit list</u> that reflects the status of all exhibits as "admitted," "withdrawn" or "rejected."

12

Additionally, the exhibit list in MS Excel for Windows shall be shall be sent to the administrative law judge's attorney-advisor via e-mail.

    f.  Written exhibits shall be marked serially commencing with the number "0001" and preceded by the prefix "CX" for complainant(s)' exhibits, "RX" for respondent(s)' exhibits, "SX" for the Commission investigative attorney's exhibits, and "JX" for any joint exhibits. No other prefixes are permitted. The parties shall not "reserve" numbers, but instead shall assign all numbers in consecutive sequence.

    If an exhibit contains confidential business information, a "C" shall be placed after the exhibit number. Furthermore, exhibits containing confidential business information shall be so designated pursuant to the Protective Order. In addition, on any exhibit list, exhibits that contain confidential business information shall be denoted by placing a "C" after the exhibit number in the listing. No exhibit list shall contain confidential information; all exhibit lists shall be public documents.

    Each exhibit shall be marked by placing a label bearing the exhibit's number (*e.g.*, CX-0003C or RX-0005) in the upper right portion of the exhibit's first page. Further, the pages of each exhibit must be sequentially numbered in a consistent location on the pages.

    Respondent(s) shall coordinate their numbering to avoid duplication. Additionally, the parties shall coordinate exhibits to avoid unnecessary duplication (*e.g.*, patents; file wrappers). Further, all exhibits or copies of exhibits shall be clear and legible. Lastly, each exhibit may be assigned no more than one number.

    Physical exhibits shall be numbered in a separate series commencing with "0001" preceded by the prefixes "CPX", "RPX", "SPX" and "JPX", for complainant, respondent, the Commission investigative attorney, and joint exhibits, respectively. No other prefixes are

13

permitted.  Confidential exhibits shall be denoted with the letter "C" as in the case of documentary exhibits.

Demonstrative exhibits shall be numbered in a separate series commencing with "0001" preceded by the prefixes "CDX", "RDX", and "SDX", for complainant, respondent, and the Commission investigative attorney, respectively.  No other prefixes are permitted.  Confidential exhibits shall be denoted with the letter "C."  Demonstrative exhibits shall on their face cite to the supporting exhibits received into evidence, *e.g.*, CX-0005C (Smith Witness Statement) at 55-60; JX-0001 ('123 Patent) at col. 7, lns. 36-54).  Additionally, the parties shall provide the administrative law judge with two (2) copies of key over-sized demonstrative exhibits (*e.g.*, charts, drawings, etc.) reduced to 8 ½ inches x 11 inches.

g.  If any portion of an exhibit contains confidential business information, the entire exhibit shall be treated as confidential.  For certain lengthy exhibits of which only portions are confidential, the parties may be asked to submit a public version of the exhibit.

h.  In examining witnesses, counsel shall provide the administrative law judge and opposing counsel, prior to the commencement of the examination of each witness, a binder containing all exhibits to be used in the direct or cross-examination of the witness.  The exhibits in each binder shall be separated by tabs.  Each binder shall be labeled on its spine to indicate the witness and the party providing the binder.  Only one set of witness binders shall be provided to the administrative law judge.

i.  No foreign language exhibits will be received into evidence unless a translation thereof is provided.

j.   All documents that appear to be regular on their face shall be deemed authentic, unless it is shown by particularized evidence that the document is a forgery or is not what it purports to be.

## 10. Order of Trial

The order of trial is the following:

   a.   Complainant's Case-in-Chief.
   b.   Respondent's Defense Case.
   c.   Commission Investigative Attorney's Case.
   d.   Complainant's Rebuttal.

In the event there is more than one respondent, the order of presentation will be determined at the prehearing conference.  Respondents where possible should avoid duplication of effort.

## 11. Use of Translators

If a translator will be used at hearing, the parties are responsible for obtaining a qualified, neutral translator upon whom counsel can agree.

## 12. Posthearing

a.   On the same day the initial posthearing briefs are due, the parties shall file a comprehensive joint outline of the issues to be decided in the final Initial Determination.  The outline shall refer to specific sections and pages of the posthearing briefs.  Moreover, the claim terms briefed by the parties must be identical.  For example, if the construction of the claim term "wireless device" is disputed, the parties must brief that exact claim term.  If a party briefs only a portion of the claim term such as "wireless" or "device," that section of the brief will be stricken.

b.   Prior art not briefed is waived.

c.   Posthearing briefs shall not cite to withdrawn or rejected exhibits.

d.   While demonstrative exhibits may be cited in posthearing briefs, the parties shall also cite to the supporting exhibits received into evidence, *e.g.*, CDX-0002C (CX-0005C (Smith Witness Statement) at 55-60; JX-0001 ('123 Patent) at col. 7, lns. 36-54).

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

In the Matter of

Inv. No. 337-TA-

## SUBPOENA DUCES TECUM

TO:

TAKE NOTICE:  By authority of section 337 of the Tariff Act of 1930, as amended (19

U.S.C. § 1337), 5 U.S.C. § 556(c)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice

and Procedure of the United States International Trade Commission, and upon an application for

subpoena made by ["complainant(s)" / "respondent(s)"/ etc., followed by name of company]

_____,

YOU ARE HEREBY ORDERED to produce at _____, on

_____, or at another time and place agreed upon, all of the documents and things in your

possession, custody or control which are listed and described in Attachment A hereto.  Such

production will be for the purpose of inspection and copying, as desired.

If production of any document listed and described in Attachment A hereto is withheld on

the basis of a claim of privilege, each withheld document should be separately identified in a

privileged document list.  The privileged document list must identify each document separately,

specifying for each document at least: (1) the date; (2) sender(s); (3) recipient(s); and (4) general subject matter of the document. If the sender or the recipient is an attorney or a foreign patent agent, he or she should be so identified. The type of privilege claimed must also be stated, together with a certification that all elements of the claimed privilege have been met and have not been waived with respect to each document.

If any of the documents or things listed and described in Attachment A hereto are considered "confidential business information," as that term is defined in Order No. 1 attached hereto (Protective Order), such documents or things should be produced subject to the terms and provisions of Order No. 1.

Any motion to limit or quash this subpoena shall be filed within 10 days after the receipt thereof.

> IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set his hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this _____ day of _____, 20____.

> _____
> David P. Shaw
> Administrative Law Judge
> United States International Trade Commission

# UNITED STATES INTERNATIONAL TRADE COMMISSION
## Washington, D.C.

In the Matter of

Inv. No. 337-TA-

## SUBPOENA AD TESTIFICANDUM

TO:

     TAKE NOTICE:  By authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), 5 U.S.C. § 556(c)(2), and pursuant to 19 C.F.R. § 210.32 of the Rules of Practice and Procedure of the United States International Trade Commission, and upon an application for subpoena made by ["complainant(s)" / "respondent(s)" / etc., followed by name of company]

_____,

     YOU ARE HEREBY ORDERED to present yourself for purposes of your deposition upon oral examination on _____, at _____, or at another time and place agreed upon, concerning the subject matter set forth in Attachment A hereto.

     This deposition will be taken before a Notary Public or other person authorized to administer oaths and will continue from day to day until completed.

     Any motion to limit or quash this subpoena shall be filed within 10 days after the receipt thereof.

IN WITNESS WHEREOF the undersigned of the United States International Trade Commission has hereunto set his hand and caused the seal of said United States International Trade Commission to be affixed at Washington, D.C. on this _____ day of _____, 20____.


_____
David P. Shaw
Administrative Law Judge
United States International Trade Commission

**CERTAIN ELECTRONIC DEVICES, INCLUDING WIRELESS COMMUNICATION DEVICES, TABLET COMPUTERS, MEDIA PLAYERS, AND TELEVISIONS, AND COMPONENTS THEREOF**

**INV. NO. 337-TA-862**

## PUBLIC CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **ORDER NO. 8** has been served by hand upon the Commission Investigative Attorney, **Lisa Kattan, Esq.**, and the following parties as indicated, on _____FEB 12 2013_____.

Lisa R. Barton, Acting Secretary
U.S. International Trade Commission
500 E Street SW, Room 112A
Washington, DC 20436

| FOR COMPLAINANTS ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON: | |
|---|---|
| Benjamin Levi, Esq.<br>**MCKOOK SMITH P.C.**<br>1999 K Street, NW, Suite 600<br>Washington, DC 20006 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| **FOR RESPONDENTS SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA LLC, AND SAMSUNG ELECTRONICS CO., LTD:** | |
| Michael J. McKeon, Esq.<br>**FISH & RICHARDSON P.C.**<br>1425 K Street, NW, 11th Floor<br>Washington, DC 20005 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(X) Via First Class Mail<br>( ) Other: _____ |

**CERTAIN ELECTRONIC DEVICES, INCLUDING WIRELESS COMMUNICATION DEVICES, TABLET COMPUTERS, MEDIA PLAYERS, AND TELEVISIONS, AND COMPONENTS THEREOF**

**INV. NO. 337-TA-862**

## PUBLIC MAILING LIST

| | |
|---|---|
| Heather Hall<br>**LEXIS-NEXIS**<br>9443 Springboro Pike<br>Miamisburg, OH 45342 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(✓) Via First Class Mail<br>( ) Other: _____ |
| Kenneth Clair<br>**Thomson West**<br>1100 13th Street, NW, Suite 200<br>Washington, DC 20005 | ( ) Via Hand Delivery<br>( ) Via Overnight Mail<br>(✓) Via First Class Mail<br>( ) Other: _____ |

# Attachment E

# MCKOOL SMITH

Benjamin Levi
Direct Dial:  (202) 370-8320
blevi@mckoolsmith.com

1999 K Street NW
Suite 600
Washington, D.C. 20006-1101

DOCKET
Telephone: (202) 370-8300
Telecopier: (202) 370-8344

CBI 13-065

November 30, 2012

2921

--------------------------------------
Office of the
Secretary
Int'l Trade Commission

**VIA HAND DELIVERY**

The Honorable Lisa R. Barton
Acting Secretary to the Commission
U.S. International Trade Commission
500 E Street, S.W., Room 112A
Washington, D.C. 20436

> **RE:**   *Certain Electronic Devices, Including Certain Wireless Communication
> Devices, Tablet Computers, Media Players, and Televisions, and Components
> Thereof; Investigation No. 337-TA-____*

Dear Acting Secretary Barton:

Enclosed for filing on behalf of Ericsson Inc. and Telefonaktiebolaget LM Ericsson
("Ericsson") are the documents listed below in support of Ericsson's request that the
Commission institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as
amended, 19 U.S.C. § 1337. A request for confidential treatment of Confidential Exhibit Nos.
4C, 5C, 59C, 61C - 89C, 98C, and 116C - 119C is transmitted concurrently herewith.

Complainants have requested, but have not yet received, (i) an original certified copy of
the File History for U.S. Patent 6,278,888, (ii) an original certified copy of the File History for
U.S. Patent 6,445,917, and (iii) original certified copies of the Patent, Patent Assignment, and
File History for U.S. Patent 8,169,992.  We will submit original certified copies as soon as the
copies are received from the United States Patent and Trademark Office.

Accordingly, Ericsson submits the following documents for filing:

1.   One (1) original and eight (8) copies of the verified non-confidential Complaint
pursuant to 19 C.F.R. §§ 201.6(a), 210.4(f)(2) and 210.8(a) (original and one copy
unbound, without tabs pursuant to 19 C.F.R. § 201.8(d));

2.   One (1) CD loaded with the accompanying Non-Confidential Exhibits to the
Complaint for Commission use pursuant to 19 C.F.R. § 210.4(f)(2);

The Honorable Lisa R. Barton
November 30, 2012
Page 2

3. One (1) CD loaded with the accompanying Confidential Exhibits to the Complaint for Commission use pursuant to 19 C.F.R. § 210.4(f)(2);

4. Three (3) additional copies of the Complaint and three (3) set of CDs loaded with accompanying non-confidential exhibits for service upon the proposed respondent; and three (3) additional copies of the confidential exhibits for service upon counsel for the respondents once appropriate subscriptions to the protective order have been filed, pursuant to 19 C.F.R. §§ 210.8(a)(1)(iii) and 210.11 (a)(1));

5. One (1) additional copy of the non-confidential version of the Complaint for service upon the Embassy of Korea in Washington D.C. counsel pursuant to 19 C.F.R. § 210.8 (a)(1)(iv);

6. One (1) original and three (3) CDs loaded with the certified prosecution history of the '052 patent are included as Appendix A pursuant to 19 C.F.R. § 210.12(c)(1);

7. One (1) original and three (3) CDs loaded with the certified prosecution history of the '359 patent are included as Appendix B pursuant to 19 C.F.R. § 210.12(c)(1);

8. One (1) original and three (3) CDs loaded with the certified prosecution history of the '888 patent are included as Appendix C pursuant to 19 C.F.R. § 210.12(c)(1).

9. One (1) original and three (3) CDs loaded with the certified prosecution history of the '556 patent are included as Appendix D pursuant to 19 C.F.R. § 210.12(c)(1);

10. One (1) original and three (3) CDs loaded with the certified prosecution history of the '310 patent are included as Appendix E pursuant to 19 C.F.R. § 210.12(c)(1).

11. One (1) original and three (3) CDs loaded with the certified prosecution history of the '917 patent are included as Appendix F pursuant to 19 C.F.R. § 210.12(c)(1);

12. One (1) original and three (3) CDs loaded with the certified prosecution history of the '506 patent are included as Appendix G pursuant to 19 C.F.R. § 210.12(c)(1);

13. One (1) original and three (3) CDs loaded with the certified prosecution history of the '223 patent are included as Appendix H pursuant to 19 C.F.R. § 210.12(c)(1);

14. One (1) original and three (3) CDs loaded with the certified prosecution history of the '832 patent are included as Appendix I pursuant to 19 C.F.R. § 210.12(c)(1);

15. One (1) original and three (3) CDs loaded with the certified prosecution history of the '215 patent are included as Appendix J pursuant to 19 C.F.R. § 210.12(c)(1);

16. One (1) original and three (3) CDs loaded with the certified prosecution history of the '992 patent are included as Appendix K pursuant to 19 C.F.R. § 210.12(c)(1);

17. Four (4) CDs loaded with each technical references mentioned in the prosecution history of the '052 patent are included as Appendix L pursuant to 19 C.F.R. § 210.12(c)(2);

18. Four (4) CDs loaded with each technical references mentioned in the prosecution history of the '359 patent are included as Appendix M pursuant to 19 C.F.R. § 210.12(c)(2);

The Honorable Lisa R. Barton
November 30, 2012
Page 3

19. Four (4) CDs loaded with each technical references mentioned in the prosecution
    history of the '888 patent are included as Appendix N pursuant to 19 C.F.R. §
    210.12(c)(2);

20. Four (4) CDs loaded with each technical references mentioned in the prosecution
    history of the '556 patent are included as Appendix O pursuant to 19 C.F.R. §
    210.12(c)(2);

21. Four (4) CDs loaded with each technical references mentioned in the prosecution
    history of the '310 patent are included as Appendix P pursuant to 19 C.F.R. §
    210.12(c)(2);

22. Four (4) CDs loaded with each technical reference mentioned in the prosecution
    history of the '917 patent are included as Appendix Q pursuant to 19 C.F.R. §
    210.12(c)(2);

23. Four (4) CDs loaded with each technical references mentioned in the prosecution
    history of the '506 patent are included as Appendix R pursuant to 19 C.F.R. §
    210.12(c)(2);

24. Four (4) CDs loaded with each technical references mentioned in the prosecution
    history of the '223 patent are included as Appendix S pursuant to 19 C.F.R. §
    210.12(c)(2);

25. Four (4) CDs loaded with each technical reference mentioned in the prosecution
    history of the '832 patent are included as Appendix T pursuant to 19 C.F.R. §
    210.12(c)(2);

26. Four (4) CDs loaded with each technical reference mentioned in the prosecution
    history of the '215 patent are included as Appendix U pursuant to 19 C.F.R. §
    210.12(c)(2);

27. Four (4) CDs loaded with each technical reference mentioned in the prosecution
    history of the '992 patent are included as Appendix V pursuant to 19 C.F.R. §
    210.12(c)(2);

28. Eight (8) copies of the Statement of Public Interest pursuant to 19 C.F.R. § 210.8(b);

29. Physical Exhibit Nos. 1 - 12; and

30. A letter pursuant to Commission Rule 201.6(b) requesting confidential treatment of
    Confidential Exhibit Nos. 4C, 5C, 59C, 61C - 89C, 98C, and 116C - 119C.

Thank you for your attention to this matter.

Respectfully submitted,

Benjamin Levi

Enclosures

**McKool Smith**
A Professional Corporation • Attorneys
**Austin | Dallas | Houston | Los Angeles | Marshall | New York | Silicon Valley | Washington, DC**

# McKool Smith

Benjamin Levi
Direct Dial: (202) 370-8320
blevi@mckoolsmith.com

1999 K Street NW
Suite 600
Washington, DC 20006-1101

Telephone: (202) 370-8300
Telecopier: (202) 370-8344

November 30, 2012

**VIA HAND DELIVERY**

The Honorable Lisa R. Barton
Acting Secretary to the Commission
U.S. International Trade Commission
500 E Street, S.W., Room 112A
Washington, D.C. 20436

RE:   *Certain Electronic Devices, Including Certain Wireless Communication Devices, Tablet Computers, Media Players, and Televisions, and Components Thereof;* Inv. No. 337-TA-_____

Dear Acting Secretary Barton:

Complainants Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") by counsel, hereby requests, pursuant to 19 C.F.R. § 201.6, confidential treatment of the confidential business information contained in Confidential Exhibit Nos. 4C, 5C, 59C, 61C - 89C, 98C, and 116C - 119C to Ericsson 's Section 337 Complaint transmitted herewith.

Confidential treatment is sought for the following Confidential Exhibits:

1.      Confidential Exhibit No. 4C, which discloses the identity of all licensees of the Asserted Patents;

2.      Confidential Exhibit No. 5C which will be copies of license agreements;

3.      Confidential Exhibit No. 59C which describes, among other things, facts and information supporting the domestic industry;

4.      Confidential Exhibits No. 61C - 89C and 116C - 119C identify patents which are covered by license agreements which should remain confidential until permission is given from the licensees; and

5.      Confidential Exhibit No. 98C which describes, among other things, facts and information supporting the domestic industry.

The information described above qualifies as confidential information pursuant to 19 C.F.R. § 201.6 because it is not available to the public; unauthorized disclosure of such information could cause substantial harm to Ericsson's competitive position; and the disclosure

The Honorable Lisa R. Barton
November 30, 2012
Page 2

of the information for which Ericsson seeks confidential treatment could impair the
Commission's ability to obtain information necessary to perform its statutory functions.

Sincerely,

Benjamin Levi

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

| | |
|---|---|
| **In the Matter of** | |
| **CERTAIN ELECTRONIC DEVICES, INCLUDING CERTAIN WIRELESS COMMUNICATION DEVICES, TABLET COMPUTERS, MEDIA PLAYERS, AND TELEVISIONS, AND COMPONENTS THEREOF** | Investigation No. 337-TA-_____ |

## STATEMENT ON THE PUBLIC INTEREST

Pursuant to Commission Rule 210.8(b), 19 C.F.R. § 210.8(b), Complainants Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") submit this Statement on the Public Interest with respect to the remedial orders its seeks against Respondents Samsung Electronics America, Inc., Samsung Telecommunications America LLC, and Samsung electronics Co. Ltd. (collectively, "Samsung"). The products at issue in the Complaint are consumer electronic devices. Ericsson seeks a limited exclusion order specifically directed to Samsung excluding from entry into the United States certain consumer electronics, including mobile phones, tablets, televisions, and media players that infringe one or more claims of United States Patent No. 6,029,052 ("the '052 Patent"), United States Patent No. 6,058,359 ("the '359 Patent"), United States Patent No. 6, 278,888 ("the '888 Patent"), United States Patent No. 6,301,556 ("the '556 Patent"), United States Patent No. 6,418,310 ("the '310 Patent"), United States Patent No. 6,445,917 ("the '917 Patent"), United States Patent No. 6,473,506 ("the '506 Patent"), United States Patent No. 6,519,223 ("the '223 Patent"), United States Patent No. 6,624,832 ("the '832 Patent"), United States Patent No. 6,772,215 ("the '215 Patent"), and United States Patent No. 8,169,992 ("the '992 Patent"). Ericsson also seeks a cease and desist

1

order prohibiting Samsung from engaging in the unlawful importation and/or sale within the United States after importation of certain consumer electronics, including mobile phones, tablets, televisions, and media players, that infringe the '052 Patent, the '359 Patent, the '888 Patent, the '556 Patent, the '310 Patent, the '917 Patent, the '506 Patent, the '223 Patent, the '832 Patent, the '215 Patent, and/or the '992 Patent.  If the Commission grants these remedial orders, the public interest will be served.

## I.  THE REQUESTED REMEDIAL ORDERS ARE IN ACCORD WITH THE PUBLIC INTEREST

The public interest in protecting intellectual property rights is very strong.  *Certain Baseband Processor Chips and Chipsets, Transmitter and Receiveer (Radio) Chip, power Control Chips*, Inv. No. 337-TA-543, Comm'n Op., 2007 ITC LEXIS 621 at *240 (June 19, 2007).  In the few instances where the Commission found an inverse impact on the public interest that was significant enough to deny relief, "the exclusion order was denied because inadequate supply within the United States--by both the patentee and domestic licensees--meant that an exclusion order would deprive the public of products necessary for some important health or welfare need." *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1360 (Fed. Cir. 2010).  Here, however, the requested remedial orders would not be contrary to the public interest because: (1) the accused devices are luxury devices that are not necessary to some important health or welfare need; (2) Ericsson currently licenses the asserted patents to large companies that could easily fill any void in the market created by the requested remedial order; and (3) Ericsson's licensees already sell articles that directly compete with, and are substitutes for, Samsung's infringing products in the United States.  As such, the strong public interest in protecting Ericsson's valid intellectual property rights outweighs any adverse impact on the public.

**A. Explanation of how the articles potentially subject to the orders are used in the United States.**

The accused devices at issue in this investigation are portable communication devices, tablet computers, televisions, and media players. These devices, such as smartphones, tablet computers, flat-panel televisions, and Blu-Ray disk players, are not necessary for any health or welfare need. Instead, these are high-end luxury devices used in large degree for entertainment. Smartphones and computers may incorporate portable media players, gaming devices, camera phones with high-resolution touchscreens and video conferencing capability, web browsers, etc. These products combine mobile communication technology with multiple luxury technologies that were previously available separately, and which continue to be available separately in the United States. Televisions and Blu-Ray disk players are also luxury items that are used by consumers primarily for home entertainment purposes, such as watching over-the-air, cable, and/or satellite programs, DVD or Blu-Ray disks, or home videos. The accused television and media players also incorporate IEEE 802.11x ("Wi-Fi") components and software or firmware that allow the devices to connect to the internet and stream videos, among other things.

**B. There are No public health, safety, or welfare concerns in the United States relating to the requested remedial orders.**

There are no health, safety, or welfare concerns implicated by this Investigation. Excluding the accused products will not harm public health, safety, or welfare. Traditionally, the Commission's public health, safety, or welfare concern has been limited to medical devices or pharmaceutical drugs. *See, e.g., Certain Toothbrushes and the Packaging Thereof*, Inv. No. 337-TA-391, Comm'n Op., 1997 WL 803475 at *2 (Oct. 15, 1997). Smartphones, tablets, flat-panel televisions, and Blu-Ray disk players are consumer electronics devices, not medical devices, pharmaceuticals, or vaccines. Rather, these products provide a combination of entertainment and convenience of combined functionality found previously in separate devices.

3

**C. Like or directly competitive articles are readily available through Ericsson, its licensees, and/or third parties.**

There are many like or directly competitive articles that could take the place of Samsung's infringing devices after the issuance of exclusion orders.  For example, as described in detail in the domestic industry section of the complaint, there are products offered by licensed competitors that use the technical implementation of the Asserted Patents and offer substantially equivalent overall functionality to the public at a similar price point to the consumer.

**D. Ericsson, its licensees, or third parties have the capacity to replace the volume of articles subject to the requested remedial orders in a commercially reasonable time in the United States.**

It is well established that the presence of an adequate supply of substitute products is sufficient to override any public interest concerns.  *Certain Lens-Fitted Film Packages* ("LFFPs"), Inv. No. 337-TA-406, Comm'n Op., 1991 ITC LEXIS 202 at *40 (June 28, 1999). As described in detail in the domestic industry section of the complaint, Ericsson and its existing licensees have substantial manufacturing, production, and shipping capabilities that are more than enough to replace any excluded articles in a commercially reasonable amount of time.

**E. The requested remedial relief would have a minimal impact on customers.**

It is unlikely that an exclusion order would substantially impact customers.  There would be no shortage of competing goods because there are numerous substitute products, including those from Ericsson and its licensees, which will be able to replace the volume of the excluded articles.  Even if the exclusion order results in a slight increase in the price of certain products, a price increase alone is insufficient to warrant preclusion of a remedial order.  *LFFPs*, 1999 ITC LEXIS 202 at *40 (finding that some price increase does not "justify a determination that the public interest in protecting intellectual property rights is in any way outweighed.")  Thus, any impact to the public interest by the exclusion of Samsung's infringing products will be minimal.

4

## II. CONCLUSION

If the Commission grants the requested remedial orders, the public interest will be served. The accused devices are not necessary to any health or welfare need, and an adequate supply of substitute devices will be available through at least Ericsson and its current licensees. As such, the strong public interest in protecting Ericsson's valid intellectual property rights outweighs any potential adverse impact on the public.

Dated: November **30**, 2012

Respectfully submitted,

McKool Smith, P.C.

_____
Mike McKool
Douglas A. Cawley
Theodore Stevenson III
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Benjamin Levi
1999 K Street, N.W., Suite 600
Washington DC 20006
Telephone: (202) 370-8300
Telecopier: (202) 370-8344

*Counsel for Complainants
Ericsson Inc. and Telefonaktiebolaget
LM Ericsson*

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

In the Matter of

**CERTAIN ELECTRONIC DEVICES,
INCLUDING WIRELESS
COMMUNICATION DEVICES, TABLET
COMPUTERS, MEDIA PLAYERS, AND
TELEVISIONS, AND COMPONENTS
THEREOF**

Investigation No. 337-TA-_____

## COMPLAINT OF ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

### COMPLAINANTS

Ericsson Inc.
6300 Legacy Drive
Plano, Texas 75024
Telephone No. (972) 583-0000

Telefonaktiebolaget LM Ericsson
Torshamsgatan 23, Kista
164 83 Stockholm Sweden
Telephone No. 011 46 8 710 0000

### COUNSEL FOR COMPLAINANTS

Mike McKool, Jr.
Douglas A. Cawley
Theodore Stevenson III
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4035

Benjamin Levi
**MCKOOL SMITH, P.C.**
1999 K Street, N.W., Suite 600
Washington, D.C. 20006
Telephone: (202) 370-8300
Telecopier: (202) 370-8344

### PROPOSED RESPONDENTS

Samsung Electronics America, Inc.
85 Challenger Road
Ridgefield Park, NJ 076660
Telephone No. (201) 229-4000

Samsung Telecommunications America LLC
1301 East Lookout Drive
Richardson, Texas 75082
Telephone No. (972) 761-7000

Samsung Electronics Co. Ltd.
Samsung Electronics Building
1320-10, Seocho 2-dong
Seocho-gu, Seoul 137-857
South Korea
Telephone No. 82 2 727 7114

## TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................................1

II.  THE PARTIES.............................................................................................................2

    A.  Complainants ....................................................................................................2

    B.  Respondents ......................................................................................................3

III.  THE TECHNOLOGIES AND PRODUCTS AT ISSUE ..............................................4

IV.  THE ASSERTED PATENTS .......................................................................................5

    A.  United States Patent No. 6,029,052 ..................................................................5

        1.  Identification of the Patent and Ownership by Ericsson.....................................................................................5

        2.  Nontechnical Description of the '052 Patent..............................6

        3.  Foreign Counterparts to the '052 Patent .....................................6

        4.  Licenses........................................................................................7

    B.  United States Patent No. 6,058,359 ..................................................................7

        1.  Identification of the Patent and Ownership by Ericsson.....................................................................................7

        2.  Nontechnical Description of the '359 Patent..............................8

        3.  Foreign Counterparts to the '359 Patent .....................................9

        4.  Licenses........................................................................................9

    C.  United States Patent No. 6,278,888 ................................................................10

        1.  Identification of the Patent and Ownership by Ericsson...................................................................................10

        2.  Nontechnical Description of the '888 Patent............................11

        3.  Foreign Counterparts to the '888 Patent ...................................11

        4.  Licenses......................................................................................12

D. United States Patent No. 6,301,556 .................................................................12

    1. Identification of the Patent and Ownership by Ericsson.......................................................................................12

    2. Nontechnical Description of the '556 Patent ...........................13

    3. Foreign Counterparts to the '556 Patent ..................................13

    4. Licenses........................................................................................14

E. United States Patent No. 6,418,310 .................................................................15

    1. Identification of the Patent and Ownership by Ericsson.......................................................................................15

    2. Nontechnical Description of the '310 Patent ...........................15

    3. Foreign Counterparts to the '310 Patent ..................................16

    4. Licenses........................................................................................16

F. United States Patent No. 6,445,917 .................................................................16

    1. Identification of the Patent and Ownership by Ericsson.......................................................................................16

    2. Nontechnical Description of the '917 Patent ...........................17

    3. Foreign Counterparts to the '917 Patent ..................................17

    4. Licenses........................................................................................18

G. United States Patent No. 6,473,506 .................................................................19

    1. Identification of the Patent and Ownership by Ericsson.......................................................................................19

    2. Nontechnical Description of the '506 Patent ...........................19

    3. Foreign Counterparts to the '506 Patent ..................................20

    4. Licenses........................................................................................20

H. United States Patent No. 6,519,223 .................................................................21

    1. Identification of the Patent and Ownership by Ericsson.......................................................................................21

| | | 2. | Nontechnical Description of the '223 Patent | 21 |
| | | 3. | Foreign Counterparts to the '223 Patent | 22 |
| | | 4. | Licenses | 23 |
| | I. | | United States Patent No. 6,624,832 | 23 |
| | | 1. | Identification of the Patent and Ownership by Ericsson | 23 |
| | | 2. | Nontechnical Description of the '832 Patent | 24 |
| | | 3. | Foreign Counterparts to the '832 Patent | 24 |
| | | 4. | Licenses | 24 |
| | J. | | United States Patent No. 6,772,215 | 24 |
| | | 1. | Identification of the Patent and Ownership by Ericsson | 24 |
| | | 2. | Nontechnical Description of the '215 Patent | 25 |
| | | 3. | Foreign Counterparts to the '215 Patent | 26 |
| | | 4. | Licenses | 26 |
| | K. | | United States Patent No. 8,169,992 | 27 |
| | | 1. | Identification of the Patent and Ownership by Ericsson | 27 |
| | | 2. | Nontechnical Description of the '992 Patent | 28 |
| | | 3. | Foreign Counterparts to the '992 Patent | 28 |
| | | 4. | Licenses | 28 |
| V. | | | UNLAWFUL AND UNFAIR ACTS OF PROPOSED RESPONDENTS – PATENT INFRINGEMENT, AND SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE | 29 |
| | A. | | Infringement of United States Patent No. 6,029,052 | 29 |
| | B. | | Infringement of United States Patent No. 6,058,359 | 31 |
| | C. | | Infringement of United States Patent No. 6,278,888 | 33 |

| | | |
|---|---|---|
| D. | Infringement of United States Patent No. 6,301,556 | 34 |
| E. | Infringement of United States Patent No. 6,418,310 | 36 |
| F. | Infringement of United States Patent No. 6,445,917 | 38 |
| G. | Infringement of United States Patent No. 6,473,506 | 41 |
| H. | Infringement of United States Patent No. 6,519,223 | 43 |
| I. | Infringement of United States Patent No. 6,624,832 | 47 |
| J. | Infringement of United States Patent No. 6,772,215 | 49 |
| K. | Infringement of United States Patent No. 8,169,992 | 53 |

VI. TARIFF CLASSIFICATION UNDER THE HARMONIZED TARIFF SCHEDULE .......................................................................... 55

VII. RELATED LITIGATION ............................................................... 56

VIII. DOMESTIC INDUSTRY .............................................................. 57

| | | |
|---|---|---|
| A. | Ericsson's Domestic Activities | 57 |
| B. | Ericsson's Domestic Licensing | 62 |
| C. | The Domestic Activities of Ericsson's Licensee Motorola | 64 |
| D. | The Domestic Activities of Ericsson's Licensee Apple | 69 |
| E. | The Domestic Activities of Ericsson Licensee Research In Motion (RIM) | 73 |

IX. RELIEF REQUESTED ................................................................... 75

## TABLES OF SUPPORTING MATERIALS

### INDEX OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Samsung Electronics America website showing entity is comprised of the Consumer Business Division (CBD) and Enterprise Business Division (EBD) |
| 2 | Certified Copy of U.S. Patent No. 6,029,052 |
| 3 | Certified Copy of the Assignment for U.S. Patent 6,029,052 |
| 4 | Public version of Confidential Exhibit 4C |
| 4C | **CONFIDENTIAL** List of Licensees |
| 5 | Public version of Confidential Exhibit 5C |
| 5C | **CONFIDENTIAL** Copies of License Agreements for the Asserted Patents<br>*(NOTE: THIS EXHIBIT TO BE PROVIDED AT A LATER DATE)* |
| 6 | Certified Copy of U.S. Patent No. 6,058,359 |
| 7 | Certified Copy of the Assignment for U.S. Patent No. 6,058,359 |
| 8 | Certified Copy of U.S. Patent No. 6,278,888 |
| 9 | Certified Copy of the Assignment for U.S. Patent No. 6,278,888 |
| 10 | Certified Copy of U.S. Patent No. 6,301,556 |
| 11 | Certified Copy of the Assignment for U.S. Patent No. 6,301,556 |
| 12 | Certified Copy of U.S. Patent No. 6,418,310 |
| 13 | Certified Copy of the Assignment for U.S. Patent No. 6,418,310 |
| 14 | Certified Copy of U.S. Patent No. 6,445,917 |
| 15 | Certified Copy of the Assignment for U.S. Patent No. 6,445,917 |
| 16 | Certified Copy of U.S. Patent No. 6,473,506 |
| 17 | Certified Copy of the Assignment for U.S. Patent No. 6,473,506 |
| 18 | Certified Copy of U.S. Patent No. 6,519,223 |
| 19 | Certified Copy of the Assignment for U.S. Patent No. 6,519,223 |
| 20 | Certified Copy of U.S. Patent No. 6,624,832 |
| 21 | Certified Copy of the Assignment for U.S. Patent No. 6,624,832 |
| 22 | Certified Copy of U.S. Patent No. 6,772,215 |
| 23 | Certified Copy of the Assignment for U.S. Patent No. 6,772,215 |
| 24 | Uncertified Copy of U.S. Patent No. 8,169,992 |
| 25 | Uncertified Copy of the Assignment for U.S. Patent No. 8,169,992 |
| 26 | Photo indicating Samsung Captivate Glide is Marked as "Made in China" |
| 27 | Purchase Receipt for Samsung Captivate Glide Smartphone |
| 28 | Infringement Chart for Claims 1 and 13 of U.S. Patent 6,029,052 for Samsung Captivate Glide |
| 29 | Photo indicating Samsung Galaxy S III is Marked as "Made in China" |
| 30 | Purchase Receipt for Samsung Galaxy S III Smartphone |
| 31 | Infringement Chart for Claims 28 and 40 of U.S. Patent 6,058,359 for Samsung Galaxy S III |

| Exhibit No. | Description |
|---|---|
| 32 | Infringement Chart for Claim 30 of U.S. Patent 6,278,888 for Samsung Galaxy S III |
| 33 | Infringement Chart for Claims 1, 31, 50, and 53 of U.S. Patent 6,301,556 for Samsung Galaxy S III |
| 34 | Infringement Chart for Claims 1, 4, 6 and 13 of U.S. Patent 6,418,310 for Samsung Galaxy S III |
| 35 | Infringement Chart for Claims 1, 24, and 25 of U.S. Patent 6,445,917 for Samsung Galaxy S III |
| 36 | Infringement Chart for Claims 1 and 17 of U.S. Patent 6,473,506 for Samsung Galaxy S III |
| 37 | Infringement Chart for Claims 1, 11, 19, and 30 of U.S. Patent 6,519,223 for Samsung Galaxy S III |
| 38 | Infringement Chart for Claim 1, 9 and 12 of U.S. Patent 6,624,832 for Samsung Galaxy S III |
| 39 | Infringement Chart for Claim 1, 15, 25, and 45 of U.S. Patent 6,772,215 for Samsung Galaxy S III |
| 40 | Infringement Chart for Claim 1 and 7 of U.S. Patent 8,169,992 for Samsung Galaxy S III |
| 41 | Photo indicating Samsung Galaxy Note is Marked as "Made in Korea" |
| 42 | Purchase Receipt for Samsung Galaxy Note |
| 43 | Infringement Chart for Claims 1, 24-26, and 28 of U.S. Patent 6,445,917 for Samsung Galaxy Note |
| 44 | Photographs of the Representative Samsung Evolved Node B Macrocell |
| 45 | Infringement Chart for Claims 30 and 54 of U.S. Patent 6,445,917 for Samsung Evolved Node B Macrocell |
| 46 | Infringement Chart for Claims 6 and 13 of U.S. Patent 8,169,992 for Samsung Evolved Node B Macrocell |
| 47 | Photo indicating Samsung UN55D8000 Television is Marked as "Made in Tijuana Mexico" |
| 48 | Purchase Receipt for Samsung UN55D8000 Television |
| 49 | Infringement Chart for Claims 1, 11, 19, 30 of U.S. Patent 6,519,223 for Samsung 8000 Series TV |
| 50 | Infringement Chart for Claims 1, 15, 25 and 45 of U.S. Patent 6,772,215 for Samsung 8000 Series TV |
| 51 | Photo indicating Samsung BD-E5700 Blu-Ray Player is Marked as "Assembled in China" |
| 52 | Purchase Receipt for Samsung BD-E5700 Blu-Ray Player |
| 53 | Infringement Chart for Claims 1, 11,19, and 30 of U.S. Patent 6,519,223 for Samsung BD-E5700 Blu-Ray player |
| 54 | Infringement Chart for Claims 1, 15, 25 and 45 of Patent 6,772,215 for Samsung BD-E5700 Blu-Ray Player |
| 55 | Photograph indicating Samsung Galaxy Tab (SCH-I815) is Marked as "Made in Korea" |
| 56 | Purchase receipt for Samsung Galaxy Tab (SCH-I815) |

| Exhibit No. | Description |
|---|---|
| 57 | Infringement Chart for Claims 1, 11, 19, and 30 of U.S. Patent 6,519,223 for Samsung Galaxy Tab (SCH-I815) |
| 58 | Infringement Chart for Claims 1, 15, 25, and 45 of U.S. Patent 6,772,215 for Samsung Galaxy Tab (SCH-I815) |
| 59 | Public version of Confidential Exhibit 59C |
| 59C | **CONFIDENTIAL** Declaration Regarding Domestic Industry |
| 60 | Press release stating that Sprint Nextel outsourced its United States network operations and maintenance to Ericsson |
| 61 | Public version of Confidential Exhibit 61C |
| 61C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Apple iPhone 4 |
| 62 | Public version of Confidential Exhibit 62C |
| 62C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Apple iPhone 4 |
| 63 | Public version of Confidential Exhibit 63C |
| 63C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Apple iPhone 4 |
| 64 | Public version of Confidential Exhibit 64C |
| 64C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Apple iPhone 4 |
| 65 | Public version of Confidential Exhibit 65C |
| 65C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Apple iPhone 4 |
| 66 | Public version of Confidential Exhibit 66C |
| 66C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Atrix 2 |
| 67 | Public version of Confidential Exhibit 67C |
| 67C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Atrix 2 |
| 68 | Public version of Confidential Exhibit 68C |
| 68C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Atrix 2 |
| 69 | Public version of Confidential Exhibit 69C |
| 69C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Atrix 2 |
| 70 | Public version of Confidential Exhibit 70C |
| 70C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Atrix 2 |
| 71 | Public version of Confidential Exhibit 71C |
| 71C | **CONFIDENTIAL** Chart comparing claims of Asserted Patent to Motorola Atrix 2 |
| 72 | Public version of Confidential Exhibit 72C |
| 72C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Atrix 2 |

| Exhibit No. | Description |
|---|---|
| 73 | Public version of Confidential Exhibit 73C |
| 73C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Cliq 2 |
| 74 | Public version of Confidential Exhibit 74C |
| 74C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM Bold 9900 |
| 75 | Public version of Confidential Exhibit 75C |
| 75C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM Bold 9900 |
| 76 | Public version of Confidential Exhibit 76C |
| 76C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM Bold 9900 |
| 77 | Public version of Confidential Exhibit 77C |
| 77C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM Bold 9900 |
| 78 | Public version of Confidential Exhibit 78C |
| 78C | **CONFIDENTIAL** Chart comparing claims of Asserted Patent to RIM Bold 9900 |
| 79 | Public version of Confidential Exhibit 79C |
| 79C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM Bold 9900 |
| 80 | Public version of Confidential Exhibit 80C |
| 80C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Admiral |
| 81 | Public version of Confidential Exhibit 81C |
| 81C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Admiral |
| 82 | Public version of Confidential Exhibit 82C |
| 82C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Droid RAZR M |
| 83 | Public version of Confidential Exhibit 83C |
| 83C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Droid RAZR M |
| 84 | Public version of Confidential Exhibit 84C |
| 84C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Droid RAZR M |
| 85 | Public version of Confidential Exhibit 85C |
| 85C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM 9860 Torch |
| 86 | Public version of Confidential Exhibit 86C |
| 86C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM 9860 Torch |
| 87 | Public version of Confidential Exhibit 87C |

| Exhibit No. | Description |
|---|---|
| 87C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM 9860 Torch |
| 88 | Public version of Confidential Exhibit 88C |
| 88C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM 9860 Torch |
| 89 | Public version of Confidential Exhibit 89C |
| 89C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM 9860 Torch |
| 90 | Chart comparing Claim 40 of U.S. Patent 6,058,359 to Ericsson Base Stations and/or Media Gateways |
| 91 | Chart comparing Claim 1 of U.S. Patent 6,301,556 to Ericsson Base Stations and/or Media Gateways |
| 92 | Chart comparing Claim 1 of U.S. Patent 6,473,506 to Ericsson Base Stations and/or Media Gateways |
| 93 | Intentionally left blank |
| 94 | Chart comparing Claim 30 of U.S. Patent 6,519,223 to Ericsson Base Stations and/or Media Gateways |
| 95 | Chart comparing Claim 1 of U.S. Patent 6,772,215 to Ericsson Base Stations and/or Media Gateways |
| 96 | Chart comparing Claim 30 of U.S. Patent 6,445,917 to Ericsson Base Stations and/or Media Gateways |
| 97 | Chart comparing Claim 6 of U.S. Patent 8,169,992 to Ericsson Base Stations and/or Media Gateways |
| 98 | Public version of Confidential Exhibit 98C |
| 98C | **CONFIDENTIAL** Declaration Regarding Domestic Industry |
| 99 | Motorola Mobility Holdings Inc.'s 10-K dated February 17, 2012 for fiscal year ended December 31, 2011 |
| 100 | Motorola Mobility Job Postings |
| 101 | Motorola Solutions Job Postings |
| 102 | Motorola Technical Brief titled "5Ghz IEEE 802.11a for the Interference Avoidance" |
| 103 | Apple, Inc. 10-K dated October 31, 2012, for fiscal year ended September 29, 2012 |
| 104 | Article from Silicon Valley San Jose Business Journal Reporting Apple, Inc.'s Occupancy of Cupertino Work Space, dated February 10, 2008 |
| 105 | Apple, Inc. Job Posting - iPod/iPhone Lab Test Engineer |
| 106 | Apple, Inc. Job Posting - iPhone Wireless Certification EPM |
| 107 | Apple, Inc. Job Posting - Regulatory RF Systems Engineer |
| 108 | Apple, Inc. Job Posting - RF Systems Integration Engineer |
| 109 | Apple, Inc. Job Posting - RF Systems Performance Engineer |
| 110 | Apple, Inc. Job Posting - iPhone Cellular Software QA Engineer |
| 111 | Apple, Inc. Job Posting - iOS Cellular Protocol Software Engineer |
| 112 | Apple, Inc. Job Posting - iPhone Sr Modem DSP Engineer |

| Exhibit No. | Description |
|---|---|
| 113 | Press releases dated December 17, 2007 and December 31, 2007 from Reuter and Mobilewhack.com regarding the RIM facility in Irving |
| 114 | Two RIM job announcements |
| 115 | Research in Motion Form 40-F dated April 1, 2010 |
| 116 | Public version of Confidential Exhibit 116C |
| 116C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Apple iPhone 4 |
| 117 | Public version of Confidential Exhibit 117C |
| 117C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM Bold 9900 |
| 118 | Public version of Confidential Exhibit 118C |
| 118C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to Motorola Atrix 2 |
| 119 | Public version of Confidential Exhibit 119C |
| 119C | **CONFIDENTIAL** Chart comparing claim of Asserted Patent to RIM 9860 Torch |

## TABLE OF APPENDICES

| | Description |
|---|---|
| A | Prosecution History of Patent 6,029,052 (CERTIFIED) |
| B | Prosecution History of Patent 6,058,359 (CERTIFIED) |
| C | Prosecution History of Patent 6,278,888 (UNCERTIFIED) |
| D | Prosecution History of Patent 6,301,556 (CERTIFIED) |
| E | Prosecution History of Patent 6,418,310 (CERTIFIED) |
| F | Prosecution History of Patent 6,445,917 (UNCERTIFIED) |
| G | Prosecution History of Patent 6,473,506 (CERTIFIED) |
| H | Prosecution History of Patent 6,519,223 (CERTIFIED) |
| I | Prosecution History of Patent 6,624,832 (CERTIFIED) |
| J | Prosecution History of Patent 6,772,215 (CERTIFIED) |
| K | Prosecution History of Patent 8,169,992 (UNCERTIFIED) |
| L | References from Prosecution History for US Patent 6,029,052 |
| M | References from Prosecution History for US Patent 6,058,359 |
| N | References from Prosecution History for US Patent 6,278,888 |
| O | References from Prosecution History for US Patent 6,301,556 |
| P | References from Prosecution History for US Patent 6,418,310 |
| Q | References from Prosecution History for US Patent 6,445,917 |
| R | References from Prosecution History for US Patent 6,473,506 |
| S | References from Prosecution History for US Patent 6,519,223 |
| T | References from Prosecution History for US Patent 6,624,832 |
| U | References from Prosecution History for US patent 6,772,215 |
| V | References from Prosecution History for US patent 8,169,992 |

## INDEX OF PHYSICAL EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | Physical Sample of Samsung Captivate Glide Smartphone |
| 2 | Physical Sample of Samsung Galaxy S III Smartphone |
| 3 | Physical Sample of Samsung Galaxy Note Smartphone |
| 4 | Physical Sample of the Apple iPhone 4 Smartphone |
| 5 | Physical Sample of Motorola Atrix 2 Smartphone |
| 6 | Physical Sample of RIM Bold 9900 Smartphone |
| 7 | Physical Sample of Motorola Admiral Smartphone |
| 8 | Physical Sample of RIM 9860 Torch Smartphone |
| 9 | Physical Sample of Motorola Droid RAZR M Smartphone |
| 10 | Physical Sample of Motorola Cliq 2 Smartphone |
| 11 | Physical Sample of Samsung BD-E5700 blu-ray player |
| 12 | Physical Sample of Samsung Galaxy Tab (SCH-I815) |

I.     **INTRODUCTION**

1.     Complainants Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively "Ericsson" or "Complainants") request that the United States International Trade Commission ("the Commission") commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), based upon the sale for importation, the importation into the United States, and/or the sale within the United States after importation of certain electronic devices, including wireless communication devices, tablet computers, media players, and televisions, and components thereof ("the Accused Products"), including the Samsung Galaxy S III, the Samsung Captivate Glide, and the Samsung Galaxy Note, that directly or indirectly infringe any of the following claims: claims 1 - 3, 5, 8, 11, 13, 14, and 18 of United States Patent No. 6,029,052 ("the '052 patent"); claims 28 - 33, 36, 37, 39, 40 - 43, 46, 47, 50, 51, and 54 of United States Patent No. 6,058,359 ("the '359 patent"); claim 30 of United States Patent No. 6,278,888 ("the '888 patent"); claims 1 - 3, 8, 10, 19, 20, 23, 24, 26 - 33, 38, 40, 50, 53, 54, 55, 57, 62 - 67, and 68 of United States Patent No. 6,301,556 ("the '556 patent"); claims 1, 4, 6, 9 - 13, 16 - 19, and 20 of United States Patent No. 6,418,310 (the '310 patent"); claims 1, 24 - 26, 28, 30, and 54 of United States Patent No. 6,445,917 ("the '917 patent"); claims 1, 4, 6, 7, 17, 20, 22, and 23 of United States Patent No. 6,473,506 ("the '506 patent"); claims 1-3, 11-14, 19, 21, 22, and 30-32 of United States Patent No. 6,519,223 ("the '223 patent"); claims 1, 4, 9, 10, and 12 of United States Patent No. 6,624,832 ("the '832 patent"); claims 1, 2, 4, 6, 8, 15, 22, 25, 26, 29, 32, 34, 45, 46, 49, 52, and 54 of United States Patent No. 6,772,215 ("the '215 patent"); and claims 1, 3, 5, 6, 7, 8, 10, 11, 12, 13, 14, and 15 of United States Patent No. 8,169,992 ("the '992 patent") (collectively, "the Asserted Patents").

2.      An industry as required by 19 U.S.C. §§ 1337(a)(2) and (3) exists in the United States and is in the process of being established.

3.      Complainants seek as relief a permanent limited exclusion order pursuant to 19 U.S.C. § 1337(d) barring from entry into the United States the Accused Products, including, *inter alia* and without limitation, wireless communication devices (*e.g.*, cellular phones and base stations), tablet computers, IEEE 802.11-compliant televisions and blu-ray players, and components thereof that infringe at least one claim of the Asserted Patents.  Complainants seek as further relief a permanent cease and desist order preventing Samsung from all domestic commercial activities concerning infringing imported goods.

## II.      THE PARTIES

### A.      Complainants

4.      Complainant Telefonaktiebolaget LM Ericsson ("LM Ericsson") is a corporation organized and existing under the laws of Sweden, having its principal place of business at Torshamsgatan 23, Kista, 164 83 Stockholm Sweden.  LM Ericsson wholly owns its subsidiary Ericsson Holding II Inc., a Delaware corporation, which in turn wholly owns Complainant Ericsson Inc.

5.      Complainant Ericsson Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

6.      Ericsson is the world's largest supplier of telecommunications network equipment and related services to telecom operators.  Ericsson has over 95,000 employees and customers in more than 175 countries.  Worldwide, more than forty percent of all mobile phone calls are made through Ericsson networks.  Ericsson employs more than 13,498 people in North America and 10,300 in the United States.  Ericsson holds over 27,000 patents.

**B.     Respondents**

7.     Respondent Samsung Electronics Co., Ltd. ("Samsung Electronics") is a corporation organized under the laws of the Country of Korea, having its principal place of business at 250 Taepyeongo 2-ga, Jung-gu, Seoul 100-742, South Korea.

8.     On information and belief, Samsung Electronics designs, develops, manufactures, imports into the United States and/or and sells for importation into the United States the Accused Products, including numerous wireless communication devices, including, without limitation, cellular phones, tablet computers, base stations, media players, and televisions, and components thereof.

9.     Respondent Samsung Telecommunications America LLC ("STA") is a corporation organized under the laws of the State of Delaware, having its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082.

10.     On information and belief, STA imports and/or sells in the United States after importation the Accused Products, including numerous wireless communication devices, including, without limitation, cellular phones, tablet computers, base stations, media players, and components thereof manufactured by Samsung Electronics. On information and belief, STA is a wholly-owned subsidiary of Samsung Electronics.

11.     Respondent Samsung Electronics America, Inc. ("SEA") is a corporation organized under the laws of the State of New York, having its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. On information and belief, SEA is a wholly-owned subsidiary of Samsung Electronics. According to Samsung's web site, SEA "comprises" the Consumer Business Division ("CBD") and Enterprise Business Division ("EBD"). Exhibit 1. Because CBD and EBD is "comprised" of SEA, CBD and EBD are not distinct from SEA.

12.     On information and belief, SEA, through its CBD division, imports and/or sells in the United States after importation the Accused Products, including numerous products having wireless local area network functionality, including televisions and blu-ray players, and components thereof manufactured by Samsung Electronics.

13.     On information and belief, SEA, through its EBD division, imports and/or sells in the United States after importation the Accused Products, including numerous products having wireless local area network functionality, and components thereof manufactured by Samsung Electronics.

14.     On information and belief, SEA manages the North American operations of CBD and EBD.  On information and belief, SEA imports and/or sells after importation the Accused Products.

15.     Respondents Samsung Electronics, SEA (including CBD and EBD), and STA are collectively referred to herein as "Samsung."

### III.     THE TECHNOLOGIES AND PRODUCTS AT ISSUE

16.     The technologies at issue relate to electronic devices that allow for wireless communications and data transfer over networks and include: (i) RF receiver technology; (ii) hardware and software design of wireless communication devices; (iii) user interface technology; (iv) modulation technology; and (v) in some cases, standardized communication protocols, including the GSM, GPRS, EDGE, W-CDMA, LTE, and/or 802.11 standards (collectively, "Standards").

17.     The products at issue are Samsung's wireless communication devices, including cellular phones, tablet computers, base stations, televisions and media players with wireless networking capabilities, and components thereof.   These products incorporate Ericsson's patented apparatuses or operate according to Ericsson's patented methods.  On information and

belief, these products are sold for importation, imported into the United States, and/or sold after importation as finished products, and/or components of finished products by Samsung.

18.     Although the Ericsson patented technologies may be used in a variety of applications, the Samsung products believed to infringe are wireless communication devices, including cellular phones, tablet computers, base stations, televisions, and media players, and components thereof.  Discovery may reveal the use of Ericsson's patented technologies in other products.

## IV.     THE ASSERTED PATENTS

### A.     United States Patent No. 6,029,052

#### 1.     Identification of the Patent and Ownership by Ericsson

19.     The '052 patent, entitled "Multiple Mode Direct Conversion Receiver," was issued on February 22, 2000, based upon United States Patent Application No. 08/886,244, filed on July 1, 1997.  A certified copy of the '052 patent is attached as Exhibit 2.

20.     Ericsson owns by assignment the entire right, title and interest in the '052 patent. Telefonaktiebolaget LM Ericsson obtained all right, title and interest in the '052 patent from inventors Martin Isberg and Peter Jakobsson by assignment executed on April 28, 1997; from inventors Bjorn Lindquist and Jan Celander by assignment executed on April 30, 1997; from inventors Kjell Gustafsson and Torsten Carlsson by assignment executed on May 5, 1997; from inventor Lars-Peter Kunkel by assignment executed on May 12, 1997; and from inventor Jacob Mannerstrale by assignment executed on May 15, 1997.  The assignments were recorded on July 1, 1997, at Reel/Frame 08668/0785.

21.     A certified copy of the assignment for the '052 patent is attached at Exhibit 3.

22.     A certified copy of the prosecution history of the '052 patent is included as Appendix A.  The cited references identified in the prosecution history of the '052 patent are included in Appendix L.

23.     The '052 patent will expire on July 1, 2017.

24.     Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation Accused Products that infringe claims 1 - 3, 5, 8, 11, 13, 14, and 18 of the '052 patent.

## 2.     Nontechnical Description of the '052 Patent

25.     The '052 patent discloses a communication device that uses direct conversion (processing received signals using intermediate frequencies within the same frequency range as the received signal bandwidth) to receive wireless signals at multiple frequency bands without requiring significant hardware duplication.  This allows the receiver to share a substantial amount of hardware for different frequency bands.[1]

## 3.     Foreign Counterparts to the '052 Patent

26.     The following is a list of all foreign counterparts to the '052 patent:

| U.S. Patent 6,029,052 | | | | | |
|---|---|---|---|---|---|
| Application Date | Application Number | Status | Patent Date | Patent Number | Country |
| 6/30/1998 | 980103169 | Granted | 6/30/2005 | 016121 | AR |
| 6/23/1998 | 81359/98 | Granted | 3/7/2002 | 745063 | AU |
| 6/23/1998 | PI9810376-8 | Filed | | | BR |
| 6/23/1998 | 2295292 | Granted | 6/10/2008 | 2295292 | CA |
| 6/18/1998 | 1399-98 | Granted | 9/26/2006 | 42836 | CL |
| 6/23/1998 | 988068311 | Granted | 10/1/2003 | ZL98806831-1 | CN |
| 6/30/1998 | 98-36793 | Inactive | | | CO |
| 6/23/1998 | 98931173-3 | Granted | 12/7/2005 | 0995267 | DE |
| 6/23/1998 | 0615/99PC | Inactive | | | EE |
| 6/23/1998 | 98931173.3 | Granted | 12/7/2005 | 0995267 | EP |

---

[1]     No part of this Complaint, including any section herein or Exhibit hereto, construes, or is intended to construe, the specification, file history, or claims of any Asserted Patent.

| U.S. Patent 6,029,052 | | | | | |
|---|---|---|---|---|---|
| Application Date | Application Number | Status | Patent Date | Patent Number | Country |
| 6/23/1998 | 98931173-3 | Granted | 12/7/2005 | 0995267 | FR |
| 6/23/1998 | 98931173-3 | Granted | 12/7/2005 | 0995267 | GB |
| 6/23/1998 | 01100168-5 | Granted | 7/9/2004 | 1029461 | HK |
| 6/23/1998 | W-20000189 | Filed | | | ID |
| 6/26/1998 | 1801/DEL/98 | Granted | 7/2/2008 | 220165 | IN |
| 6/23/1998 | 11-507010 | Granted | 1/25/2008 | 407032 | JP |
| 6/23/1998 | 10-2000-7000010 | Granted | 12/26/2005 | 540409 | KR |
| 6/24/1998 | PI9802861 | Granted | 11/30/2005 | 120748 | MY |
| 6/23/1998 | 19996283 | Inactive | | | NO |
| 6/23/1998 | 2000102344 | Granted | 4/20/2003 | 2202854 | RU |
| 6/23/1998 | 1999/03304 | Granted | 9/21/2000 | 199903304B | TR |
| 6/23/1998 | PCT/SE1998/01219 | Inactive (NAT) | | | WO |

To the best of Ericsson's knowledge, information, and belief, no other foreign counterparts to the '052 patent have been filed, abandoned, withdrawn, or rejected.

### 4.    Licenses

27.    Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents.  Copies of license agreements pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[2]   To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '052 patent.

### B.    United States Patent No. 6,058,359

### 1.    Identification of the Patent and Ownership by Ericsson

28.    The '359 patent, entitled "Speech Coding Including Soft Adaptability Feature," was issued on May 2, 2000, based upon United States Patent Application No. 09/034,590, filed on March 4, 1998.  A certified copy of the '359 patent is attached as Exhibit 6.

---

[2]    Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

29.     Ericsson owns by assignment the entire right, title and interest in the '359 patent. Telefonaktiebolaget LM Ericsson obtained all right, title and interest in the '359 patent from inventors Roar Hagen and Erik Ekudden by assignment executed on April 23, 1998.   The assignments were recorded on August 10, 1998, at Reel/Frame 009380/0958.

30.     A certified copy of the assignment for the '359 patent is attached at Exhibit 7.

31.     A certified copy of the prosecution history of the '359 patent is included as Appendix B.  The cited references identified in the prosecution history of the '359 patent are included in Appendix M.

32.     The '359 patent will expire on March 4, 2018.

33.     Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation Accused Products that infringe claims 28 - 33, 36, 37, 39, 40 - 43, 46, 47, 50, 51, and 54 of the '359 patent.

**2.     Nontechnical Description of the '359 Patent**

34.     The '359 patent discloses a technique that allows an original speech signal to be adaptively coded using parameters from the coding process.  Prior to the invention disclosed in the '359 patent, most conventional speech coders chose from a limited number of coding methods based on identification of each segment of speech that was being encoded.  Incorrectly identifying and coding segments could result in degradation of the coded speech signal.  For example, to achieve the most accurate representation of sound, background noise may need to be coded differently than a speech signal itself.  The '359 patent discloses enhancing the quality of coded speech by changing or adapting the coding method for each segment of speech using parameters already existing in the coder, allowing for an infinite number of modifications of the coding method.  This greatly reduced errors in speech coding and allowed for increased clarity of mobile voice transmissions.

### 3.    Foreign Counterparts to the '359 Patent

35.    The following is a list of all foreign counterparts to the '359 patent:

| U.S. Patent 6,058,359 | | | | | |
|---|---|---|---|---|---|
| Application Date | Application Number | Status | Patent Date | Patent Number | Country |
| 3/2/1999 | 998036404 | Granted | 1/5/2005 | ZL99803640-4 | CN |
| 3/2/1999 | 200410069824-0 | Granted | 7/5/2006 | ZL200410069824-0 | CN |
| 3/2/1999 | 99908047/6 | Granted | 7/24/2002 | 1058927 | DE |
| 5/7/2002 | 02009385.2 | Granted | 5/25/2005 | 69925515-5-08 | DE |
| 3/2/1999 | 99908047.6 | Granted | 7/24/2002 | 1058927 | EP |
| 5/7/2002 | 02009385.2 | Granted | 5/25/2005 | 1267329 | EP |
| 3/2/1999 | 99908047/6 | Granted | 7/24/2002 | 1058927 | FR |
| 5/7/2002 | 02009385.2 | Granted | 5/25/2005 | 1267329 | FR |
| 3/2/1999 | 99908047/6 | Granted | 7/24/2002 | 1058927 | GB |
| 5/7/2002 | 02009385.2 | Granted | 5/25/2005 | 1267329 | GB |
| 3/2/1999 | 2000-534999 | Granted | 12/6/2002 | 3378238 | JP |
| 3/2/1999 | PCT/SE1999/00302 | Inactive (NAT) | | | WO |

To the best of Ericsson's knowledge, information, and belief, no other foreign counterparts to the '359 patent have been filed, abandoned, withdrawn, or rejected.

### 4.    Licenses

36.    Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents.  Copies of license agreements pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[3]    To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '359 patent.

---

[3]    Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

C.    United States Patent No. 6,278,888

1.    Identification of the Patent and Ownership by Ericsson

37.    The '888 patent, entitled "Radiotelephones Having Contact-Sensitive User Interfaces and Methods of Operating Same," was issued on August 21, 2001, based upon United States Patent Application No. 09/625,674, filed on July 25, 2000.  A Certified copy of the '888 patent is attached as Exhibit 8.

38.    Ericsson owns by assignment the entire right, title and interest in the '888 patent. Ericsson Inc. obtained all right, title and interest in the '888 patent from inventors John Joseph Hays, Jr. and Curtis Wayne Thornton by assignments executed on December 19, 1997.   The assignments were recorded on December 30, 1997 at Reel/Frame 008951/0747.

39.    Certified copies of the assignments for the '888 patent are attached as Exhibit 9.

40.    An uncertified copy of the prosecution history of the '888 patent is included as Appendix C.[4] The cited references identified in the prosecution history of the '888 patent are included in Appendix N.

41.    The '888 patent will expire on December 30, 2017.

42.    Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation mobile cellular devices that infringe claim 30 of the '888 patent.

43.    The '888 patent is currently in reissue proceedings with the Patent and Trademark Office, and a notice of allowance was issued on November 2, 2012.  Upon reissue of the '888 patent, Ericsson will move to amend its complaint to reflect the reissued patent and claims.

---

[4] Ericsson has requested a certified copy of the prosecution history for the '888 patent but was unable to obtain it prior to filing.

### 2.     Nontechnical Description of the '888 Patent

44.     The '888 patent discloses a mobile phone with a touch screen capable of scrolling through pages or lists, and a touchscreen deactivation mode.   The concept of adding a touchscreen to a mobile telephone has revolutionized the telecommunications industry, allowing for much wider uses of mobile phones than as a voice communication device.   However, touchscreen phones are problematic because holding a touchscreen to a user's face when talking has the effect of accidentally touching the screen.   The '888 patent solves the problem of accidental data input during phone use by introducing a touchscreen deactivation mode.   Under certain circumstances, the touchscreen can be turned off so that accidental touchscreen input does not occur.

### 3.     Foreign Counterparts to the '888 Patent

45.     The following is a list of all foreign counterparts to the '556 patent:

| U.S. Patent 6,301,556 | | | | | |
|---|---|---|---|---|---|
| **Application Date** | **Application Number** | **Status** | **Patent Date** | **Patent Number** | **Country** |
| 12/18/1998 | 19311/99 | GRANTED | 4/4/2002 | 742268 | AU |
| 12/18/1998 | PI9814565-7 | FILED | | | BR |
| 12/18/1998 | 2317123 | GRANTED | 5/29/2007 | 2317123 | CA |
| 12/18/1998 | 98812855-1 | INACTIVE | | | CN |
| 12/18/1998 | P200000398 | INACT(ABA) | | | EE |
| 12/18/1998 | 98964120.4 | INACT(ABA) | | | EP |
| 12/18/1998 | 01105899/0 | INACTIVE | | | HK |
| 12/18/1998 | | INACT(WIT) | | | IN |
| 12/18/1998 | 2000-527069 | GRANTED | 7/15/2011 | 4783503 | JP |
| 12/18/1998 | 2000-7007368 | GRANTED | 8/14/2007 | 0751195 | KR |
| 12/18/1998 | P-341426 | INACT(ABA) | | | PL |
| 12/18/1998 | 2000/01866 | INACTIVE | | | TR |
| 12/18/1998 | PCT/US1998/ 27042 | INACT(NAT) | | | WO |

To the best of Ericsson's knowledge, information, and belief, there are no other foreign counterparts to the '888 patent.

4.      **Licenses**

Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents. Copies of license agreements pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[5]   To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '888 patent.

D.      **United States Patent No. 6,301,556**

1.      **Identification of the Patent and Ownership by Ericsson**

46.      The '556 patent, entitled "Reducing Sparseness in Coded Speech Signals," was issued on October 9, 2001, based upon United States Patent Application No. 09/470,472, filed on December 22, 1999. A copy of the '556 patent is attached as Exhibit 10.

47.      Ericsson owns by assignment the entire right, title and interest in the '556 patent. Telefonaktiebolaget LM Ericsson obtained all right, title and interest in the '556 patent from inventors Roar Hagen, Bjorn Stig Erik Johannson, Erik Ekudden and Willem Baastian Kleijn by assignment executed on June 30, 1998. The assignments were recorded on August 6, 2001 at Reel/Frame 012053/0237.

48.      Certified copies of the assignments for the '556 patent are attached as Exhibit 11.

49.      A certified copy of the prosecution history of the '556 patent is included as Appendix D. The cited references identified in the prosecution history of the '556 patent are included in Appendix O.

50.      The '556 patent will expire on December 22, 2019.

---

[5]      Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

51.     Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation mobile cellular devices that infringe claims 1 - 3, 8, 10, 19, 20, 23, 24, 26 - 33, 38, 40, 50, 53, 54, 55, 57, 62 - 67, and 68 of the '556 patent.

### 2.     Nontechnical Description of the '556 Patent

52.     The '556 patent discloses a technique that allows for the reduction of sparseness of coded speech and the associated artifacts by operating on the output from a speech encoder to produce a greater density of non-zero sample values.  When coded speech is compressed, the quality is generally degraded and annoying artifacts may be added to the compressed speech signal.  Further, some coders for cellular telecommunications prior to the invention described in the '556 patent resulted in sparseness (*i.e.*, the situation wherein only a few of the samples of a coded speech signal codebook entry have a non-zero sample value), especially when compressing the speech signal.  The invention described in the '556 patent created an anti-sparseness operator for reducing the sparseness in a coded speech signal, allowing for increased clarity in mobile telephone calls.

### 3.     Foreign Counterparts to the '556 Patent

53.     The following is a list of all foreign counterparts to the '556 patent:

| U.S. Patent 6,301,556 | | | | | |
|---|---|---|---|---|---|
| Application Date | Application Number | Status | Patent Date | Patent Number | Country |
| 8/25/1998 | 88952/98 | Granted | 2/13/2003 | 753740 | AU |
| 8/25/1998 | PI9811615-0 | Filed | | | BR |
| 8/25/1998 | 2301886 | Granted | 10/23/2007 | 2301886 | CA |
| 8/25/1998 | 98808782/0 | Granted | 10/22/2003 | ZL98808782.0 | CN |
| 8/25/1998 | 98940752/3 | Granted | 10/23/2002 | 69808936-7 | DE |
| 8/25/1998 | 02013526.5 | Granted | 1/19/2005 | 698 28 709.6-08 | DE |
| 9/2/1997 | 98940752.3 | Granted | 10/23/2002 | 1008141 | EP |

| 8/25/1998 | 02013526.5 | Granted | 1/19/2005 | 1267330 | EP |
| 8/25/1998 | 20000449 | Granted | 5/14/2004 | FI113595 B | FI |
| 8/25/1998 | 98940752/3 | Granted | 10/22/2002 | 1008141 | FR |
| 8/25/1998 | 02013526.5 | Granted | 1/19/2005 | 1267330 | FR |
| 8/25/1998 | 98940752/3 | Granted | 10/22/2002 | 1008141 | GB |
| 8/25/1998 | 02013526.5 | Granted | 1/19/2005 | 1267330 | GB |
| 8/25/1998 | 03103271-1 | Granted | 1/19/2005 | 03103271-1 | HK |
| 8/25/1998 | 98940752/3 | Granted | 10/23/2002 | 1008141 | IT |
| 8/25/1998 | 02013526.5 | Granted | 1/19/2005 | 1267330 | IT |
| 8/25/1998 | 2000-509080 | Granted | 8/22/2003 | 3464450 | JP |
| 8/25/1998 | 20007002011 | Granted | 1/20/2004 | 0417351 | KR |
| 8/25/1998 | 2000001837 | Granted | 8/5/2004 | 221970 | MX |
| 8/25/1998 | 2000108437 | Granted | 10/27/2004 | 2239239 | RU |
| 5/13/2004 | 2004114668 | Granted | 4/27/2010 | 2388069 | RU |
| 8/25/1998 | 200000714-6 | Granted | 4/11/2002 | 70917 | SG |
| 8/20/1998 | 87113740 | Granted | 10/16/2000 | 116215 | TW |
| 8/25/1998 | PCT/SE1998/01515 | Inact (NAT) | | | WO |

To the best of Ericsson's knowledge, information, and belief, there are no other foreign counterparts to the '556 patent.

### 4.    Licenses

54.    Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents.  Copies of license agreements pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[6]    To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '556 patent.

---

[6]     Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

E.     **United States Patent No. 6,418,310**

1.     **Identification of the Patent and Ownership by Ericsson**

55.     The '310 patent, entitled "Wireless Subscriber Terminal Using Java Controller Code," was issued on July 9, 2002, based upon United States Patent Application No. 09/368,663, filed on August 5, 1999. A certified copy of the '310 patent is attached as Exhibit 12.

56.     Ericsson owns by assignment the entire right, title and interest in the '310 patent. Ericsson Inc. obtained all right, title and interest in the '310 patent from inventor Paul W. Dent by assignment executed on August 2, 1999. The assignments were recorded on August 5, 1999 at Reel/Frame 010160/0833.

57.     A certified copy of the assignment for the '310 patent is attached as Exhibit 13.

58.     A copy of the prosecution history of the '310 patent is included as Appendix E. The cited references identified in the prosecution history of the '310 patent are included in Appendix P.

59.     The '310 patent will expire on August 5, 2019.

60.     Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation Accused Products that infringe claims 1, 4, 6, 9 - 13, 16 - 19, and 20 of the '310 patent.

2.     **Nontechnical Description of the '310 Patent**

61.     The '310 patent discloses a wireless communication device controlled by a control processor running a Java interpreter program which in turn runs a control program written in Java. Both the control program and the Java interpreter program are stored in a ROM accessible to the control processor. Allowing Java to be used on a mobile device greatly increases the functionality of the device, allowing for a wider variety of software and content to be used and displayed.

### 3.   Foreign Counterparts to the '310 Patent

62.    The following is a list of all foreign counterparts to the '310 patent:

| U.S. Patent 6,418,310 | | | | | |
|---|---|---|---|---|---|
| Application Date | Application Number | Status | Patent Date | Patent Number | Country |
| 7/11/2000 | PCT/US2000/ 40348 | INACT(NAT) | | | WO |

To the best of Ericsson's knowledge, information, and belief, no other foreign counterparts to the '310 patent have been filed, abandoned, withdrawn, or rejected.

### 4.   Licenses

63.    Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents.  Copies of license agreements pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[7]  To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '310 patent.

### F.    United States Patent No. 6,445,917

### 1.   Identification of the Patent and Ownership by Ericsson

64.    The '917 patent, entitled "Mobile Station Measurements With Event-Based Reporting," was issued on September 3, 2002, based upon United States Patent Application No. 09/314,019 filed on May 19, 1999.  A copy of the '917 patent is attached as Exhibit 14.

65.    Ericsson owns by assignment the entire right, title and interest in the '917 patent. Telefonaktiebolaget LM Ericsson obtained all right, title and interest in the '917 patent from inventors Gunnar Bark and Joakim Bergström by assignment executed on May 26, 1999; and from inventor Walter Müller by assignment executed on May 28, 1999.  The assignments were recorded on June 18, 1999, at Reel/Frame 010038/0445.

---

[7]     Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

66.     Certified copies of the assignments for the '917 patent are attached as Exhibit 15.

67.     An uncertified copy of the prosecution history of the '917 patent is included as Appendix F.[8] The cited references identified in the prosecution history of the '917 patent are included in Appendix Q.

68.     The '917 patent will expire on May 19, 2019.

69.     Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation mobile cellular devices, including W-CDMA handsets and LTE handsets and base stations that infringe claims 1, 24 - 26, 28, 30, and 54 of the '917 patent.

### 2.     Nontechnical Description of the '917 Patent

70.     The '917 patent relates to gathering information about a mobile network using mobile stations.  The patent discloses using mobile phones to continually measure the signal strength and interference present in a network, but only send reports when queried or when certain criteria are met.  This sparse reporting reduces network traffic while also telling the network where and on what channels interference and signal quality are worst.  This helps the network determine how to redistribute load to improve performance.

### 3.     Foreign Counterparts to the '917 Patent

71.     The following is a list of all foreign counterparts to the '917 patent:

| U.S. Patent 6,445,917. | | | | | |
|---|---|---|---|---|---|
| Application Date | Application Number | Status | Patent Date | Patent Number | Country |
| 5/19/2000 | P000102453 | GRANTED | 7/11/2006 | AR025840B1 | AR |
| 5/9/2000 | 49635/00 | GRANTED | 5/9/2000 | 774570 | AU |
| 5/9/2000 | 00931815-5 | GRANTED | 8/27/2008 | 1179273 | BE |
| 5/9/2000 | PI0010645-3 | FILED | | | BR |

---

[8] Ericsson has requested a certified copy of the prosecution history for the '917 patent but was unable to obtain it prior to filing.

| 5/9/2000 | 00931815-5 | GRANTED | 8/27/2008 | 1179273 | CH |
|----------|-----------|---------|-----------|---------|-----|
| 5/9/2000 | 00810364-X | GRANTED | 2/24/2010 | ZL00810364.X | CN |
| 5/9/2000 | 00931815.5 | GRANTED | 8/27/2008 | 60040066.2 | DE |
| 5/9/2000 | 00931815.5 | GRANTED | 8/27/2008 | 1179273 | EP |
| 5/9/2000 | 00931815-5 | GRANTED | 8/27/2008 | 1179273 | ES |
| 5/9/2000 | 00931815-5 | GRANTED | 8/27/2008 | 1179273 | GB |
| 5/9/2000 | W-00 2001 02502 | GRANTED | 7/12/2006 | ID0017741 | ID |
| 5/9/2000 | IN/PCT/2001/ 01411/MUM | FILED (ALL) | | | IN |
| 5/9/2000 | 00250/MUM NP/2005 | INACTIVATE | | | IN |
| 5/9/2000 | 00931815-5 | GRANTED | 8/27/2008 | 1179273 | IT |
| 5/9/2000 | 2000-619224 | GRANTED | 8/13/2010 | 4567210 | JP |
| 5/9/2000 | 2001-7014745 | GRANTED | 12/11/2007 | 0786910 | KR |
| 5/17/2000 | PI20002164 | GRANTED | 5/31/2006 | MY-123646-A | MY |
| 5/9/2000 | 00931815-5 | GRANTED | 8/27/2008 | 1179273 | NL |
| 5/3/2000 | 89108397 | GRANTED | 1/2/2003 | NI-162861 | TW |
| 5/9/2000 | PCT/SE2000/ 00914 | INACT (NAT) | | | WO |
| 5/9/2000 | 2001/9230 | GRANTED | 1/29/2003 | 2001/9230 | ZA |

To the best of Ericsson's knowledge, information, and belief, there are no other foreign counterparts to the '917 patent.

### 4.    Licenses

72.    Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents.  Copies of license agreements pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[9]    To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '917 patent.

---

[9]    Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

G.     United States Patent No. 6,473,506

1.     Identification of the Patent and Ownership by Ericsson

73.     The '506 patent, entitled "Signaling Using Phase Rotation Techniques in a Digital Communications System," was issued on October 29, 2002, based upon United States Patent Application No. 09/170,127, filed on October 13, 1998.  A certified copy of the '506 patent is attached as Exhibit 16.

74.     Ericsson owns by assignment the entire right, title and interest in the '506 patent. Telefonaktiebolaget LM Ericsson obtained all right, title and interest in the '506 patent from inventor Stefan Javerbring by assignment executed on January 13, 1999, and from inventor Mikael Hook by assignment executed on January 14, 1999.  The assignments were recorded on January 27, 1999 at Reel/Frame 009744/0918.

75.     A certified copy of the assignment for the '506 patent is attached as Exhibit 17.

76.     A certified copy of the prosecution history of the '506 patent is included as Appendix G. The cited references identified in the prosecution history of the '506 patent are included in Appendix R.

77.     The '506 patent will expire on October 13, 2018.

78.     Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation Accused Products that infringe claims 1, 4, 6, 7, 17, 20, 22, and 23 of the '506 patent.

2.     Nontechnical Description of the '506 Patent

79.     The '506 patent describes a technique that allows a transmitter in a cellular system to inform the receiver of the selected modulation format without increasing the bandwidth required to transmit the information.  The modulation format is efficiently conveyed from the transmitter to the receiver without increasing the bandwidth requirements and without

introducing additional transmission delays by employing a data symbol phase rotation technique, wherein a sequence of data symbols are uniquely phase-rotated so that the rotation corresponds to the information being conveyed to the receiver.

### 3. Foreign Counterparts to the '506 Patent

80.    The following is a list of all foreign counterparts to the '506 patent:

| U.S. Patent 6,473,506 | | | | | |
|---|---|---|---|---|---|
| Application Date | Application Number | Status | Patent Date | Patent Number | Country |
| 8/11/1999 | 5644899 | Granted | 12/11/2003 | 764818 | AU |
| 8/11/1999 | 2306806 | Granted | 10/30/2007 | 2306806 | CA |
| 8/11/1999 | 998018155 | Granted | 2/9/2005 | ZL998018155 | CN |
| 8/11/1999 | 99943179.4 | Granted | 10/8/2008 | 1021898 | DE |
| 8/11/1999 | 99943179.4 | Granted | 10/8/2008 | 1021898 | EP |
| 8/11/1999 | 99943179.4 | Granted | 10/8/2008 | 1021898 | GB |
| 8/11/1999 | 2000-565650 | Granted | 7/28/2006 | 3832716 | JP |
| 8/11/1999 | 10-2000-7003905 | Granted | 12/18/2006 | 10-0661028 | KR |
| 8/11/1999 | PCT/IB1999/01589 | Inact (NAT) | | | WO |

To the best of Ericsson's knowledge, information, and belief, no other foreign counterparts to the '506 patent have been filed, abandoned, withdrawn, or rejected.

### 4. Licenses

81.    Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents.  Copies of license agreements pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[10]  To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '506 patent.

---

[10]    Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

H.     **United States Patent No. 6,519,223**

1.     **Identification of the Patent and Ownership by Ericsson**

82.     The '223 patent, entitled "System and Method for Implementing a Semi Reliable Retransmission Protocol," was issued on February 11, 2003, based upon United States Patent Application No. 09/287,392, filed on April 6, 1999.  A certified copy of the '223 patent is attached as Exhibit 18.

83.     Ericsson owns by assignment the entire right, title and interest in the '223 patent. Telefonaktiebolaget LM Ericsson obtained all right, title and interest in the '223 patent from inventors Stefan Henrik Andreas Wager and Reiner Ludwig by assignment executed on May 31, 1999, and November 9, 1999, and recorded on March 27, 2000, at Reel/Frame 010715/0167.

84.     A certified copy of the assignment for the '223 patent is attached as Exhibit 19.

85.     A certified copy of the prosecution history of the '223 patent is included as Appendix H.  The cited references identified in the prosecution history of the '223 patent are included in Appendix S.

86.     The '223 patent will expire on April 6, 2019.

87.     Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation Accused Products that infringe claims 1-3, 11-14, 19, 21, 22, and 30-32 of the '223 patent.

2.     **Nontechnical Description of the '223 Patent**

88.     When data is transferred between different nodes of a wireless network, portions of the data, e.g., packets of data, may become corrupted or may not be received by the intended recipient.  In order to alleviate this problem, network components can transmit error control feedback responses to request re-transmission of the lost data.  However, this process of transmitting, re-requesting, and re-transmitting data may cause unacceptable delays for some

applications, e.g., applications that occur in real time such as telephone conversations and streaming video. Thus, network devices may include various timers and protocols, which end the feedback response process when the lost data is no longer needed. The '223 patent describes a system for determining when to end the feedback response process by implementing a series of timers for the sent data units. The parameters of these timers may vary depending on the particular application of the data being transmitted.

### 3. Foreign Counterparts to the '223 Patent

89. The following is a list of all foreign counterparts to the '223 patent:

| U.S. Patent No. 6,519,223 | | | | | |
|---|---|---|---|---|---|
| Application Date | Application No. | Status | Patent No. | Patent Date | Country |
| 4/4/2000 | 000101539 | GRANTED | AR023383B1 | 8/29/2005 | AR |
| 4/4/2000 | 39943/00 | GRANTED | 764700 | 12/11/2003 | AU |
| 4/4/2000 | PI0009590-7 | FILED | | | BR |
| 4/4/2000 | 2368770 | FILED | | | CA |
| 4/4/2000 | 00808572.2 | GRANTED | ZL00808572.2 | 1/7/2004 | CN |
| 4/4/2000 | 200310118173.5 | GRANTED | ZL200310118173.5 | 10/10/2007 | CN |
| 4/4/2000 | 00919241.0 | GRANTED | 60040847-7 | 11/19/2008 | DE |
| 4/4/2000 | 00919241.0 | GRANTED | 1166486 | 11/19/2008 | EP |
| 4/4/2000 | 00919241.0 | GRANTED | 1166486 | 11/19/2008 | ES |
| 4/4/2000 | 00919241.0 | GRANTED | 1166486 | 11/19/2008 | FR |
| 4/4/2000 | 00919241.0 | GRANTED | 1166486 | 11/19/2008 | GB |
| 4/4/2000 | 2001/01323/MUM | GRANTED | 207082 | 6/4/2007 | IN |
| 4/4/2000 | 977/MUMNP/2005 | FILED | | | IN |
| 4/4/2000 | 00919241.0 | GRANTED | 1166486 | 11/19/2008 | IT |
| 4/4/2000 | 2000-610171 | GRANTED | 3763741 | 1/5/2006 | JP |
| 4/4/2000 | 10-2001-7012313 | GRANTED | 737724 | 7/4/2007 | KR |
| 4/4/2000 | PI20001387 | GRANTED | MY127210-A | 11/30/2006 | MY |
| 4/4/2000 | 00919241.0 | GRANTED | 1166486 | 11/19/2008 | NL |
| 3/30/2000 | 89105935 | GRANTED | NI-148594 | 5/6/2002 | TW |
| 4/4/2000 | PCT/SE2000/00647 | Inact(NAT) | | | WO |

To the best of Ericsson's knowledge, information, and belief, no other foreign counterparts to the '223 patent have been filed, abandoned, withdrawn, or rejected.

### 4.   Licenses

90.    Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents.  Copies of license agreements pursuant to 19 C.F.R. §210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[11]  To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '223 patent.

## I.    United States Patent No. 6,624,832

### 1.    Identification of the Patent and Ownership by Ericsson

91.    The '832 patent, entitled "Methods, Apparatus and Computer Program Products for Providing User Input to an Application Using a Contact-Sensitive Surface," was issued on September 23, 2003, based upon United States Patent Application No. 08/960,236, filed on October 29, 1997.  A certified copy of the '832 patent is attached as Exhibit 20.

92.    Ericsson owns by assignment the entire right, title and interest in the '832 patent. Ericsson Inc. obtained all right, title and interest in the '832 patent from inventor Eric Anthony Thomas by assignment executed on October 27, 1997.  The assignment was recorded on October 29, 1997 at Reel/Frame 008868/0218.

93.    A certified copy of the assignment for the '832 patent is attached as Exhibit 21.

94.    A copy of the prosecution history of the '832 patent is included as Appendix I. The cited references identified in the prosecution history of the '832 patent are included in Appendix T.

95.    The term of the '832 patent is extended or adjusted under 35 U.S.C. 154(b) by 853 days and will expire on February 29, 2020.

---

[11]    Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

96.     Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation Accused Products that infringe claims 1, 4, 9, 10, and 12 of the '832 patent.

### 2.     Nontechnical Description of the '832 Patent

97.     The '832 patent discloses a technique for providing user input to a device with a touch-sensitive surface that allows a user to provide input in different user input modes by using different contact point configurations.  Prior to the invention described in the '832 patent, touch-screen mobile devices allowed only a single contact point for inputting information.  The use of multiple contact points greatly increases the usability of a touch-screen mobile device, allowing for a wide variety of new instructions and commands from touch inputs.

### 3.     Foreign Counterparts to the '832 Patent

98.     To the best of Ericsson's knowledge, information, and belief, no foreign counterparts to the '832 patent have been filed, abandoned, withdrawn, or rejected.

### 4.     Licenses

99.     Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents.  Copies of license agreements pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[12]  To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '970 patent.

### J.     United States Patent No. 6,772,215

### 1.     Identification of the Patent and Ownership by Ericsson

100.    The '215 patent, entitled "Method for Minimizing Feedback Responses in ARQ Protocols," was issued on August 3, 2004, based upon United States Patent Application No.

---

[12]     Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

09/537,146, filed on March 29, 2000.  A certified copy of the '215 patent is attached as Exhibit 22.

101.    Ericsson owns by assignment the entire right, title and interest in the '215 patent. Telefonaktiebolaget LM Ericsson obtained all right, title and interest in the '215 patent from inventors Bela Rathonyi, Joachim Sachs, Michael Meyer, Per Beming, Mathias Johansson, Christiaan Roobol, Erik Schon, and Kazuhiko Inoue by assignment executed on March 21-27, 2000, and recorded on July 3, 2000, at Reel/Frame 010947/0046.

102.    A certified copy of the assignment for the '215 patent is attached as Exhibit 23.

103.    A certified copy of the prosecution history of the '215 patent is included as Appendix J.  The cited references identified in the prosecution history of the '215 patent are included in Appendix U.

104.    The '215 patent will expire on April 9, 2019.

105.    Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation Accused Products that infringe claims 1, 2, 4, 6, 8, 15, 22, 25, 26, 29, 32, 34, 45, 46, 49, 52, and 54 of the '215 patent.

### 2.    Nontechnical Description of the '215 Patent

106.    When data is transferred between different nodes of a wireless network, portions of the data may become corrupted or may not be received by the intended recipient.  In order to alleviate this problem, network components can transmit error control feedback responses to request re-transmission of the lost data portions.  The '215 patent describes multiple methods of encoding feedback responses to accurately describe which portions have been lost.  However, the most appropriate method for encoding a feedback response may vary in practice (e.g., based on the number and order of lost data packets).  Accordingly, the '215 patented method allows for

switching between multiple encoding methods in a manner that can be understood by both transmitters and receivers in a network.

### 3.   Foreign Counterparts to the '215 Patent

107.   The following is a list of all foreign counterparts to the '215 patent:

| U.S. Patent No. 6,772,215 | | | | | |
|---|---|---|---|---|---|
| Application Date | Application No. | Status | Patent No. | Patent Date | Country |
| 4/7/2000 | P000101623 | GRANTED | 25836 | 12/19/2005 | AR |
| 4/7/2000 | 43228/00 | GRANTED | 764613 | 12/11/2003 | AU |
| 4/7/2000 | PI0009680-6 | FILED | | | BR |
| 4/7/2000 | 2369642 | FILED | | | CA |
| 4/7/2000 | 00808706-7 | OPPOSITION | ZL00808706.7 | 1/2/2008 | CN |
| 4/7/2000 | 00923044.2 | INACTIVE ABANDONED | | | EP |
| 4/7/2000 | IN/2001/01314/MUM | GRANTED | 235152 | 6/26/2009 | IN |
| 4/7/2000 | 2000-611424 | GRANTED | 4579421 | 9/3/2010 | JP |
| 4/7/2000 | 2001-7012783 | INACTIVE ABANDONED | | | KR |
| 4/7/2000 | PI20001435 | GRANTED | MY-125271-A | 7/31/2006 | MY |
| 4/8/2000 | 89106547 | GRANTED | NI-169947 | 5/15/2003 | TW |
| 4/7/2000 | PCT/SE2000/00677 | INACTIVE NATIONAL STAGE | | | WO |

To the best of Ericsson's knowledge, information, and belief, no other foreign counterparts to the '215 patent have been filed, abandoned, withdrawn, or rejected.

### 4.   Licenses

108.   Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents.  Copies of license agreements pursuant to 19 C.F.R. §210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[13]  To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '215 patent.

---

[13]     Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

K.     United States Patent No. 8,169,992

     1.     Identification of the Patent and Ownership by Ericsson

109.    The '992 patent, entitled "Uplink Scrambling During Random Access," was issued on May 1, 2012, based upon United States Patent Application No. 11/835,782, filed on August 8, 2007. An uncertified copy of the '992 patent is attached as Exhibit 24.[14]

110.    Ericsson owns by assignment the entire right, title and interest in the '992 patent. Telefonaktiebolaget LM Ericsson obtained all right, title and interest in the '992 patent from inventors Stefan Parkvall, Erik Dahlman, and Tobias Tynderfeldt by assignment executed on August 27-29, 2007. The assignments were recorded on October 22, 2007 at Reel/Frame 020034/0200.

111.    An uncertified copy of the assignment for the '992 patent is attached as Exhibit 25.[15]

112.    An uncertified copy of the prosecution history of the '992 patent is included as Appendix K.[16] The cited references identified in the prosecution history of the '992 patent are included in Appendix V.

113.    The '992 patent will expire on February 20, 2030.

114.    Ericsson asserts that Samsung sells for importation into the United States, imports into the United States, and/or sells after importation Accused Products that infringe claims 1, 3, 5, 6, 7, 8, 10, 11, 12, 13, 14, and 15 of the '992 patent.

---

[14] Ericsson has requested a certified copy of the '992 patent but was unable to obtain it prior to filing.

[15] Ericsson has requested a certified copy of the assignment for the '992 patent but was unable to obtain it prior to filing.

[16] Ericsson has requested a certified copy of the prosecution history for the '992 patent but was unable to obtain it prior to filing.

COMPLAINT OF ERICSSON                                     PAGE 27

McKool 320288v1

### 2.    Nontechnical Description of the '992 Patent

115.    The '992 patent discloses an improved technique for a user terminal to gain access to a radio base station in a cellular network. To gain access to a cellular network for data transmission, a user terminal may request access over a random access channel. This invention improves the operation of random access systems by providing techniques for better identifying the user terminal requesting access, minimizing interference, estimating the channel conditions between the user terminal and the base station, allocating resources for communication with the user terminal, and establishing timing and synchronization between the user terminal and the base station.

### 3.    Foreign Counterparts to the '992 Patent

116.    The following is a list of all foreign counterparts to the '992 patent:

| U.S. Patent 8,169,992 | | | | | |
|---|---|---|---|---|---|
| Application Date | Application Number | Status | Patent Date | Patent Number | Country |
| 7/3/2008 | 197/2010 | FILED | | | EG |
| 7/3/2008 | 0879410.3 | FILED | | | EP |
| 7/3/2008 | 0816/KOLNP/ 2010 | FILED | | | IN |
| 8/16/2008 | 2010-519888 | GRANTED | 8/24/2012 | 5070339 | JP |
| 8/16/2012 | 2012-180645 | FILED | | | JP |
| 7/3/2008 | 2010108231 | FILED | | | RU |
| 8/6/2008 | 0801004083 | FILED | | | TH |
| 7/3/2008 | PCT/SE2008/ 050832 | INACT (NAT) | | | WO |

To the best of Ericsson's knowledge, information, and belief, no other foreign counterparts to the '992 patent have been filed, abandoned, withdrawn, or rejected.

### 4.    Licenses

117.    Attached in Confidential Exhibit 4C is a list of licensees of one or more of the Asserted Patents. Copies of license agreements pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be

included as Confidential Exhibit 5C at a later date.[17]   To the best of Ericsson's knowledge, information, and belief, there are no other licenses to or covenants-not-to-assert the '992 patent.

## V.   UNLAWFUL AND UNFAIR ACTS OF PROPOSED RESPONDENTS – PATENT INFRINGEMENT, AND SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

118.   On information and belief, Samsung imports into the United States, sells for importation into the United States, and/or sells after importation into the United States the Accused Products, including cellular phones, tablet computers, base stations, televisions, and media players, and components thereof that infringe one or more claims of the Asserted Patents.

### A.   Infringement of United States Patent No. 6,029,052

119.   On information and belief, Samsung imports, sells for importation and/or sells after importation into the United States, Accused Products that infringe the '052 patent.

120.   On information and belief, Samsung directly and indirectly infringes the asserted claims of the '052 patent by importing, selling for importation, and/or selling after importation, the Accused Products including, but not limited to, cellular telephones and tablet computers.

121.   Upon information and belief, Samsung further induces others, including users of the accused wireless communication devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement.   Upon information and belief, Samsung knew or was willfully blind that its actions would cause infringement of the '052 patent and did so with intent to encourage infringement.   Confidential Exhibit 59C, ¶ 2.   Samsung was previously the beneficiary of a license and/or a covenant not to sue with respect to the '052 patent.   Moreover,

---

17      Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

the '052 patent, *inter alia*, was the subject of Ericsson's Section 337 complaint against Samsung in *Certain Wireless Communication Devices, Components Thereof, and Products Containing the Same*, ITC Inv. No. 337-TA-583. Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '052 patent.

122.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused wireless communication devices, by providing wireless communication devices that are components of machines, manufactures, combinations, and/or compositions that infringe Ericsson's patent, and/or by providing wireless communication devices that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention. And, as discussed in the previous paragraph, Samsung knew or was willfully blind that the same was especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

123.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Captivate Glide (SGH-I927). As representative, the Samsung Captivate Glide is manufactured outside the United States. Exhibit 26. The Samsung Captivate Glide is imported into the United States and sold after importation. Exhibit 27. Further discovery may reveal additional infringing products and/or models. Moreover, further discovery may reveal additional claims of the '052 patent are infringed.

124.    A physical sample of the Samsung Captivate Glide is attached as Physical Exhibit No. 1. A claim chart demonstrating that the Samsung Captivate Glide infringes claims 1 and 13 of the '052 patent is attached as Exhibit 28.

125.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the Captivate Glide (SGH-I927).

**B.    Infringement of United States Patent No. 6,058,359**

126.    On information and belief, Samsung imports, sells for importation and/or sells after importation into the United States, Accused Products that infringe the '359 patent.

127.    On information and belief, Samsung directly and indirectly infringes the asserted claims of the '359 patent by importing, selling for importation, and/or selling after importation, the Accused Products including, but not limited to, cellular telephones.

128.    Upon information and belief, Samsung further induces others, including users of the accused wireless communication devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement.   Upon information and belief, Samsung knew or was willfully blind that its actions would cause infringement of the '359 patent and did so with intent to encourage infringement.   Confidential Exhibit 59C, ¶ 2.   Samsung was previously the beneficiary of a license and/or a covenant not to sue with respect to the '359 patent.  Moreover, the '359 patent, *inter alia*, was at issue between the parties in *Ericsson Inc. et al. v. Samsung Electronics Co., Ltd. et al.*, Case No. 2:06-cv-0063 (E.D. Tex.), which was filed in 2006. Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '359 patent.

129.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused wireless communication devices, by providing wireless communication devices that are components of machines, manufactures, combinations, and/or compositions that infringe Ericsson's patent, and/or by providing wireless communication devices that are materials or apparatus for use in practicing Ericsson's patented process and

constitute a material part of the invention. And, as discussed in the previous paragraph, Samsung knew or was willfully blind that the same was especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

130.     The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III. As representative, the Samsung Galaxy S III is manufactured outside the United States. Exhibit 29. The Samsung Galaxy S III is imported into the United States and sold after importation. Exhibit 30. Further discovery may reveal additional infringing products and/or models. Moreover, further discovery may reveal additional claims of the '359 patent are infringed.

131.     A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2. A claim chart demonstrating that the Samsung Galaxy S III infringes claims 28 and 40 of the '359 patent is attached as Exhibit 31.

132.     The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the GT-I9020A, SCH-I535, SCH-R680, SCH-R850, SCH-U810, SCH-A137, SGH-A637, SGH-A657, SGH-A687, SGH-A697, SGH-A767, SGH-A777, SGH-A797, SGH-A837, SGH-A867, SGH-A877, SGH-A887, SGH-A897, SGH-A927, SGH-I317, SGH-I547, SGH-I577, SGH-I617, SGH-I627, SGH-I637, SGH-I667, SGH-I717, SGH-I727, SGH-I747, SGH-I777, SGH-I827, SGH-I847, SGH-I857, SGH-I897, SGH-I907, SGH-I917, SGH-I927, SGH-I937, SGH-I997, SGH-T119, SGH-T359, SGH-T469, SGH-T479, SGH-T499, SGH-T559, SGH-T589, SGH-T659, SGH-T669, SGH-T679, SGH-T749, SGH-T759, SGH-T769, SGH-T839, SGH-T879, SGH-T889, SGH-T919, SGH-T929, SGH-T939, SGH-T959, SGH-T959V, SGH-T989, SGH-T999, and SPH-I350.

C.     **Infringement of United States Patent No. 6,278,888**

133.    On information and belief, Samsung imports, sells for importation or sells after importation into the United States, Accused Products that infringe the '888 patent.

134.    On information and belief, Samsung directly and indirectly infringes the asserted claims of the '888 patent by importing, selling for importation, and/or selling after importation, the Accused Products including, but not limited to, cellular telephones and tablet computers.

135.    Upon information and belief, Samsung further induces others, including users of the accused mobile cellular devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement.  Upon information and belief, Samsung knew or should have known their actions would cause direct infringement of the '888 patent and did so with intent to encourage direct infringement.  Confidential Exhibit 59C, ¶ 2.  Samsung was previously the beneficiary of a license and/or a covenant not to sue with respect to the '888 patent.  Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '888 patent.

136.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused mobile cellular devices, by providing mobile cellular devices that are components of Ericsson's patented machines, manufactures, combinations, and/or compositions, and/or by providing mobile cellular devices that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention,. And, as discussed in the previous paragraph, Samsung knew or should have known the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

137.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III.  As representative, the Samsung Galaxy S III is manufactured outside the United States.  Exhibit 29.  The Samsung Galaxy S III is imported into the United States and sold after importation.  Exhibit 30.  Further discovery may reveal additional infringing products and/or models.  Moreover, further discovery may reveal additional claims of the '888 patent are infringed.

138.    A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2.  A claim chart demonstrating that the Samsung Galaxy S III infringes claim 30 of the '888 patent is attached as Exhibit 32.

139.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the GT-I9020A, SCH-I100, SCH-I110, SCH-I200, SCH-I400, SCH-I405, SCH-I405U, SCH-I500 "Mesmerize," SCH-I500 "Showcase," SCH-I500 "Fascinate," SCH-I510, SCH-I515, SCH-I535, SCH-I605, SCH-L710, SCH-M828C, SCH-R530, SCH-R680, SCH-R720 "Admire," SCH-R720 "Vitality," SCH-R730, SCH-R760, SCH-R880, SCH-R910, SCH-R915, SCH-R920, SCH-R930, SCH-R940, SCH-R950, SCH-S720C, SCH-S950C, SGH-I317, SGH-I547, SGH-I577, SGH-I727, SGH-I827, SGH-I847, SGH-I857, SGH-I897, SGH-I927, SGH-I997, SGH-S959G, SGH-T499, SGH-T589, SGH-T679, SGH-T669, SGH-T759, SGH-T769, SGH-T839, SGH-T879, SGH-T889, SGH-T939, SGH-T959, SGH-T959V, SGH-T989, SGH-T999, SPH-D600, SPH-D700, SPH-D710, SPH-D720, SPH-L710, SPH-L900, SPH-M580, SPH-M820, SPH-M830, SPH-M900, SPH-M920, SPH-M930, and SPH-M950.

### D.    Infringement of United States Patent No. 6,301,556

140.    On information and belief, Samsung imports, sells for importation or sells after importation into the United States, Accused Products that infringe the '556 patent.

141.    On information and belief, Samsung directly and indirectly infringes the asserted claims of the '556 patent by importing, selling for importation, and/or selling after importation, the Accused Products including, but not limited to, cellular telephones.

142.    Upon information and belief, Samsung further induces others, including users of the accused mobile cellular devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement. Upon information and belief, Samsung knew or should have known their actions would cause direct infringement of the '556 patent and did so with intent to encourage direct infringement. Confidential Exhibit 59C, ¶ 2. Samsung was previously the beneficiary of a license and/or a covenant not to sue with respect to the '556 patent. Moreover, the '556 patent, *inter alia*, was at issue between the parties in *Ericsson Inc. et al. v. Samsung Electronics Co., Ltd. et al.*, Case No. 2:06-cv-0063 (E.D. Tex.), which was filed in 2006. Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '556 patent.

143.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused mobile cellular devices, by providing mobile cellular devices that are components of Ericsson's patented machines, manufactures, combinations, and/or compositions, and/or by providing mobile cellular devices that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention,. And, as discussed in the previous paragraph, Samsung knew or should have known the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

144.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III.  As representative, the Samsung Galaxy S III is manufactured outside the United States.  Exhibit 29.  The Samsung Galaxy S III is imported into the United States and sold after importation.  Exhibit 30.  Further discovery may reveal additional infringing products and/or models.  Moreover, further discovery may reveal additional claims of the '556 patent are infringed.

145.    A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2.  A claim chart demonstrating that the Samsung Galaxy S III infringes claims 1, 31, 50, and 53 of the '556 patent is attached as Exhibit 33.

146.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the GT-I9020A, SCH-I535, SCH-R680, SCH-R850, SCH-U810, SCH-A137, SGH-A637, SGH-A657, SGH-A687, SGH-A697, SGH-A767, SGH-A777, SGH-A797, SGH-A837, SGH-A867, SGH-A877, SGH-A887, SGH-A897, SGH-A927, SGH-I317, SGH-I547, SGH-I577, SGH-I617, SGH-I627, SGH-I637, SGH-I667, SGH-I717, SGH-I727, SGH-I747, SGH-I777, SGH-I827, SGH-I847, SGH-I857, SGH-I897, SGH-I907, SGH-I917, SGH-I927, SGH-I937, SGH-I997, SGH-T119, SGH-T359, SGH-T469, SGH-T479, SGH-T499, SGH-T559, SGH-T589, SGH-T659, SGH-T669, SGH-T679, SGH-T749, SGH-T759, SGH-T769, SGH-T839, SGH-T879, SGH-T889, SGH-T919, SGH-T929, SGH-T939, SGH-T959, SGH-T959V, SGH-T989, SGH-T999, and SPH-I350.

## E.    Infringement of United States Patent No. 6,418,310

147.    On information and belief, Samsung imports, sells for importation and/or sells after importation into the United States, Accused Products that infringe the '310 patent.

148.    On information and belief, Samsung directly and indirectly infringes the asserted claims of the '310 patent by importing, selling for importation, and/or selling after importation, the Accused Products including, but not limited to, cellular telephones and tablet computers.

149.    Upon information and belief, Samsung further induces others, including users of the accused wireless communication devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement.    Upon information and belief, Samsung knew or was willfully blind that its actions would cause infringement of the '310 patent and did so with intent to encourage infringement.    Confidential Exhibit 59C, ¶ 2.    Samsung was previously the beneficiary of a license and/or a covenant not to sue with respect to the '310 patent.    Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '310 patent.

150.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused wireless communication devices, by providing wireless communication devices that are components of Ericsson's patented machines, manufactures, combinations, and/or compositions, and/or by providing wireless communication devices that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention.    And, as discussed in the previous paragraph, Samsung knew or was willfully blind that the same was especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

151.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III. As representative, the Samsung Galaxy

S III is manufactured outside the United States.  Exhibit 29.  The Samsung Galaxy S III is imported into the United States and sold after importation.  Exhibit 30.  Further discovery may reveal additional infringing products and/or models.  Moreover, further discovery may reveal additional claims of the '310 patent are infringed.

152.    A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2.  A claim chart demonstrating that the Samsung Galaxy S III infringes claims 1, 4, 6, and 13 of the '310 patent is attached as Exhibit 34.

153.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the  GT-I9020A, SCH-I100, SCH-I110, SCH-I200, SCH-I400, SCH-I405,   SCH-I405U,   SCH-I500   "Mesmerize,"   SCH-I500   "Showcase,"   SCH-I500 "Fascinate," SCH-I510, SCH-I515, SCH-I535, SCH-I605, SCH-L710, SCH-M828C, SCH-R530, SCH-R680, SCH-R720 "Admire," SCH-R720 "Vitality," SCH-R730, SCH-R760, SCH-R880, SCH-R910, SCH-R915, SCH-R920, SCH-R930, SCH-R940, SCH-R950, SCH-S720C, SCH-S950C, SGH-I317, SGH-I547, SGH-I577, SGH-I727, SGH-I827, SGH-I847, SGH-I857, SGH-I897, SGH-I927, SGH-I997, SGH-S959G, SGH-T499, SGH-T589, SGH-T679, SGH-T669, SGH-T759, SGH-T769, SGH-T839, SGH-T879, SGH-T889, SGH-T939, SGH-T959, SGH-T959V, SGH-T989, SGH-T999, SPH-D600, SPH-D700, SPH-D710, SPH-D720, SPH-L710, SPH-L900, SPH-M580, SPH-M820, SPH-M830, SPH-M900, SPH-M920, SPH-M930, and SPH-M950.

**F.      Infringement of United States Patent No. 6,445,917**

154.    On information and belief, Samsung imports, sells for importation or sells after importation into the United States, Accused Products that infringe the '917 patent.

155.    On information and belief, Samsung directly and indirectly infringes the asserted claims of the '917 patent by importing, selling for importation, and/or selling after importation, the Accused Products including cellular telephones, tablet computers and base stations.

156.    Upon information and belief, Samsung further induces others, including users of the accused mobile cellular devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement.  Upon information and belief, Samsung knew or should have known their actions would cause direct infringement of the '917 patent and did so with intent to encourage direct infringement.  Confidential Exhibit 59C, ¶ 2.  Samsung was previously the beneficiary of a license and/or a covenant not to sue with respect to the '917 patent.  Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '917 patent.

157.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused mobile cellular devices and base stations, by providing mobile cellular devices and base stations that are components of Ericsson's patented machines, manufactures, combinations, and/or compositions, and/or by providing mobile cellular devices and base stations that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention,.  And, as discussed in the previous paragraph, Samsung knew or should have known the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

158.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III, Samsung Galaxy Note, and the

Samsung Evolved Node B Macrocell. As representative, the Samsung Galaxy S III is manufactured outside the United States. Exhibit 29. The Samsung Galaxy S III is imported into the United States and sold after importation. Exhibit 30. Further discovery may reveal additional infringing products and/or models. Moreover, further discovery may reveal additional claims of the '917 patent are infringed.

159. A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2. A claim chart demonstrating that the Samsung Galaxy S III infringes claims 1, 24, and 25 of the '917 patent is attached as Exhibit 35.

160. The Samsung Galaxy Note is manufactured outside the United States. Exhibit 41. The Samsung Galaxy Note is imported into the United States and sold after importation. Exhibit 42. Further discovery may reveal additional infringing products and/or models. Moreover, further discovery may reveal additional claims of the '917 patent are infringed.

161. A physical sample of the Samsung Galaxy Note is attached as Physical Exhibit No. 3. A claim chart demonstrating that the Samsung Galaxy Note infringes claims 1, 24, 25, 26, and 28 of the '917 patent is attached as Exhibit 43.

162. Upon information and belief, the Samsung Evolved Node B Macrocell, and/or components thereof, is imported into the United States and/or sold within the United States after importation. Photographs of the representative Samsung Evolved Node B Macrocell are attached hereto as Exhibit 44. A claim chart demonstrating that the Samsung Evolved Node B Macrocell infringes claims 30 and 54 of the '917 patent is attached as Exhibit 45.

163. The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the GT-I9020A, SCH-I200, SCH-I405, SCH-I405U, SCH-I510, SCH-I515, SCH-I535, SCH-I605, SCH-L710, SCH-R530, SCH-R900, SCH-R910, SCH-R915,

SCH-R920, SCH-R930, SCH-R940, SCH-R950, SGH-A157, SGH-A667, SGH-A687, SGH-A797, SGH-I317, SGH-I547, SGH-I577, SGH-I667, SGH-I717, SGH-I727, SGH-I747, SGH-I777, SGH-I897, SGH-I927, SGH-I997, SGH-T759, SGH-T839, SGH-T879, SGH-T889, SGH-T959, SGH-T959V, SPH-L300, SPH-L710, SPH-L900, SGH-I957, SCH-I905, SCH-I815, and the Samsung Evolved Node B Macrocell, Evolved Node B U-RAS Compact, Evolved Node B Picocell, and Evolved Node B Femtocell.

### G.   Infringement of United States Patent No. 6,473,506

164.   On information and belief, Samsung imports, sells for importation and/or sells after importation into the United States, Accused Products that infringe the '506 patent.

165.   On information and belief, Samsung directly and indirectly infringes the asserted claims of the '506 patent by importing, selling for importation, and/or selling after importation, the Accused Products including, but not limited to, cellular telephones and tablet computers.

166.   Upon information and belief, Samsung further induces others, including users of the accused wireless communication devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement.   Upon information and belief, Samsung knew or was willfully blind that its actions would cause infringement of the '506 patent and did so with intent to encourage infringement.   Confidential Exhibit 59C, ¶ 2.   Samsung was previously the beneficiary of a license and/or a covenant not to sue with respect to the '506 patent.   Moreover, the '506 patent, *inter alia*, was at issue between the parties in *Ericsson Inc. et al. v. Samsung Electronics Co., Ltd. et al.*, Case No. 2:06-cv-0063 (E.D. Tex.), which was filed in 2006. Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '506 patent.

167.   Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused wireless communication devices, by providing wireless communication devices that are components of Ericsson's patented machines, manufactures, combinations, and/or compositions, and/or by providing wireless communication devices that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention.   And, as discussed in the previous paragraph, Samsung knew or was willfully blind that the same was especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

168.   The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III.   As representative, the Samsung Galaxy S III is manufactured outside the United States.   Exhibit 29.   The Samsung Galaxy S III is imported into the United States and sold after importation.   Exhibit 30.   Further discovery may reveal additional infringing products and/or models.   Moreover, further discovery may reveal additional claims of the '506 patent are infringed.

169.   A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2.   A claim chart demonstrating that the Samsung Galaxy S III infringes claims 1 and 17 of the '506 patent is attached as Exhibit 36.

170.   The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the  GT-I9020A, SCH-I535, SCH-R680, SCH-R850, SCH-U810, SCH-A137, SGH-A637, SGH-A657, SGH-A687, SGH-A697, SGH-A767, SGH-A777, SGH-A797, SGH-A837, SGH-A867, SGH-A877, SGH-A887, SGH-A897, SGH-A927, SGH-I317, SGH-I547, SGH-I577, SGH-I617, SGH-I627, SGH-I637, SGH-I667, SGH-I717, SGH-I727,

SGH-I747, SGH-I777, SGH-I827, SGH-I847, SGH-I857, SGH-I897, SGH-I907, SGH-I917, SGH-I927, SGH-I937, SGH-I997, SGH-T119, SGH-T359, SGH-T469, SGH-T479, SGH-T499, SGH-T559, SGH-T589, SGH-T659, SGH-T669, SGH-T679, SGH-T749, SGH-T759, SGH-T769, SGH-T839, SGH-T879, SGH-T889, SGH-T919, SGH-T929, SGH-T939, SGH-T959, SGH-T959V, SGH-T989, SGH-T999, and SPH-I350.

### H.    Infringement of United States Patent No. 6,519,223

171.    Samsung imports into the United States, sells for importation into the United States and/or sells after importation into the United States, Accused Products that infringe the '223 patent.

172.    Samsung directly and indirectly infringes the asserted claims of the '223 patent by importing into the United States, selling for importation into the United States, and/or selling after importation, the Accused Products including, but not limited to, certain televisions, blu-ray players, cellular telephones, and tablet computers.

173.    Upon information and belief, Samsung further induces others, including users of the accused wireless communication devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement.  Upon information and belief, Samsung knew or was willfully blind that its actions would cause infringement of the '223 patent and did so with intent to encourage infringement.  Confidential Exhibit 59C, ¶ 2.  Samsung was previously the beneficiary of a license and/or a covenant not to sue with respect to the '223 patent.  Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '223 patent.

174.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused wireless communication devices, by providing wireless

communication devices that are components of Ericsson's patented machines, manufactures, combinations, and/or compositions, and/or by providing wireless communication devices that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention. And, as discussed in the previous paragraph, Samsung knew or was willfully blind that the same was especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

175.   The accused Samsung 802.11-compliant wireless communication devices that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III. As representative, the Samsung Galaxy S III is manufactured outside the United States. Exhibit 29. The Samsung Galaxy S III is imported into the United States and sold after importation. Exhibit 30. Further discovery may reveal additional infringing products and/or models. Moreover, further discovery may reveal that additional claims of the '223 patent are infringed.

176.   A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2. A claim chart demonstrating that the Samsung Galaxy S III infringes independent claims 1, 11, 19, and 30 of the '223 patent is attached as Exhibit 37. Exhibit 37 is representative of the infringement of all Samsung 802.11-compliant wireless communication products.

177.   The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the GT-I9020A, SCH-I110 "Illusion," SCH-I110 "Proclaim," SCH-I200, SCH-I400, SCH-I405,   SCH-I405U, SCH-I500 "Mesmerize," SCH-I500 "Showcase," and SCH-I500 "Fascinate," SCH-I510, SCH-I515, SCH-I535, SCH-I605, SCH-L710, SCH-M828C, SCH-R390C "Comment 2," SCH-R390C "Freeform 4," SCH-R530, SCH-

R680, SCH-R730, SCH-R760, SCH-R910, SCH-R915, SCH-R930, SCH-R940, SCH-R950, SCH-S720C, SCH-S950C, SGH-I317, SGH-I547, SGH-I557, SGH-I667, SGH-I677, SGH-I717, SGH-I727, SGH-I747, SGH-I777, SGH-I827, SGH-I847, SGH-I857, SGH-I897, SGH-I917, SGH-I927, SGH-I937, SGH-I997, SGH-S959G, SGH-T499, SGH-T589, SGH-T679, SGH-T699, SGH-T759, SGH-T769, SGH-T839, SGH-T879, SGH-T889, SGH-T959, SGH-T959V, SGH-T999, SPH-D600, SPH-D700, SPH-D710, SPH-D720, SPH-L300, SPH-L710, SPH-L900, SPH-M580, SPH-M820, SPH-M830, SPH-M920, SPH-M930, SPH-M950, Galaxy Player 3.6 (TP-GS1CB), Galaxy Player 4.0 (YP-G1CWY), Galaxy Player 4.2 (YP-GI1C/NA), and Galaxy Player 5.0 (YP-G70C/NAW).

178. The accused Samsung televisions that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's LED 8000 Series television. As representative, the Samsung UN55D8000 television is manufactured outside the United States. Exhibit 47. The Samsung UN55D8000 television is imported into the United States and sold after importation. Exhibit 48. Further discovery may reveal additional infringing products and/or models. Moreover, further discovery may reveal that additional claims of the '223 patent are infringed.

179. A claim chart demonstrating that Samsung's LED 8000 Series television infringes independent claims 1, 11, 19, and 30 of the '223 patent is attached as Exhibit 49. Exhibit 49 is representative of the infringement of all Samsung 802.11-compliant television products.

180. The accused Samsung televisions that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's LED 8000 Series television, LED 7550 Series television, LED 7500 Series television, LED 7150 Series television, LED 7100 Series television, LED 6900 Series television, LED 6550 Series television, LED 6500 Series television, LED 6150

Series television, LED 6100 Series television, LED 6070 Series television, LED 5300 Series television, Plasma 8000 Series television, Plasma 7000 Series television, Plasma 6500 Series television, Plasma 550 Series television, and Plasma 490 Series television.

181.   The accused Samsung blu-ray players that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's BD-E5700 Series.  As representative, the Samsung BD-E5700 Series blu-ray player is manufactured outside the United States.  Exhibit 51.  The Samsung BD-E5700 Series blu-ray player is imported into the United States and sold after importation.  Exhibit 52.  Further discovery may reveal additional infringing products and/or models.  Moreover, further discovery may reveal that additional claims of the '223 patent are infringed.

182.   A physical sample of Samsung's BD-E5700 blu-ray player is attached as Physical Exhibit No. 11.  A claim chart demonstrating that Samsung's BD-E5700 blu-ray player infringes independent claims 1, 11, 19, and 30 of the '223 patent is attached as Exhibit 53.  Exhibit 53 is representative of the infringement of all Samsung 802.11-compliant blu-ray products.

183.   The accused Samsung blu-ray players that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's BD-C7900 Series, BD-C8000 Series, BD-C7500 Series, BD-C6900 Series, BD-C6800 Series, BD-C6500 Series, BD-D7500 Series, BD-D7000 Series, BD-D6700 Series, BD-D6500 Series, BD-D5700 Series, BD-E6500 Series, BD-E5900 Series, BD-E5700 Series, BD-ES6000 Series, BD-EM59C, and BD-Em57C Series.

184.   The accused Samsung tablet computer devices that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's Galaxy Tab (SCH-I815).  As representative, the Samsung Galaxy Tab (SCH-I815) is manufactured outside the United States. Exhibit 55.  The Samsung Galaxy Tab (SCH-I815) is imported into the United States and sold

after importation. Exhibit 56. Further discovery may reveal additional infringing products and/or models. Moreover, further discovery may reveal that additional claims of the '223 patent are infringed.

185.    A physical sample of Samsung's Galaxy Tab (SCH-I815) is attached as Physical Exhibit No. 12. A claim chart demonstrating that Samsung's Galaxy Tab (SCH-I815) infringes independent claims 1, 11, 19, and 30 of the '223 patent is attached as Exhibit 57. Exhibit 57 is representative of the infringement of all Samsung 802.11-compliant tablet computer products.

186.    The accused Samsung tablet computer devices that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's Galaxy Tab Series (SCH-I815, GT-P6210, SGH-T869, GT-P1010, SCH-I800, SGH-T849, SPH-P100, SGH-I987, SCH-I705, GT-P3113, GT-P5113, SGH-I957, SCH-I905, GT-P7510, GT-P7310, and SGH-T859), Galaxy Note Series (GT-N8013ZWYXAR and GT-N8013).

## I.    Infringement of United States Patent No. 6,624,832

187.    On information and belief, Samsung imports, sells for importation and/or sells after importation into the United States, Accused Products that infringe the '832 patent.

188.    On information and belief, Samsung directly and indirectly infringes the asserted claims of the '832 patent by importing, selling for importation, and/or selling after importation, the Accused Products including, but not limited to, cellular telephones and tablet computers.

189.    Upon information and belief, Samsung further induces others, including users of the accused wireless communication devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement. Upon information and belief, Samsung knew or was willfully blind that its actions would cause infringement of the '832 patent and did so with intent to encourage infringement. Confidential Exhibit 59C, ¶ 2.    Samsung was previously the

beneficiary of a license and/or a covenant not to sue with respect to the '832 patent.  Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '832 patent.

190.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused wireless communication devices, by providing wireless communication devices that are components of Ericsson's patented machines, manufactures, combinations, and/or compositions, and/or by providing wireless communication devices that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention.  And, as discussed in the previous paragraph, Samsung knew or was willfully blind that the same was especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

191.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III.  As representative, the Samsung Galaxy S III is manufactured outside the United States.  Exhibit 29.  The Samsung Galaxy S III is imported into the United States and sold after importation.  Exhibit 30.  Further discovery may reveal additional infringing products and/or models.  Moreover, further discovery may reveal additional claims of the '832 patent are infringed.

192.    A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2.  A claim chart demonstrating that the Samsung Galaxy S III infringes claims 1, 9 and 12 of the '832 patent is attached as Exhibit 38.

193.    The Accused Products that infringe the asserted claims specified herein include, but are not limited to, at least the  GT-I9020A, SCH-I100, SCH-I110, SCH-I200, SCH-I400,

SCH-I405,   SCH-I405U,   SCH-I500   "Mesmerize,"   SCH-I500   "Showcase,"   SCH-I500

"Fascinate," SCH-I510, SCH-I515, SCH-I535, SCH-I605, SCH-L710, SCH-M828C, SCH-

R530, SCH-R680, SCH-R720 "Admire," SCH-R720 "Vitality," SCH-R730, SCH-R760, SCH-

R880, SCH-R910, SCH-R915, SCH-R920, SCH-R930, SCH-R940, SCH-R950, SCH-S720C,

SCH-S950C, SGH-I317, SGH-I547, SGH-I577, SGH-I727, SGH-I827, SGH-I847, SGH-I857,

SGH-I897, SGH-I927, SGH-I997, SGH-S959G, SGH-T499, SGH-T589, SGH-T679, SGH-

T669, SGH-T759, SGH-T769, SGH-T839, SGH-T879, SGH-T889, SGH-T939, SGH-T959,

SGH-T959V, SGH-T989, SGH-T999, SPH-D600, SPH-D700, SPH-D710, SPH-D720, SPH-

L710, SPH-L900, SPH-M580, SPH-M820, SPH-M830, SPH-M900, SPH-M920, SPH-M930,

and SPH-M950.

### J.    Infringement of United States Patent No. 6,772,215

194.    Samsung imports into the United States, sells for importation into the United

States and/or sells after importation into the United States, Accused Products that infringe the

'215 patent.

195.    Samsung directly and indirectly infringes the asserted claims of the '215 patent by

importing into the United States, selling for importation, into the United States and/or selling

after importation, the Accused Products including, but not limited to, certain televisions, blu-ray

players, cellular telephones, and tablet computers.

196.    Upon information and belief, Samsung further induces others, including users of

the accused wireless communication devices, by providing directions, demonstrations, guides,

and/or manuals that encourage and facilitate others to perform actions known and intended by

Samsung to be acts of infringement.   Upon information and belief, Samsung knew or was

willfully blind that its actions would cause infringement of the '215 patent and did so with intent

to encourage infringement.   Confidential Exhibit 59C, ¶ 2.   Samsung was previously the

beneficiary of a license and/or a covenant not to sue with respect to the '215 patent. Moreover, on November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '215 patent.

197.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused wireless communication devices, by providing wireless communication devices that are components of Ericsson's patented machines, manufactures, combinations, and/or compositions, and/or by providing wireless communication devices that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention. And, as discussed in the previous paragraph, Samsung knew or was willfully blind that the same was especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

198.    The accused 802.11-compliant wireless communication devices that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III. As representative, the Samsung Galaxy S III is manufactured outside the United States. Exhibit 29. The Samsung Galaxy S III is imported into the United States and sold after importation. Exhibit 30. Further discovery may reveal additional infringing products and/or models. Moreover, further discovery may reveal that additional claims of the '215 patent are infringed.

199.    A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2. A claim chart demonstrating that the Samsung Galaxy S III infringes independent claims 1, 15, 25, and 45 of the '215 patent is attached as Exhibit 39. Exhibit 39 is representative of the infringement of all Samsung 802.11-compliant wireless communication products.

200.    The accused Samsung wireless communication devices that infringe the asserted claims specified herein include, but are not limited to, at least the GT-I9020A, SCH-I110 "Illusion," SCH-I110 "Proclaim," SCH-I200, SCH-I400, SCH-I405,  SCH-I405U, SCH-I500 "Mesmerize," SCH-I500 "Showcase," and SCH-I500 "Fascinate," SCH-I510, SCH-I515, SCH-I535, SCH-I605, SCH-L710, SCH-M828C, SCH-R390C "Comment 2," SCH-R390C "Freeform 4," SCH-R530, SCH-R680, SCH-R730, SCH-R760, SCH-R910, SCH-R915, SCH-R930, SCH-R940, SCH-R950, SCH-S720C, SCH-S950C, SGH-I317, SGH-I547, SGH-I557, SGH-I667, SGH-I677, SGH-I717, SGH-I727, SGH-I747, SGH-I777, SGH-I827, SGH-I847, SGH-I857, SGH-I897, SGH-I917, SGH-I927, SGH-I937, SGH-I997, SGH-S959G, SGH-T499, SGH-T589, SGH-T679, SGH-T699, SGH-T759, SGH-T769, SGH-T839, SGH-T879, SGH-T889, SGH-T959, SGH-T959V, SGH-T999, SPH-D600, SPH-D700, SPH-D710, SPH-D720, SPH-L300, SPH-L710, SPH-L900, SPH-M580, SPH-M820, SPH-M830, SPH-M920, SPH-M930, SPH-M950, Galaxy Player 3.6 (TP-GS1CB), Galaxy Player 4.0 (YP-G1CWY), Galaxy Player 4.2 (YP-GI1C/NA), and Galaxy Player 5.0 (YP-G70C/NAW).

201.    The accused Samsung televisions that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's LED 8000 Series television.    As representative, the Samsung UN55D8000 television is manufactured outside the United States. Exhibit 47.  The Samsung UN55D8000 television is imported into the United States and sold after importation.  Exhibit 48.  Further discovery may reveal additional infringing products and/or models.  Moreover, further discovery may reveal that additional claims of the '215 patent are infringed.

202.   A claim chart demonstrating that Samsung's 8000 Series television infringes independent claims 1, 15, 25, and 45 of the '215 patent is attached as Exhibit 50.   Exhibit 50 is representative of the infringement of all Samsung 802.11-compliant television products.

203.   The accused Samsung televisions that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's LED 8000 Series television, LED 7550 Series television, LED 7500 Series television, LED 7150 Series television, LED 7100 Series television, LED 6900 Series television, LED 6550 Series television, LED 6500 Series television, LED 6150 Series television, LED 6100 Series television, LED 6070 Series television, LED 5300 Series television, Plasma 8000 Series television, Plasma 7000 Series television, Plasma 6500 Series television, Plasma 550 Series television, and Plasma 490 Series television.

204.   The accused Samsung blu-ray players that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's BD-E5700 Series.  As representative, the Samsung BD-E5700 Series blu-ray player is manufactured outside the United States.  Exhibit 51.  The Samsung BD-E5700 Series blu-ray player is imported into the United States and sold after importation.  Exhibit 52.  Further discovery may reveal additional infringing products and/or models.  Moreover, further discovery may reveal that additional claims of the '215 patent are infringed.

205.   A physical sample of Samsung's BD-E5700 blu-ray player is attached as Physical Exhibit No. 11.  A claim chart demonstrating that Samsung's BD-E5700 blu-ray player infringes independent claims 1, 15, 25, and 45 of the '215 patent is attached as Exhibit 54.  Exhibit 54 is representative of the infringement of all Samsung 802.11-compliant blu-ray products.

206.   The accused Samsung blu-ray players that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's BD-C7900 Series, BD-C8000 Series,

BD-C7500 Series, BD-C6900 Series, BD-C6800 Series, BD-C6500 Series, BD-D7500 Series, BD-D7000 Series, BD-D6700 Series, BD-D6500 Series, BD-D5700 Series, BD-E6500 Series, BD-E5900 Series, BD-E5700 Series, BD-ES6000 Series, BD-EM59C, and BD-Em57C.

207.   The accused Samsung tablet computer devices that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's Galaxy Tab (SCH-I815).  As representative, the Samsung Galaxy Tab (SCH-I815) is manufactured outside the United States. Exhibit 55.  The Samsung Galaxy Tab (SCH-I815) is imported into the United States and sold after importation.  Exhibit 56.  Further discovery may reveal additional infringing products and/or models.  Moreover, further discovery may reveal that additional claims of the '215 patent are infringed.

208.   A physical sample of Samsung's Galaxy Tab (SCH-I815) is attached as Physical Exhibit No. 12.  A claim chart demonstrating that Samsung's Galaxy Tab (SCH-I815) infringes independent claims 1; 15, 25, and 45 of the '215 patent is attached as Exhibit 58.  Exhibit 58 is representative of the infringement of all Samsung 802.11-compliant tablet computer products.

209.   The accused Samsung tablet computer devices that infringe the asserted claims specified herein include, but are not limited to, at least Samsung's Galaxy Tab Series (SCH-I815, GT-P6210, SGH-T869, GT-P1010, SCH-I800, SGH-T849, SPH-P100, SGH-I987, SCH-I705, GT-P3113, GT-P5113, SGH-I957, SCH-I905, GT-P7510, GT-P7310, and SGH-T859) and Galaxy Note Series (GT-N8013ZWYXAR and GT-N8013).

### K.     Infringement of United States Patent No. 8,169,992

210.   On information and belief, Samsung imports, sells for importation and/or sells after importation into the United States, Accused Products that infringe the '992 patent.

211.   On information and belief, Samsung directly and indirectly infringes the asserted claims of the '992 patent by importing, selling for importation, and/or selling after importation,

the Accused Products including, but not limited to, cellular telephones, tablet computers, and base stations.

212.    Upon information and belief, Samsung further induces others, including users of the accused wireless communication devices, by providing directions, demonstrations, guides, and/or manuals that encourage and facilitate others to perform actions known and intended by Samsung to be acts of infringement.   Upon information and belief, Samsung knew or was willfully blind that its actions would cause infringement of the '992 patent and did so with intent to encourage infringement.  Confidential Exhibit 59C, ¶ 2.  On November 27, 2012, a district court action was brought against Samsung alleging that it infringed the '474 patent.

213.    Upon information and belief, Samsung further contributes to the infringement of others, including users of the accused wireless communication devices, by providing wireless communication devices that are components of Ericsson's patented machines, manufactures, combinations, and/or compositions, and/or by providing wireless communication devices that are materials or apparatus for use in practicing Ericsson's patented process and constitute a material part of the invention.  And, as discussed in the previous paragraph, Samsung knew or was willfully blind that the same was especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

214.    The accused wireless communication devices that infringe the asserted claims specified herein include, but are not limited to, at least the Samsung Galaxy S III and the Evolved Node B Macrocell base station.  As representative, the Samsung Galaxy S III is manufactured outside the United States.  Exhibit 29.  The Samsung Galaxy S III is imported into the United States and sold after importation.   Exhibit 30.   Further discovery may reveal

additional infringing products and/or models. Moreover, further discovery may reveal additional claims of the '992 patent are infringed.

215.   A physical sample of the Samsung Galaxy S III is attached as Physical Exhibit No. 2. A claim chart demonstrating that the Samsung Galaxy S III infringes claims 1 and 7 of the '992 patent is attached as Exhibit 40.

216.   Upon information and belief, the Samsung Evolved Node B Macrocell, and/or components thereof, is imported into the United States and/or sold within the United States after importation.   Photographs of the representative Samsung Evolved Node B Macrocell are attached hereto as Exhibit 44. A claim chart demonstrating that the Samsung Evolved Node B Macrocell infringes claims 6 and 13 of the '992 patent is attached as Exhibit 46.

217.   The accused Samsung wireless communication devices that infringe the asserted claims specified herein include, but are not limited to, at least the SCH-I200, SCH-I405, SCH-I405U, SCH-I510, SCH-I515, SCH-I535, SCH-I605, SCH-L710, SCH-R530, SCH-R900, SCH-R910, SCH-R915, SCH-R920, SCH-R930, SCH-R940, SCH-R950, SGH-I317, SGH-I547, SGH-I577, SGH-I667, SGH-I717, SGH-I727, SGH-I747, SGH-I897, SGH-T879, SGH-T889, SPH-L300, SPH-L710, SPH-L900, SGH-I957, SCH-I905, SCH-I815, and the Samsung Evolved Node B Macrocell, Evolved Node B U-RAS Compact, Evolved Node B Picocell, and Evolved Node B Femtocell.

## VI.   TARIFF   CLASSIFICATION   UNDER   THE   HARMONIZED   TARIFF SCHEDULE

218.   The products as to which Ericsson seeks exclusion include, without limitation, cellular telephones classified under subheading 8517.12.00, HTSUS, tablet computers classified under subheading 8471.30.01, HTSUS, base stations classified under subheading 8529.90.86,

HTSUS, televisions classified under subheading 8528.72.72, HTSUS, and Blu-ray players classified under subheading 8521.90.00, HTSUS.

## VII.   RELATED LITIGATION

219.   There is currently litigation against certain third parties pending in federal district court concerning several of the Asserted Patents.   Specifically, Complainants filed the action styled *Ericsson Inc. et al v. D-Link Corporation et al.,* Case No. 6:10-cv-473 (E.D. Tex.) on September 14, 2010, concerning products practicing the IEEE 802.11 standards.   There, Ericsson asserts certain of the patents at issue here, i.e., the '223 patent and the '215 patent. That litigation is pending.

220.   In 2006, there were two district court actions filed by Ericsson against Samsung. Those cases were *Ericsson Inc. et al. v. Samsung Electronics Co., Ltd.* et al., Case No. 2:06-cv-0063 (E.D. Tex.) which concerned United States Patent Nos. 4,905,234; 5,487,071; 5,757,813; 5,768,267; 5,930,241; 6,058,359; 6,029,125; 6,301,556; 6,473,506; 6,192,335; 6,275,798; 6,452,941; 6,424,938; 6,865,233; 6,502,063 and *Ericsson Inc. et al. v. Samsung Electronics Co., Ltd. et al.,* Case No. 2:06-cv-0306 (E.D. Tex.), which concerned United States Patent Nos. 5,113,416; 5,758,295; 5,783,926; 5,864,765; 6,009,319; 6,029,052; 6,198,405; 6,387,027; 6,697,953; 6,839,549; 6,975,686.   Both of these lawsuits settled.

221.   In 2006, Ericsson filed a Section 337 complaint alleging unfair trade practices by Samsung arising from the importation of certain infringing goods.   That complaint was instituted as *Certain Wireless Communication Devices, Components Thereof, and Products Containing the Same,* ITC Investigation No. 337-TA-583.   The patents at issue in that investigation were United States Patent Nos. 5,758,295; 5,783,926; 5,864,765; 6,009,319; 6,029,052; 6,198,405; 6,387,027; 6,839,549; and 6,975,686.   The investigation was terminated based on a settlement agreement.

222.   On November 27, 2012, Ericsson filed two infringement lawsuits against Samsung in the United States District Court for the Eastern District of Texas.  In the first lawsuit, Ericsson alleges that Samsung infringes United States Patent Nos. 6,029,052, 6,058,359, 6,278,888, 6,301,556, 6,418,310, 6,445,917, 6,473,506, 6,519,223, 6,624,832, 6,772,215, and 8,169,992, all of which are the asserted patents in this case.  In the second lawsuit, Ericsson alleges that Samsung infringes United States Patent Nos. 6,259,724, 6,400,376, 6,466,568, 6,502,063, 6,597,787, 6,732,069, 6,865,233, 6,985,474, 7,660,417, 7,707,592, 7,769,078, 7,961,709, and 8,036,150.

223.   No other related litigation in any court or agency is known.

## VIII.   DOMESTIC INDUSTRY

224.   With respect to the Asserted Patents, a domestic industry in the United States exists as defined under Section 337(a)(2) and (a)(3)(A), (B), and/or (C) and is in the process of being established under Section 337(a)(2) and (a)(3)(C).

### A.     Ericsson's Domestic Activities

225.   Ericsson has made significant investments in plant and equipment and significant employment of labor or capital with respect to articles protected by the Asserted Patents. Ericsson base stations and media gateways protected by at least the '359, '506, '556, '917, '223, '215, and '992 patents are configured, programmed, tested, customized, and maintained at facilities across the United States for which Ericsson has made significant investments in plant and equipment and significant employment of labor or capital.  For example, Ericsson has made significant investments in plant and equipment for its Mobile Broadband group in Plano, Texas, Boulder, Colorado, Seattle, Washington, Pleasanton, California, and Atlanta, Georgia.   The Mobile Broadband group customizes and redesigns base station products protected by at least the '506, '917, '223, '215, and '992 patents.  Ericsson has further invested in plant and equipment

for managing and servicing base station and media gateway products for its Radio Access Network and Customer Network Support groups, located in Parsippany, New Jersey; Plano, Texas; Atlanta, Georgia; Chicago, Illinois; Kansas City, Kansas; Pleasanton, California; Irvine, California; and Seattle, Washington.  Further details of Ericsson's investments are provided in Confidential Exhibit No 98C.

226.   Ericsson has made substantial investments in the exploitation of the Asserted Patents through engineering and research and development at its research and engineering facilities in Plano, Texas, Seattle, Washington, and Atlanta, Georgia related to the development of base station and media gateway products protected by one or more of the Asserted Patents. Further details of Ericsson's investments related to research and development are provided in Confidential Exhibit 98C, ¶¶ 3-4 and 8-10.

227.   Ericsson has made significant investments in plant and equipment with respect to articles protected by the Asserted Patents.  Ericsson has made substantial investments in the exploitation of the Asserted Patents through engineering and research and development across the United States and in particular in Overland, Kansas related to the operation and maintenance of Sprint's national wireless network, which is a required step to bring the technology of the Asserted Patents to market.  As described in the press release attached as Exhibit 60, Sprint Nextel outsourced its United States network operations and maintenance to Ericsson in a seven-year deal valued at $4.5 billion to $5 billion in July 2009.  As part of the deal, Sprint transferred 6,000 employees to Ericsson.  Since completion of the deal in late 2009, Ericsson now handles all of the day-to-day operations and maintenance.  Further details of Ericsson's investment related to the operation and maintenance of Sprint's national wireless network are provided in

Confidential Exhibit 98C, ¶¶ 5-7. Sprint sells mobile cellular devices (*e.g.* Motorola Admiral), licensed under some or all of the Asserted Patents, which are used on the Sprint network.

228.    Ericsson has made significant employment of labor or capital with respect to articles protected by the Asserted Patents. Ericsson employs thousands of people to redesign, configure, program, test, maintain, and support its base station and media gateway products protected by the Asserted Patents. Further details of Ericsson's investment related to employment of labor or capital are provided in Confidential Exhibit 98C, ¶¶ 3-4 and 8-10.

229.    Ericsson has made significant employment of labor or capital with respect to articles protected by the Asserted Patents, and with respect to substantial investments in the exploitation of the Asserted Patents, through engineering and research and development at its research and engineering facility in San Jose, California. Engineering employees at this location work in research and development of technologies and products related to the Asserted Patents. Further details of Ericsson's investment are provided in Confidential Exhibit 98C, ¶¶ 8-10. These investments are used to develop mobile cellular devices and Ericsson's base stations that are used across the AT&T, Verizon, and T-Mobile networks and around the world, and which is a required step to bring the technology of the Asserted Patents to market.

230.    Infrastructure equipment, including GSM, EDGE, WCDMA and LTE-compliant base stations, sold by Ericsson comprises a significant portion of these networks. AT&T, Verizon, and T-Mobile sell mobile cellular devices licensed under some or all of the Asserted Patents (*e.g.* Apple iPhone 4, RIM Bold 9900, Motorola Droid RAZR M, and Motorola Atrix 2) that are used on the AT&T, Verizon, and/or T-Mobile networks.

231.    Exhibits 61C-65C and 116C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents are met by the Apple iPhone 4 sold and used in

conjunction with the AT&T network.  A physical sample of the Apple iPhone 4 is attached as Physical Exhibit No. 4.

232.    Exhibits 66C-72C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the Motorola Atrix 2 sold and used in conjunction with the AT&T network.  A physical sample of the Motorola Atrix 2 is attached as Physical Exhibit No. 5.

233.    Exhibits 74C-79C and 117C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the RIM Bold 9900 sold and used in conjunction with the AT&T network.  A physical sample of the RIM Bold 9900 is attached as Physical Exhibit No. 6.

234.    Other products sold by AT&T that practice at least one claim of some or all of the Asserted Patents under a license include at least the Apple iPhone 3GS, iPhone 4S, iPad, and iPad 2, the Motorola Tundra, and the BlackBerry Curve, Pearl, and Torch.  Moreover, further discovery may reveal additional claims of these patents or other Asserted Patents are met by licensed phones sold for use on the AT&T network.

235.    Exhibits 73C-79C and 117C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the RIM Bold 9900 sold and used in conjunction with the T-Mobile network, and that each limitation of a claim of an Asserted Patent is met by the Motorola Cliq 2 smartphone sold and used in conjunction with the T-Mobile network.  A physical sample of the RIM Bold 9900 is attached as Physical Exhibit No. 6, and a physical sample of the Motorola Cliq 2 is attached as Physical Exhibit No. 10.

236.    Other licensed products sold by T-Mobile that practice at least one claim of some or all of these patents include at least the BlackBerry Curve and Bold 9780.  Moreover, further

discovery may reveal additional claims of these patents or other Asserted Patents are met by licensed phones sold for use on the T-Mobile network.

237.   Exhibits 80C and 81C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the Motorola Admiral smartphone sold and used in conjunction with the Sprint network.   A physical sample of the Motorola Admiral smartphone is attached as Physical Exhibit No. 7.

238.   Further discovery may reveal additional claims of these patents and other patents are met by licensed phones sold for use on the Sprint network.

239.   Exhibits 82C-84C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents are met by the Motorola Droid RAZR M sold and used in conjunction with the Verizon network.   A physical sample of the Droid RAZR M is attached as Physical Exhibit No. 9.

240.   Other licensed products sold by Verizon that practice at least one claim of some or all of these patents include at least the Motorola Droid 4, Motorola Droid RAZR Maxx, Motorola Droid RAZR, and BlackBerry Torch.   Moreover, further discovery may reveal additional claims of these patents or other Asserted Patents are met by licensed phones sold for use on the Verizon network.

241.   Further discovery may reveal additional claims of these patents and other patents are met by licensed phones sold for use on the Verizon network.

242.   Exhibits 90C-92C and 94C-97C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents are met by the Ericsson base stations and/or media gateways developed, sold, and used in the United States.   Further investigation may

reveal additional claims of these patents are met by the Ericsson base stations and/or media gateways developed, sold, and used in the United States.

243.    There is a nexus between Ericsson's domestic investments and activities and the articles protected by the Asserted Patents.

244.    In view of at least the foregoing, and pursuant to 19 U.S.C. §§ 1337(a)(2) and (a)(3)(A), (B), and/or (C), a domestic industry exists.

**B.      Ericsson's Domestic Licensing**

**1.      Licensing Activities**

245.    Pursuant to Section 337 (a)(2) and (a)(3)(C), a domestic industry exists or, in the alternative, is in the process of being established by virtue of Ericsson taking the necessary tangible steps to establish a licensing domestic industry in the United States and there being a significant likelihood that the licensing domestic industry requirement will be satisfied in the future by Ericsson's substantial investments in the exploitation of the Asserted Patents through licensing.

246.    As set forth in the attached Confidential Exhibit 59C, Ericsson Inc. has made and continues to make a substantial domestic investment in licensing the Asserted Patents. Ericsson's United States employees have negotiated royalty bearing license agreements to the '052, '359, '888, '556, '310, '917, '506, '223, '832, '215, and '992 patents, each of which have generated significant royalties in an amount set forth in Confidential Exhibit 59C, ¶¶ 9 and 23. Ericsson currently employs in the United States individuals on a full-time basis who devote all or substantially all of their time to licensing Ericsson's patents, including the Asserted Patents. Confidential Exhibit 59C, ¶ 5.

247.    Ericsson's domestic licensing investments include, for example, their substantial investments on overhead, such as employee salaries and benefits, office space, office

communication equipment, and office furnishings and supplies, as well as their substantial investments for travel to meet with potential licensees. Confidential Exhibit 59C, ¶¶ 3-20.

248.  Ericsson has made and continues to make a substantial investment in the exploitation of the Asserted Patents through its licensing activities in the United States. Further details of Ericsson's substantial investment in the exploitation of the Asserted Patents through its licensing activities are provided in Confidential Exhibit No. 59C, ¶¶ 3-20.

249.  Ericsson also has made substantial investments in exploiting its patent portfolio, including the Asserted Patents, through litigation activities, which are related to its efforts to license the Asserted Patents. Confidential Exhibit 59C, ¶¶ 21-23.

250.  There is a nexus between Ericsson's substantial investments and (i) the Asserted Patents, (ii) the licensing of those Asserted Patents, and (iii) the United States.

251.  In the alternative, Ericsson is taking necessary tangible steps to establish a domestic industry to exploit the Asserted Patents through its licensing efforts. These steps include licensing activities that resulted in numerous licenses to, for example, Apple, Research in Motion, and Motorola. Ericsson continues licensing discussions with other companies. Ericsson has licensed its patent portfolio, including the Asserted Patents, *see* Confidential Exhibit 4C, and continues to make substantial investments in licensing its patent portfolio, including the licensing of the Asserted Patents. *See, e.g.*, Confidential Exhibit 59C, ¶¶ 3-20. Ericsson has a significant likelihood of establishing a domestic industry to exploit the Asserted Patents through its licensing efforts because there has been an increased level of investments to license Ericsson's intellectual property. *See* Confidential Exhibit 59C, ¶ 7.

252.  There is a nexus between Ericsson's substantial investments and (i) the Asserted Patents, (ii) the licensing of the Asserted Patents, and (iii) the United States.

253.   In view of at least the foregoing, and pursuant to 19 U.S.C. § 1337(a)(3)(C), a domestic industry exists or, in the alternative, is in the process of being established by virtue of Ericsson's substantial investment in the exploitation of the Asserted Patents through licensing.

### 2.      Litigation Activities Related to Licensing

254.   In connection with, and related to, its licensing efforts, Ericsson has filed litigation asserting certain of the patents here at issue, including U.S. Patent Nos. 6,029,052, 6,058,359, 6,473,506, 6,519,223, and 6,772,215.

255.   Information regarding Ericsson's litigation activities related to its licensing efforts is set forth in Confidential Exhibit 59C, ¶¶ 21-22.

256.   In connection with such litigation, Ericsson has expended substantial sums for legal fees and costs as described in Confidential Exhibit 59C, ¶¶ 21-22.  These domestic litigation activities, which occurred in connection with the efforts of Ericsson to license its patent portfolio, including some of the Asserted Patents, separately satisfy the requirements of 19 U.S.C. § 1337 (a)(3)(C).

257.   There is a nexus between Ericsson's substantial investments and (i) the Asserted Patent, (ii) the licensing of those Asserted Patents, and (iii) the United States.

258.   In view of at least the foregoing, and pursuant to 19 U.S.C. § 1337(a)(3)(C), a domestic industry exists by virtue of Ericsson's substantial investments in litigation activities related to its licensing efforts.

### C.      The Domestic Activities of Ericsson's Licensee Motorola

259.   Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B), and/or (C) a domestic industry exists by virtue of the activities of Ericsson's licensee Motorola.  Copies of the license agreement

pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[18]

260.    Motorola filed an annual report with the Securities and Exchange Commission dated February 17, 2012. That report stated, in part, as follows: "Motorola Mobility's principal executive offices are currently located at 600 N. U.S. Highway 45, Libertyville, Illinois 60048. This location also is currently the headquarters of our Mobile Devices business. Our Home business headquarters is currently in Horsham, Pennsylvania. Motorola Mobility also operates manufacturing facilities, research and development, administrative and sales offices in other U.S. locations and in many other countries. . . . Motorola Mobility owns eight facilities (manufacturing, sales, service and offices), five of which are located in the Americas Region (U.S., Canada, Mexico, Central America and South America) and three of which are located in other countries." See Exhibit 99 at 34-35. This report further stated, in part, that: "R&D expenditures relating to new product development or product improvement were $1.5 billion in 2011, compared to $1.5 billion in 2010 and $1.6 billion in 2009. Total R&D expenditures increased 3% in 2011 as compared to 2010, after decreasing 7% in 2010 as compared to 2009." *Id.* at 11.

261.    On information and belief, Motorola researches and implements cellular standards in Libertyville, Illinois. *See* Exhibit 100 at 23. Motorola describes its activities there as follows: "The Motorola Mobility Standards and Research Laboratory (SRL) team is responsible for executing fundamental research related to advanced radio wireless systems, networks chipsets and multimedia, and for with emphasis on supporting Motorola Mobility Mobile Devices''s

---

[18]     Due to certain confidentiality provisions in the agreement, Ericsson intends to provide a copy of that agreement after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

[sic] engagement with International Standards Development Oorganizations [sic] (SDOs), such as 3GPP, 3GPP2, IEEE etc. SRL [sic] The team is also responsible for supporting Motorola Mobility Technology Teams tasked with the implementation of standards developed by those SDOs. As a core part of this mission, the team is also responsible for creatinges [sic] key standards technologies and for transportingtransfers [sic] elements of this appropriate technology into both the standards arena and to the internal implementation route. In addition, this team is responsible for initiating and supporting the associated creative, offensive and defensive intellectual property activities." *Id.* at 23, 26. Motorola's Libertyville operations also involve GSM stack software development, including: "Software development and integration of 3GPP UMTS mobile devices [and] integrating UMTS protocol stack in a new platform." *Id.* at 28.

262. On information and belief, Motorola's Product Development Team and Modem Technology Team are also located in Libertyville, Illinois. *Id.* at 9, 14. Motorola describes that its Product Development Team "designs, develops, and delivers iconic mobile products and experiences by infusing the best of technology and design." *Id.* at 9. This team's activities require "[d]esign knowledge of Radio Frequency transmitters, receivers, synthesizers, duplex/diplex filters and related RF circuits/systems," and "[f]amiliarity with LTE, CDMA, WCDMA, GSM, GPS, NFC, WiFi, and Bluetooth standards along with testing/compliance that goes along with those standards." *Id.* at 9. Motorola's Model Technology Team "is responsible for designing, developing, testing and delivering a world class GSM/UMTS/CDMA/E-HRDP/4G wireless Modem Solution." *Id.* at 14.

263. On information and belief, Motorola's CDMA/3G Cellular Phone Hardware Design and Development team is also located in Illinois. The team's activities involve "Design [of] CDMA, GSM/3G, and/or LTE mobile handsets using the latest technology and chipsets.

The team works on design, development, and validation of cellular phones starting from requirements document all the way to shipping and supporting the product after shipping." *Id.* at 29.

264.    On information and belief, Motorola also operates a "PDO" group located in Libertyville, Illinois "responsible for defining and authoring Software Test commands for Development, Factory and Service needs. . . . [and] support[s] GSM, WCDMA, CDMA and LTE RF technologies and various AP processors.   PDO works closely with manufacturing and development engineering on products throughout their complete lifecycle, from proto stages until end of life, to ensure accurate testing and quality products." *Id.* at 31.

265.    On information and belief, Motorola's WLAN groups are located at least in its San Jose, California facility. Exhibit 101 at 1-10. Engineers in San Jose are "responsible for designing and developing 802.11 a/b/g/n/ac WLAN Radio products." *Id.* at 2. Motorola describes the role of its Fusion WLAN group as follows: "Motorola Fusion WLAN team is responsible for developing and maintaining software that makes 802.11 work on the Motorola mobile computers. Software stack includes MAC layer firmware, NDIS device drivers, diagnostic and configuration utilities, network security supplicants and high level applications / tools." *Id.* at 4.   Similarly, Motorola describes its Wireless LAN Group as follows:   "The Motorola Wireless LAN Group is a leading provider of IEEE 802.11 wireless networking equipment. The WLAN team develops scalable and distributed wireless platforms for small, medium and large enterprise customers (including commercial, government, education, and healthcare). WLAN products provide secure, managed wireless solutions for data, voice and video. The organization further partners with other Motorola business units to develop integrated, creative solutions to pressing market needs." *Id.* at 5-8, 10.

266.    Exhibits 66C-72C and 118C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the Motorola Atrix 2 sold and used in conjunction with the AT&T network.  A physical sample of the Motorola Atrix 2 is attached as Physical Exhibit No. 5.

267.    Exhibits 82C-84C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the Motorola Droid RAZR M sold and used in conjunction with the Verizon network.  A physical sample of the Droid RAZR M is attached as Phyiscal Exhibit No. 9.

268.    Exhibits 80C and 81C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the Motorola Admiral smartphone sold and used in conjunction with the Sprint network.  A physical sample of the Motorola Admiral smartphone is attached as Physical Exhibit No. 7.

269.    Exhibit 73C is a claim chart demonstrating that each limitation of a claim of an Asserted Patent is met by the Motorola Cliq 2 smartphone sold and used in conjunction with the T-Mobile network.  A physical sample of the Motorola Cliq 2 smartphone is attached as Physical Exhibit No. 10.

270.    Other licensed products sold by Motorola that practice at least one claim of some or all of the Asserted Patents include at least the Motorola Droid 4, Droid RAZR, Droid RAZR MAXX, Droid 3, Droid X2, Photon 4G, and XPRT.  Moreover, further discovery may reveal additional claims of some or all of the Asserted Patents are met by licensed phones sold by Motorola.

271.    There is a nexus between Motorola's domestic investments and activities and its licensed cellular telephones and tablet computers that practice the Asserted Patents.

272.    Motorola continues to invest significant resources in products covered by the Asserted Patents. Exhibit 102.

273.    In view of at least the foregoing, and pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and/or (C), a domestic industry exists by virtue of the activities of Ericsson's licensee Motorola.

**D.    The Domestic Activities of Ericsson's Licensee Apple**

274.    Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and/or (C), a domestic industry exists by virtue of the activities of Ericsson's licensee Apple. Copies of the license agreement pursuant to 19 C.F.R. § 210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[19]

275.    Apple Inc. filed an annual report with the Securities and Exchange Commission dated October 31, 2012, which is attached as Exhibit 103. That report stated, in part, as follows: "The Company's headquarters are located in Cupertino, California. As of September 29, 2012, the Company owned or leased approximately 17.3 million square feet of building space, primarily in the U.S., and to a lesser extent, in Europe, Japan, Canada, and the Asia-Pacific regions. Of that amount, approximately 10.9 million square feet was leased building space, which includes approximately 4.1 million square feet related to retail store space. Of the Company's owned building space, approximately 2.6 million square feet that is located in Cupertino, California will be demolished to build a second corporate campus. Additionally, the Company owns a total of 1,077 acres of land in various locations." *Id.* at 20. The report further stated that "[Apple, Inc.] owned facilities for research and development and corporate functions in Cupertino, California, including land for the future development of the Company's second corporate campus." *Id.* As of February 10, 2008, the Silicon Valley / San Jose Business Journal

---

[19]    Due to certain confidentiality provisions in the agreement, Ericsson intends to provide a copy of that agreement after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

reported that Apple, Inc. "control[led] more than 3.3 million square feet of Cupertino work space" as explained in Exhibit 104.

276.    Apple, Inc's October 31, 2012 annual report also stated that "To remain competitive, the Company believes that continual investment in research and development and marketing and advertising is critical to the development and sale of innovative products and technologies.  The Company's research and development spending is focused on investing in new hardware and software products, and in further developing its existing products, including iPhone, iPad, Mac, and iPod hardware; iOS and OS X operating systems; and a variety of application software and online services."  Exhibit 103 at 26.  The report further described Apple, Inc's research and development expenses as follows:  "R&D expense increased $952 million or 39% in 2012 compared to 2011 and $647 million or 36% in 2011 compared to 2010. This growth in R&D expense was driven by an increase in headcount and related expenses to support expanded R&D activities."  *Id.* at 36.  The report further stated that "The Company continues to develop new technologies to enhance existing products and to expand the range of its product offerings through research and development, licensing of intellectual property and acquisition of third-party businesses and technology. Total research and development expense was $3.4 billion, $2.4 billion, and $1.8 billion in 2012, 2011, and 2010, respectively."  *Id.* at 7.

277.    On information and belief, Apple, Inc.'s iPod/iPhone team is located in Cupertino, California.  *See* Exhibit 105 at 1.  Apple, Inc. describes the responsibilities in this team to include "working with cross-functional groups to continually push the envelope of technology implemented in iPod/iPhone products."  *Id.* at 1.

278.    On information and belief, Apple Inc.'s Wireless Certification EPM (Enterprise Process Management) group is located in Cupertino, California.  *See* Exhibit 106 at 1.  Apple

describes the role of the group as follows: "The Wireless Certification EPM is responsible for the technical management and coordination of regulatory, conformance and carrier certification. . . . The Wireless Certification EPM provides the key interface to external and carrier test labs to Apple's internal test and development teams." *Id.* Individuals in the group are believed to "appl[y] his/her detailed technical knowledge of wireless standards (GSM, EDGE, WCDMA, Bluetooth, Wifi) to understand, prioritize and resolve issues found during certification test. . . . [and] support the product definition process with regard to network features." *Id.*

279. On information and belief, Apple Inc.'s Regulatory RF Systems group (iPhone) is located in Cupertino, California. *See* Exhibit 107 at 1. Individuals in the group are believed to "design and implement in-house test systems, debug and resolve compliance issues, and manage the process to ensure [Apple's] products conform to all applicable regulatory standards." *Id.* Individuals in the group are "tasked with understanding all applicable industry standards (such as 3GPP, WiFi Alliance, IEEE, and Bluetooth SIG) in relation to [Apple's] products." *Id.* (noting that group members "should have a solid understanding of at least one of the wireless communication systems and standards on the iPhone (GSM, CDMA, UMTS, Bluetooth, 802.11 b/g/n).").

280. On information and belief, Apple Inc.'s RF System Integration group is located in Cupertino, California. *See* Exhibit 108 at 1. On information and belief, persons in this group are tasked with "develop[ing] and optimiz[ing] RF automation systems used on Apple's newest products including iPhones, iPods, iPads and others. . . . [and] interpret[ing] wireless standards documents to write automated software to exercise wireless devices." *Id.*

281. On information and belief, Apple, Inc. is involved in RF Systems Performance at its Cupertino, California campus. *See* Exhibit 109 at 1. Persons involved in this area "work with

various technologies like GSM/GPRS/EDGE/WCDMA/HSDPA/CDMA EVDO and other data communications systems. . . . [and] work with Antenna designers and RF engineers to make design recommendations that involve[] significant understanding of baseband algorithms and RF/Antenna systems." *Id.* Members who work in this group are required to have "[f]amiliarity with RF characteristics (at a system level), antenna design and requirements for modern wireless communication systems such as GSM/CDMA2000/WCDMA/HSPA, 802.11, Bluetooth etc." *Id.*

282.   On information and belief, Apple, Inc. is also involved with wireless technologies engineering at its Cupertino, California, campus. *See* Exhibit 110 at 1.   Apple, Inc. notes that the team is "responsible for qualifying the latest iOS products with focus on the cellular telephony software."*Id.* at 1 (noting the requisite "excellent understanding of protocols GSM/UMTS/CDMA(1x/EVDO).").

283.   On information and belief, Apple, Inc. also employs iPhone Cellular Protocol Software Engineers at its Cupertino, California location as a part of its iPhone team. *See* Exhibit 111 at 1.   Apple describes the duties of these engineers as being tasked to: "Integrate, customize and optimize CDMA2000/EVDO/GSM/UMTS/LTe protocol stacks," "Find innovative solutions to complicated wireless problems," "Troubleshoot cellular stack and network issues and drive continuous performance improvement," "Assist with interoperability and type approval testing," and "Investigate future cellular technologies." *Id.*   On information and belief, Apple's iPhone team also employs Modem DSP Firmware Engineers "to help develop our next generation of iPhone products." Exhibit 112.   These engineers are tasked with "Integration, customization, enhancement and maintenance of GSM/UMTS modem DSP firmware; Debug[ging] real-time DSP code and propose optimum solutions for better performance; Assist[ing] with

interoperability and type approval testing;   Investigat[ing] future cellular technologies; [and] Develop[ing] next generation cellular modem." *Id.*

284.    Exhibits 61C-65C and 116C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the Apple iPhone 4 smartphone sold and used in conjunction with the AT&T network.  A physical sample of the Apple iPhone 4 smartphone is attached as Physical Exhibit No. 4.

285.    Other licensed products sold by Apple that practice at least one claim of some or all of these patents include at least the iPhone 3GS, iPhone 4S, iPhone 5, iPad, and iPad 2. Moreover, further discovery may reveal additional claims of these patents are met by licensed phones sold by Apple.

286.    There is a nexus between Apple's domestic investments and activities and its licensed cellular telephones and tablet computers that practice the Asserted Patents.

287.    In view of at least the foregoing, and pursuant to 19 U.S.C. § 1337(a)(3)(A), (B) and/or (C), a domestic industry exists by virtue of the activities of Ericsson's licensee Apple.

### E.    The Domestic Activities of Ericsson Licensee Research In Motion (RIM)

288.    Pursuant to 19 U.S.C. § 1337(a)(3)(A), (B), and/or (C) a domestic industry exists by virtue of the activities of Ericsson's licensee RIM.  Copies of license agreements pursuant to 19 C.F.R. §210.12(a)(9)(iv) will be included as Confidential Exhibit 5C at a later date.[20]

289.    RIM has made a significant investment in plant and equipment and/or in the employment of labor or capital, and/or has made a substantial investment in the exploitation of

---

[20]    Due to certain confidentiality provisions in the agreements, Ericsson intends to provide copies of those agreements after issuance of an appropriate Order or receipt of the consent of the licensees, which consent Ericsson has sought.

the Asserted Patents through engineering and research and development at its research and engineering facility in Irving, Texas. *See* Exhibits 113 and 114.

290.    RIM filed an annual report with the Securities and Exchange Commission dated April 9, 2012.   That report stated, in part, as follows: "The U.S. headquarters of RIM are composed of a campus style complex of five buildings totaling 252,582 square feet outside Dallas, Texas, housing certain sales, marketing, legal, research and development, customer service operations and administrative activities. Operations in Raleigh, North Carolina have increased to a total of 94,354 mainly located within the CentreGreen campus.   RIM leases an additional 571,519 square feet throughout the United States, primarily for research and development." See Exhibit 115 at 34.

291.    On information and belief, RIM's Product Development Center is located at RIM's Irving, Texas facility.   Exhibit 114 at 3.   RIM describes the Center as being: "comprised of a team of world class engineers that are focused on solving the world's toughest wireless challenges." *Id.*   Individuals in this Center "work on integrating the radio protocol stack software for standardized wireless technologies, particularly LTE/UMTS/GSM/GPRS/EDGE." *Id.*   Other individuals in the development organization in Irving "perform[] and analyz[e] protocol and interoperability (IOT) on mobiles across multiple air interfaces such as LTE, CDMA, HRPD, eHRPD protocols." *Id.* at 1.   Also located at the Irving, Texas facility is the Hardware Development Team. *Id.* at 5, 7.   Individuals in this team have "cell phone or portable audio device experience ranging from component selection to DSP (Digital Signal Processing) tuning," with roles of "implementing hardware and acoustic devices as well as optimizing the DSP parameters to yield world class audio performance." *Id.*   Essential skills for individuals in this Team include "Detailed knowledge of certification and 3GPP specifications." *Id.* at 6.

292.    Exhibits 85C-89C and 119C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the Rim Torch 9860 Series mobile device. A physical sample of the RIM Torch 9860 Series mobile device is attached as Physical Exhibit No. 8.

293.    Exhibits 74C-79C are claim charts demonstrating that each limitation of certain claims of certain Asserted Patents is met by the RIM Bold 9900 sold and used in conjunction with the T-Mobile network. A physical sample of the RIM Bold 9900 is attached as Physical Exhibit No. 6.

294.    In view of at least the foregoing, there is a nexus between RIM's domestic investments and expenditures and its licensed wireless devices that practice at least one claim of the Asserted Patents.

295.    In view of at least the foregoing, and pursuant to 19 U.S.C. § 1337(a)(3)(A), (B), and/or (C) a domestic industry exists by virtue of the activities of Ericsson's licensee RIM.

## IX.    RELIEF REQUESTED

Wherefore, by reason of the foregoing, Ericsson requests that the Commission:

296.    Institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to Respondents' violations of Section 337 based on the importation into the United States, the sale for importation into the United States, and the sale within the United States after importation of certain electronic devices, including wireless communication devices, tablet computers, media players, and televisions, and components thereof that infringe one or more of the asserted claims of the Asserted Patents;

297.    Determine that there has been a violation of Section 337 based on said unlawful acts;

298.    Issue a permanent exclusion order pursuant to 19 U.S.C. § 1337(d) excluding from entry into the United States all infringing articles that are manufactured, imported, or sold by or on behalf of proposed Respondents, their affiliates, subsidiaries, successors, or assigns that infringe at least one claim of the Asserted Patents;

299.    Issue permanent cease and desist orders pursuant to 19 U.S.C. § 1337(f) prohibiting each Respondent from engaging in unlawful importation, sale within the United States after importation, and other commercial activities relating to certain electronic devices, including wireless communication devices, tablet computers, media players, and televisions, and components thereof that infringe at least one claim of the Asserted Patents;

300.    Impose a bond upon Respondents who continue to import infringing articles during the 60-day-Presidential review period Pursuant to 19 U.S.C. § 1337(j); and,

301.    Issue such other and further relief as the Commission deems just and proper.


Dated:  November 30, 2012

Respectfully submitted,

McKool Smith, P.C.

Mike McKool
Douglas A. Cawley
Theodore Stevenson III
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone:  (214) 978-4000
Facsimile:  (214) 978-4044

Benjamin Levi
1999 K Street, N.W., Suite 600
Washington DC 20006
Telephone: (202) 370-8300
Telecopier: (202) 370-8344

*Counsel for Complainants*
*Ericsson Inc. and Telefonaktiebolaget*
*LM Ericsson*

## VERIFICATION BY COMPLAINANTS

I, Frank Vecella, am employed by Ericsson Inc.   I am duly authorized to sign the foregoing Complaint of Ericsson Inc. and Telefonaktiebolaget LM Ericsson under Section 337 of the Tariff Act of 1930, as Amended ("Complaint") on behalf of Complainants Ericsson Inc. and Telefonaktiebolaget LM Ericsson.   I have read the Complaint and am familiar with the allegations and statements contained therein.   In accordance with the provisions of 19 C.F.R §§ 210.4(c) and 210.12(a), I hereby declare that, to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

1.   The Complaint is not being filed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2.   The claims and other legal contentions set forth in the Complaint are warranted by existing law or by a good faith, non-frivolous argument for extension, modification, or reversal of existing law, or by the establishment of new law; and

3.   The allegations and other factual contentions have evidentiary support, or where specifically identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on November 29, 2012.